# 22-2438

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆ ◆ ◆

JESSE SHERMAN, ARLETTE SHERMAN,

*Lead Plaintiffs-Appellants,*

PAMCAH-UA LOCAL 675 PENSION FUND,

*Movant-Appellant,*

MICHAEL FRANCISCO, Individually and on Behalf of All Others Similarly Situated,

*Plaintiff,*

DANIEL LAMOUREAUX, Individually and on behalf of all others similarly situated,

*Consolidated-Plaintiff,*

—against—

ABENGOA, S.A., MANUEL SANCHEZ ORTEGA, CANACCORD GENUITY INC., HSBC SECURITIES (USA) INC., MERRILL LYNCH INTERNATIONAL, SOCIETE GENERALE,

*Defendants-Appellees,*

(*Caption continued on inside cover*)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLEE ABENGOA, S.A.

RICHARD F. HANS
JEFFREY D. ROTENBERG
MARC A. SILVERMAN
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500

*Attorneys for Defendant-Appellee
Abengoa, S.A.*

Santiago Seage, Barbara Zubiria, Ignacio Garcia Alvear, Alicia Velarde Valiente, Banco Santander, S.A., Carlos Sundheim Losada, Christopher Hansmeyer, Claudi Santiago Ponsa, Enrique Borrajo Lovera, Felipe Benjumea Llorente, Fernando Solis Martinez-Campos, Ignacio Solis Guardiola, Javier Benjumea Llorente, Jesus Garcia-Quilez Gomez, Jose B. Terceiro, Jose Borrell Fontelles, Jose Joaquin Abaurre Llorente, Jose Luis Aya Abaurre, Maria Teresa Benjumea Llorente, Ricardo Martinez Rico,

*Defendants.*

# DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendant-Appellee Abengoa, S.A., by and through its undersigned counsel, hereby certifies that it has no parent corporation and that no publicly held corporation owns 10% or more of its stock.

*s/ Jeffrey D. Rotenberg*
Richard F. Hans
Jeffrey D. Rotenberg
Marc A. Silverman
1251 Avenue of the Americas
New York, NY 10020
(212) 335-4500 (Phone)
(212) 335-4501 (Fax)
richard.hans@us.dlapiper.com
jeffrey.rotenberg@us.dlapiper.com
marc.silverman@us.dlapiper.com

*Attorneys for Defendant-Appellee Abengoa, S.A.*

# TABLE OF CONTENTS

Page

STATEMENT OF THE ISSUES..............................................................................1

STATEMENT OF THE CASE..............................................................................1

    A.    Legal Framework ...........................................................................1

    B.    Factual Background ........................................................................3

    C.    Prior Proceedings ...........................................................................4

SUMMARY OF ARGUMENT .............................................................................9

ARGUMENT .....................................................................................................12

I.      THE DISTRICT COURT CORRECTLY HELD THAT
       PLAINTIFFS FAILED TO PLEAD WITH PARTICULARITY
       THE MATERIAL FALSITY OF ABENGOA'S PUBLIC
       STATEMENTS ........................................................................12

    A.    Plaintiffs cannot state securities claims based on Abengoa's
       general statements about its financial discipline and well-
       being. .............................................................................12

    B.    Plaintiffs' allegations concerning the percentage-of-
       completion accounting method must be considered against
       Abengoa's disclosures regarding this method. ..............................16

    C.    The district court correctly held that the FE allegations are
       insufficient to meet plaintiffs' pleading requirements..................19

       1.    Not a single FE worked for Abengoa S.A. ..........................20

       2.    FE7 provides unverified statements from a foreign
          proceeding.............................................................24

       3.    FE1 offers second-hand comments of events well-
          prior to the Class Period. ......................................28

       4.    FE2 and FE3's statements are based on their vague
          "belief."..............................................................29

       5.    FE4 and FE5's generalized allegations failed to
          explain with specificity what effect the alleged
          wrongful conduct had on Abengoa's statements
          regarding its financial health. ..............................31

D.   The district court correctly held allegations of two bookkeeping systems are insufficient to establish material falsity. ........................................................................33

E.   The district court correctly held that allegations borrowed from foreign proceedings do not support material falsity. .............35

1.   The district court properly declined to accept the truth of allegations borrowed from the foreign proceedings........35

2.   The triangulation allegations derived from the foreign proceedings do not support falsity. ......................................38

3.   The ICAC proceeding resulting in a fine against Deloitte without any determination against Abengoa does not support falsity. .......................................................43

4.   The National Court proceedings in Madrid in their investigatory phase do not support falsity. ..........................44

5.   The criminal proceedings against Benjumea and Sánchez Ortega resulting in acquittals do not support falsity. .................................................................................45

F.   Abengoa disclosed its capital raising activities and liquidity issues. .........................................................................................45

G.   The district court properly held that claims based on the July 31 statement fail. ...............................................................47

II.   THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFFS FAILED TO ALLEGE CORPORATE SCIENTER ........48

A.   The TAC failed to plead the scienter of any individual imputable to Abengoa. ................................................................50

1.   The district court properly found that plaintiffs failed to allege motive. ................................................................50

2.   The district court correctly found that plaintiffs failed to allege conscious misbehavior or recklessness based on the same insufficiently plead allegations relied on for falsity. ..........................................................................51

B.   The district court properly found that plaintiffs failed to plead corporate scienter based on allegations of a 0.25% deviation. .........................................................................................55

III.   THE SECURITIES ACT CLAIMS ARE UNTIMELY .........................57

CONCLUSION ................................................................................................57

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Acito v. IMCERA Grp., Inc.*,
   47 F.3d 47 (2d Cir. 1995) ................................................................51

*Altimeo Asset Management v. Qihoo 360 Technology Company, Ltd.*,
   19 F. 4th 145 (2d Cir. 2021) ............................................................42

*Amorosa v. Gen. Elec. Co.*,
   2022 WL 3577838 (S.D.N.Y. 2022)............................................25, 44

*Anschutz Corp. v. Merrill Lynch & Co., Inc.*,
   690 F.3d 98 (2d Cir. 2012) .................................................................2

*Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*,
   28 F.4th 343 (2d Cir. 2022) ................................................................2

*Asay v. Pinduoduo Inc.*,
   2021 WL 3871269 (2d Cir. 2021) .....................................................12

*Batson v. Rim San Antonio Acquisition, LCC*,
   2016 WL 6901312 (S.D.N.Y. 2016)...................................................48

*Caiafa v. Sea Containers Ltd.*,
   2008 WL 11516813 (S.D.N.Y. 2008), *aff'd*, 331 F. App'x 14 (2d
   Cir. 2009) ........................................................................................48

*In re China Mobile Games & Entm't Grp., Ltd Sec. Litig.*,
   2016 WL 922711 (S.D.N.Y. 2016)....................................................20

*City of Brockton Ret. Sys. v. Avon Prods., Inc.*,
   2014 WL 4832321 (S.D.N.Y. 2014)...................................................53

*Davidoff v. Farina*,
   2005 WL 2030501 (S.D.N.Y. 2005)...................................................40

*Delta Holdings, Inc. v. Nat'l Distillers & Chem. Corp.*,
   945 F.2d 1226 (2d Cir. 1991) ............................................................17

*Deluca v. GPB Auto. Portfolio, LP*,
   2020 WL 7343788 (S.D.N.Y. 2020)...................................................25

i

*In re DraftKings Inc. Sec. Litig.*,
  2023 WL 145591 (S.D.N.Y. 2023) ...................................................25

*In re Duke Energy Corp. Sec. Litig.*,
  282 F. Supp. 2d 158 (S.D.N.Y. 2003), *aff'd*, 113 F. App'x 427 (2d
  Cir. 2004) ...............................................................................56

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005)..............................................................2, 40

*In re E-House Sec. Litig.*,
  2021 WL 4461777 (S.D.N.Y. 2021).......................................43, 44

*ECA, Local 134 IBEW Joint Pension Tr. Of Chi. v. JP Morgan Chase
  Co.*,
  553 F.3d 187 (2d Cir. 2009) ...............................................*passim*

*Einhorn v. Axogen, Inc.*,
  42 F.4th 1218 (11th Cir. 2022) .................................................18

*In re Elan Corp. Sec. Litig.*,
  543 F. Supp. 2d 187 (S.D.N.Y. 2008) .........................................29

*Elliott Assocs., L.P. v. Covance, Inc.*,
  2000 WL 1752848 (S.D.N.Y. 2000)............................................47

*In re Fannie Mae 2008 Sec. Litig.*,
  891 F. Supp. 2d 458 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 16 (2d
  Cir. 2013) ............................................................................37, 45

*Faulkner v. Verizon Commc'ns, Inc.*,
  156 F. Supp. 2d 384 (S.D.N.Y. 2001) .........................................47

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
  74 F. Supp. 3d 581 (S.D.N.Y. 2015) ...........................................43

*Frankfurt-Tr. Inv. Luxemburg AG v. United Techs. Corp.*,
  336 F. Supp. 3d 196 (S.D.N.Y. 2018) ....................................24, 31

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC*,
  376 F. Supp. 2d 385 (S.D.N.Y. 2005) .........................................37

ii

*Gamm v. Sanderson Farms, Inc.*,
944 F.3d 455 (2d Cir. 2019) ..............................................................3

*Ganino v. Citizens Utils. Co.*,
228 F.3d 154 (2d Cir. 2000) .............................................................50

*Glaser v. The9, Ltd.*,
772 F. Supp. 2d 573 (S.D.N.Y. 2011) ....................................22, 24, 31

*Glob. Network Commc'ns, Inc. v. City of New York*,
458 F.3d 150 (2d Cir. 2006) .............................................................53

*Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Entm't*
*Holdings, Inc.*,
422 F. Supp. 3d 821 (S.D.N.Y. 2019) ...............................................15

*In re Hebron Tech. Co., Ltd. Sec. Litig.*,
2021 WL 4341500 (S.D.N.Y. 2021)............................................25, 28

*Higginbotham v. Baxter Int'l Inc.*,
495 F.3d 753 (7th Cir. 2007) ...........................................................22

*Hutchison v. Deutsche Bank Secs., Inc.*,
647 F.3d 479 (2d Cir. 2011) ...............................................23, 38, 39

*In re Iconix Brand Grp. Inc.*,
2017 WL 4898228 (S.D.N.Y. 2017)...................................................34

*Indiana Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*,
537 F.3d 527 (5th Cir. 2008) ....................................................*passim*

*Info. Res., Inc. v. Dun & Bradstreet Corp.*,
1998 WL 851607 (S.D.N.Y. 1998)....................................................43

*In re Inv. Tech. Grp., Inc. Sec. Litig.*,
2018 WL 1449206 (S.D.N.Y. 2018)...................................................29

*Jackson v. Abernathy*,
960 F.3d 94 (2d Cir. 2020) .........................................................49, 56

*Kalnit v. Eichler*,
264 F.3d 131 (2d Cir. 2001) .......................................................49, 51

*Lasker v. N.Y. State Elec. & Gas Corp.*,
    85 F.3d 55 (2d Cir. 1996) ...................................................................13

*In re Lehman Bros. Sec. & ERISA Litig.*,
    2013 WL 3989066 (S.D.N.Y. 2013) ............................................25, 26

*Limantour v. Cray Inc.*,
    432 F. Supp. 2d 1129 (W.D. Wash. 2006) .........................................30

*Local No. 38 Int'l Bhd. Of Elec. Workers Pension Fund v. Am. Exp.
    Co.*,
    724 F. Supp. 2d 447 (S.D.N.Y. 2010) ..........................................24, 31

*In re Lone Pine Res., Inc.*,
    2014 WL 1259653 (S.D.N.Y. 2014) ...................................................41

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
    797 F.3d 160 (2d Cir. 2015) .........................................................26, 35

*Malin v. XL Capital Ltd.*,
    499 F. Supp. 2d 117 (D. Conn. 2007)................................................29

*In re MBIA, Inc., Sec. Litig.*,
    700 F. Supp. 2d 566 (S.D.N.Y. 2010) ...............................................56

*Meyer v. Jinkosolar Holdings Co., Ltd.*,
    761 F.3d 245 (2d Cir. 2014) ..............................................................19

*Millares Guiraldes de Tineo v. United States*,
    137 F.3d 715 (2d Cir. 1998) ..............................................................17

*In re Mylan N.V. Sec. Litig.*,
    379 F. Supp. 3d 198 (S.D.N.Y. 2019) ...............................................37

*N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan &
    Plymouth Cty. Ret. Ass'n v. MDC Partners, Inc.*,
    2016 WL 5794774 (S.D.N.Y. 2016)...................................................25

*N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*,
    709 F.3d 109 (2d Cir. 2013) ..............................................................33

*In re NovaGold Res. Inc. Sec. Litig.*,
    629 F. Supp. 2d 272 (S.D.N.Y. 2009) ...............................................56

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000) ...................................................14, 19, 20

*Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*,
153 F. Supp. 3d 628 (S.D.N.Y. 2015) .............................................14

*Peifa Xu v. Gridsum Holding Inc.*,
2021 WL 773002 (S.D.N.Y. 2021).................................38, 39, 41, 52

*In re Petrobras Secs. Litig.*,
116 F. Supp. 3d 368 (S.D.N.Y. 2015) .............................................53

*Posner v. Coopers & Lybrand*,
92 F.R.D. 765 (S.D.N.Y. 1981), *aff'd*, 697 F.2d 296 (2d Cir. 1982) ................30

*In re ProShares Tr. Sec. Litig.*,
728 F.3d 96 (2d Cir. 2013) .........................................................46

*In re PXRE Grp., Ltd. Sec. Litig.*,
600 F. Supp. 2d 510 (S.D.N.Y. 2009) .............................................51

*Ret. Sys. of Gov't of Virgin Islands v. Blanford*,
794 F.3d 297 (2d Cir. 2015) ....................................................19, 33

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004) .........................................................2

*Schiro v. Cemex, S.A.B. de C.V.*,
396 F. Supp. 3d 283 (S.D.N.Y. 2019) .............................................20

*SEC v. Lee*,
720 F. Supp. 2d 305 (S.D.N.Y. 2010) .............................................37

*Shreiber v. Synacor, Inc*,
832 F. App'x 54 (2d Cir. 2020) ......................................................17

*Singh v. Cigna Corp.*,
918 F.3d 57 (2d Cir. 2019) ...........................................................13

*SRM Glob. Fund L.P. v. Countrywide Fin. Corp.*,
2010 WL 2473595 (S.D.N.Y. 2010), *aff'd sub nom. SRM Glob.
Fund Ltd. P'ship v. Countrywide Fin. Corp.*, 448 F. App'x 116 (2d
Cir. 2011) ...............................................................................47

v

*Steinberg v. Ericsson LM Tel. Co.*,
2008 WL 5170640 (S.D.N.Y. 2008)....................................................21, 23, 31

*Stevelman v. Alias Research, Inc.*,
174 F.3d 79 (2d Cir. 1999) ...............................................................34

*Strougo v. Barclays PLC*,
105 F. Supp. 3d 330 (S.D.N.Y. 2015) ................................................37

*Svezzese v. Duratek, Inc.*,
67 F. App'x 169 (4th Cir. 2003) ........................................................16, 18, 53

*In re Synchrony Fin. Sec. Litig.*,
988 F.3d 157 (2d Cir. 2021) .............................................................14, 15

*Tabak v. Canadian Solar Inc.*,
549 F. App'x 24 (2d Cir. 2013) ........................................................41, 52

*Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*,
531 F.3d 190 (2d Cir. 2008) .............................................................55

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)........................................................................49, 52

*Touchstone Strategic Tr. v. Gen. Elec. Co.*,
2022 WL 4536800 (S.D.N.Y. 2022)..................................................43, 44, 53, 54

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
2014 WL 7176187 (S.D.N.Y. 2014)..................................................55

*Tyler v. Liz Claiborne, Inc.*,
814 F. Supp. 2d 323 (S.D.N.Y. 2011) ...............................................30

*In re USB AG Sec. Litig.*,
2012 WL 4471265 (S.D.N.Y. 2012), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014) ..................................................................................25

*In re Vivendi, S.A. Sec. Litig.*,
838 F.3d 223 (2d Cir. 2016) .............................................................45

*In re Wachovia Equity Sec. Litig.*,
753 F. Supp. 2d 326 (S.D.N.Y. 2011) ...............................................20

*Wojtunik v. Kealy*,
   394 F. Supp. 2d 1149 (D. Ariz. 2005) ............................................................40

**Statutes & Other Authorities**

15 U.S.C. § 77k(a) ............................................................................................1

15 U.S.C. § 77m............................................................................................12, 57

15 U.S.C. § 78j(b) ............................................................................................2

15 U.S.C. § 78u-4(b) ............................................................................................2

Fed. R. Civ. P. 11(b) ............................................................................................25

Fed. R. Civ. P. 9(b) ....................................................................................2, 3, 47, 48

## STATEMENT OF THE ISSUES

1.     Whether the district court properly concluded that plaintiffs-appellants failed to adequately allege the falsity of Abengoa's public statements.

2.     Whether the district court properly concluded that plaintiffs-appellants failed to adequately allege scienter as to Abengoa.

3.     Whether the district court properly concluded that the Securities Act claims should be dismissed as untimely.

## STATEMENT OF THE CASE

### A.     Legal Framework

This appeal involves claims under Section 11 of the Securities Act, as well as Section 10(b) of the Exchange Act and Rule 10b-5.

Purchasers of securities may state claims under Section 11 of the Securities Act by adequately alleging that the registration statement "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). As explained in the brief of Manuel Sánchez Ortega (II.B), plaintiffs must also adequately allege scienter for their Securities Act claims because they sound in fraud.

Purchasers of securities may state claims under Section 10(b) of the Exchange Act and Rule 10b-5 by adequately alleging that a material misrepresentation or omission was made with an intent to deceive, manipulate, or

defraud, *i.e.*, with scienter, in connection with the purchase or sale of a security, and that the plaintiffs relied on the misrepresentation or omission, thereby causing economic loss. 15 U.S.C. § 78j(b).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 354 (2d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Securities fraud claims must satisfy the heightened pleading requirements of FRCP 9(b) and the PSLRA. 15 U.S.C. § 78u-4(b). Rule 9(b) requires that securities fraud claims based on misstatements must identify the allegedly fraudulent statements, the speaker, where and when the statements were made, and why the statements were fraudulent. *See, e.g.*, *Anschutz Corp. v. Merrill Lynch & Co., Inc.*, 690 F.3d 98, 108 (2d Cir. 2012); *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (Section 11 claims that "rely upon averments of fraud are subject to the test of Rule 9(b)"). Like Rule 9(b), the PSLRA requires that securities fraud "'specify' each misleading statement," set forth the reasons or factual basis for the plaintiff's belief that the statement is misleading, and "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (quoting 15 U.S.C. §§ 78u–4(b)(1), (2)); *see also ECA,*

*Local 134 IBEW Joint Pension Tr. Of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009). Where, as here, plaintiffs claim that underlying conduct rendered statements false or misleading, the allegations regarding the underlying conduct must likewise be alleged with the specificity and heightened pleading required by FRCP 9(b) and the PSLRA. *See, e.g.*, *Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 464 (2d Cir. 2019).

### B.     Factual Background

Abengoa is a Spain headquartered engineering and clean technology company that organizes its business into three activities: (1) Engineering and Construction, (2) Infrastructure Concessions, and (3) Industrial Production. SA99. On October 17, 2013, Abengoa made a public offering of ADS in the United States pursuant to an F-1 registration statement (Registration Statement). SA98–100. Abengoa was operating at the time in more than 70 countries through 532 subsidiaries, 17 associates, and 34 joint ventures. SA99.

On July 31, 2015, Abengoa held a conference call to discuss its financial results for the second quarter of 2015. SA119. The company stated that its working capital had not improved and announced a plan to divest assets worth 400 million euros but reported that "at th[at] point in time," there was "no plan . . . to tap the capital markets in any manner." SA119.

On August 3, 2015, Abengoa filed a Form 6-K with the SEC announcing a

potential capital increase. SA119. Following that announcement, the trading price of Abengoa's ADS declined. SA119.

In March 2016, Abengoa filed for bankruptcy protection in the United States and worked to reach a debt-restructuring agreement with its creditors in Spain. SA10. These bankruptcy matters concluded by mid-2019.

### C.    Prior Proceedings

On August 10, 2015, a week after Abengoa's Form 6-K filing, an investor commenced a putative class action suit against the company and certain of its officers and directors, alleging violations of the Exchange Act and Rule 10b-5 based chiefly on the July 31, 2015, conference call. SA11. A second putative class action making the same claims was later filed. The district court consolidated the two suits in the present action, appointing Jesse and Arlette Sherman as lead plaintiffs. SA11. The proposed class comprises investors who purchased Abengoa's ADS from October 17, 2013, through August 3, 2015 (Class Period). SA1.

In August 2016, plaintiffs amended their complaint, adding 21 Abengoa officers or directors, and certain of Abengoa's underwriters for the 2013 offering, as defendants, and asserted new claims under the Securities Act against all the defendants based on the Registration Statement. SA11.

This action was stayed during the pendency of Abengoa's bankruptcy

proceedings. Thereafter, plaintiffs again amended their complaint. The second amended complaint (SAC) dropped all the individual defendants except Abengoa's former CEO Manuel Sánchez Ortega and authorized U.S. representative Christopher Hansmeyer,[1] and expanded the Securities Act allegations. JA25.

In 2020, the district court dismissed the SAC on multiple grounds, including failure to adequately allege the falsity of Abengoa's public statements or scienter. SA37–46. The court granted plaintiffs leave to amend to address the deficiencies in their pleading. SA45–46. Plaintiffs filed the third amended complaint (TAC) in September 2021, JA888, and the district court dismissed it with prejudice in August 2022.

The district court found the TAC's Securities Act claims were time barred. The court also found that plaintiffs still failed to adequately allege the falsity of Abengoa's public statements. The court rejected plaintiffs' attempt to premise claims on Abengoa's broad statements endorsing its financial position and business approach, such as: "We have successfully grown our business while seeking to enforce strict financial discipline to maintain our strong liquidity position." SA111; *see also* SA112 ("We have established . . . a robust project management and control system."). While plaintiffs alleged that these were materially false assertions, the district court recognized them as squarely within the well-

---

[1] Hansmeyer has not appeared. The sole allegation against him is that he signed the Registration Statement in his capacity as Abengoa's representative.

recognized category of non-actionable "expressions of corporate optimism and puffery." SA134; *see* SA39–40.[2]

The court reasoned that even if Abengoa's reference to "seeking to enforce strict financial discipline" were not puffery, plaintiffs offered "no credible specific allegations concerning the absence of strict financial discipline." SA138–139 (concluding that plaintiffs did not satisfy their burden by pointing out that Abengoa was known to rely on both a software bookkeeping system and a separate online accounting system, manually correct discrepancies, and require project managers to obtain management approval before altering project margins).

The district court reached the same conclusion regarding Abengoa's public statements that the company used "percentage-of-completion" accounting for construction projects—a method where contract revenues and expenses are "recognized by reference to the stage of completion of the contract when the outcome of the contract can be estimated reliably." SA100–101. Plaintiffs urged that Abengoa's percentage-of-completion disclosures were materially false based on allegations by former employees of a single subsidiary of Abengoa who claimed that the subsidiary Instalaciones Inabensa S.A. (Inabensa) "routinely recognized" revenue prematurely. JA907 ¶ 70. Plaintiffs also attempted to rely on

---

[2] Plaintiffs do not contest on appeal the court's conclusion that Abengoa's forward-looking statements accompanied by cautionary language are nonactionable because they fall within the PSLRA's safe harbor provision. SA38; SA147.

allegations borrowed from foreign proceedings regarding a "triangulation scheme" involving the re-allocation of certain invoices at Inabensa Turkey more than a year before the class period. SA110.

The district court explained that, even if credited, these allegations fell far short of plausibly pleading the material falsity of Abengoa's statement. As the court explained, it was "not clearly alleged either in the [complaint] or briefing" how these would render Abengoa's statements false, "especially in light of the cautionary language" used by Abengoa to disclaim strict reliance on the "percentage-of-completion" methodology (which disclosed that Abengoa's accounting involved "estimates," "significant judgments," and "risks" that could not all "be specifically quantified"). SA143. The court also highlighted the "lack of specific allegations concerning the impact" of accounting deviations or alleged triangulation "on the financial statements as a whole." *Id*.; *see also* SA26–27.

The district court noted, moreover, that it ought ***not*** assume the truth of allegations borrowed from foreign proceedings because those proceedings had "not concluded" and plaintiffs' counsel had not verified or independently investigated the allegations. SA143. Similarly, the district court took issue with plaintiffs' reliance on allegations from a former employee of a subsidiary who did not claim contact or familiarity with Abengoa's management. The district court concluded that such testimony could not satisfy plaintiffs' requirement to plead with

particularity its company-wide fraud theory necessary to establish the falsity of Abengoa's statements. SA135.

The district court found that none of the seven former employees (FEs)[3] whose testimony plaintiffs sought to rely upon could sustain plaintiffs' complaint, as they all suffered from significant deficiencies. For example, no FE worked for the defendant, Abengoa, S.A., itself, and plaintiffs did not allege that any FE had contact with any member of Abengoa's management in Spain. The district court further declined to assume the truth of allegations from foreign proceedings and held that in any event the allegations borrowed from those proceedings did not "clearly allege[]" any impact on Abengoa's financials as a whole. SA46. Finally, the district court found that plaintiffs failed to plead facts sufficient to support a cogent and compelling inference of scienter. SA148–152. The district court held that plaintiffs' allegations that executive bonuses motivated the use of false statements do not establish motive. SA149. The district court again rejected plaintiffs' reliance on the insufficient testimony of FEs who had no contact with Abengoa management, this time for their motive allegations. SA148–149.

The district court likewise held that plaintiffs' allegations of conscious misbehavior or recklessness failed because they relied on insufficient triangulation

---

[3] The TAC refers to the seven confidential witnesses as Former Employees or FEs. These labels are misnomers because no FE worked for Abengoa, S.A. Abengoa uses the label "FE" for congruence.

scheme allegations, the existence of foreign investigations and proceedings with no scienter findings, and allegations lacking any connection to Abengoa management. SA149–151. Overall, the district court concluded: "Plaintiffs' allegations do not come close to showing the required level of 'highly unreasonable' conduct that is 'an extreme departure from the standards of ordinary care.'" SA152 (citing *ECA*, 553 F.3d at 202–203).

## SUMMARY OF ARGUMENT

*First*, plaintiffs mistakenly seek to impose liability based on general statements regarding Abengoa's efforts "to enforce strict financial discipline" and its "robust project management." But, as the district court explained, such statements plainly constitute non-actionable puffery. Plaintiffs identify no basis for concluding otherwise and fail to distinguish similar statements that this Court has held nonactionable.

*Second*, plaintiffs wrongly urge that their allegations concerning Abengoa's compliance with the percentage-of-completion accounting methodology should be assessed without considering Abengoa's disclosures about the method and how it is being applied. Abengoa disclosed that the percentage-of-completion method necessarily involves "estimates," "significant judgments," and "risks" that could not all "be specifically quantified." As the district court recognized, plaintiffs' allegations must be considered against these disclosures.

*Third*, plaintiffs' attack on Abengoa's application of this accounting method fails for lack of particularity. Plaintiffs seek to rely on the conclusory and unsubstantiated statements of confidential FEs second-guessing Abengoa's accounting estimates and judgments. As the district court explained, those FE statements do not identify facts sufficient to support plaintiffs' allegations that Abengoa's statements about its accounting methods were materially false. The district court properly concluded that where, as here, a heightened pleading standard applies, the deficiencies afflicting the FE statements cannot be ignored. Namely, plaintiffs cannot rest their case on statements from individuals: (a) whose identities are unknown and whose claims are unvetted; (b) who concededly lacked contact with Abengoa management or direct knowledge of Abengoa (as they worked only for a subsidiary or outside of Abengoa entirely); (c) who offered only "non-specific non-personal allegations" based on belief and assumptions; or (d) who failed to explain with specificity "what effect the alleged conduct had on the company's statements regarding its financial health." SA41.

As the district court explained, plaintiffs' reliance on FE7 (who had no interaction with Abengoa management) and his anonymous letter to the Prosecutor of Spain's National Court, is misplaced. Plaintiffs do not claim that they independently verified FE7's allegations or did anything to confirm or test their credibility—a failure that is fatal to reliance on such a confidential witness.

Plaintiffs try to overcome this admitted deficiency by claiming that foreign tribunals "vetted" FE7. This assertion makes little sense: the Spanish courts *dismissed* all claims in the proceeding in which FE7 filed that letter. Regardless, such vetting would not address plaintiffs' independent duty to verify statements brought in its complaint. Nor may plaintiffs evade the particularity requirement by citing several insufficient statements of FEs and claiming that they validate one another.

*Fourth*, as the district court recognized, plaintiffs cannot address their complaint's deficiencies by borrowing allegations from foreign proceedings that: (a) relate to just two of Abengoa's many subsidiaries; (b) are in the investigatory phase; (c) involve findings of accounting irregularities by another entity but not Abengoa; (d) involve findings denying securities claims against Abengoa; (e) refer to a vacated order, and (f) include a criminal proceeding that resulted in acquittals.

*Fifth*, plaintiffs' claim that Abengoa's July 31, 2015, statement violated the Exchange Act failed because there is no credible allegation that the company's assertion—that "at [that] point in time," it had "no plan to . . . tap the capital markets," SA9—was false when it was made. As plaintiffs acknowledge, Abengoa was upfront about its liquidity issues on July 31, and, as the district court stressed, generalized allegations that Abengoa misrepresented its plans are insufficient to sustain claims of fraud. SA119.

*Sixth*, plaintiffs failed to plead particularized facts necessary to support the conclusion that Abengoa acted with the requisite state of mind for claims that sound in fraud. As the district court explained, neither allegations that individuals desired increased compensation, nor the former employees or foreign proceedings-based assertions were sufficient to show motive or indicate conscious misbehavior or recklessness. The TAC is subject to dismissal on this independent basis.

*Finally*, the district court correctly dismissed plaintiffs' Securities Act claims as time barred. SA127. Plaintiffs first filed such claims more than one year after disclosures by Abengoa alerted the market to the alleged misstatements underlying the claims. SA129. 15 U.S.C. § 77m.

## ARGUMENT

## I. THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFFS FAILED TO PLEAD WITH PARTICULARITY THE MATERIAL FALSITY OF ABENGOA'S PUBLIC STATEMENTS.

### A. Plaintiffs cannot state securities claims based on Abengoa's general statements about its financial discipline and well-being.

Plaintiffs take aim at Abengoa's characterization of financial matters as "strong" or "sound" and statements about "strict financial discipline," but the district court correctly recognized these statements as non-actionable "expressions of corporate optimism and puffery too general to cause a reasonable investor to rely upon them." SA133–134; *see also Asay v. Pinduoduo Inc.*, 2021 WL 3871269, at *3 (2d Cir. 2021) (holding that "to the extent Plaintiffs rely on . . . use of the

term 'strict' to describe . . . anti-counterfeiting measures to establish an actionable misstatement, such vague and generalized language is a mere statement of non-actionable puffery"); *ECA*, at 206 (statements that are "too general to cause a reasonable investor to rely upon them" do "not give rise to securities violations.").

Notwithstanding a wealth of case law, plaintiffs claim in conclusory fashion that these statements are actionable because they were "a 'concrete' description and a 'factual representation.'" App. Br. 59 (citing *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 168 (2d Cir. 2021)). Not so. Courts regularly find similar statements on "financial discipline" to be puffery. *See ECA*, 553 F.3d at 205–206 (concluding that "assertion[s] that [defendant] had 'risk management processes that are highly disciplined and designed to preserve the integrity of the risk management process'; . . . 'set the standard for integrity'; and . . . would 'continue to reposition and strengthen its franchises with a focus on financial discipline'" constituted puffery); *Singh v. Cigna Corp.*, 918 F.3d 57, 60, 63–64 (2d Cir. 2019) (statements that issuer has "established policies and procedures to comply with applicable [regulatory] requirements" and other "general statements about reputation, integrity, and compliance with ethical norms" are "textbook example[s] of puffery"); *Lasker v. N.Y. State Elec. & Gas Corp.*, 85 F.3d 55, 59 (2d Cir. 1996) (statement that issuer "would not compromise its financial integrity" is "precisely the type of 'puffery' that this and other circuits have consistently held to be inactionable") (collecting

cases); *Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*, 153 F. Supp. 3d 628, 648 (S.D.N.Y. 2015) (statement that issuer "would 'remain fiscally disciplined with its cash resources' . . . [is] best considered non-actionable puffery"). Plaintiffs cannot distinguish Abengoa's statements from the analogous statements that courts in the foregoing and other cases found inactionable.

Plaintiffs' citation to cases finding alleged misstatements "concrete" highlight the difference between what is an actual concrete statement and immaterial statements, like those at issue here. In *Synchrony*, the defendant said that there was "no 'resistance or opposition,' or 'negative reaction,' to its underwriting policy changes" from Walmart when the truth was that there was "alarming feedback from the Walmart client relationship manager that the relationship was doomed." *Synchrony*, 988 F.3d at 168 (citations omitted). In *Novak*, the defendant said that inventories were "under control," "in good shape," and at "reasonable" or "expected" levels, and that "no major or unusual markdowns were anticipated" when the truth was that "inventories were too high" and write-downs were needed. *See Novak v. Kasaks*, 216 F.3d 300, 304 (2d Cir. 2000). In *Hawaii Structural*, the defendant stated that "[w]e have identified that there are an easy 50 to 100 Carmike theaters that are capable of supporting an AMC-style renovation" when the truth was that there was "substantial, systemic

obstacles to renovation." *Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Entm't Holdings, Inc.*, 422 F. Supp. 3d 821, 844–845 (S.D.N.Y. 2019).

In contrast, as the district court recognized, the statements challenged are not about specific changes in policy, factual circumstances of a particular project, or in response to concerns from a third party or investor. Rather, in written disclosures, Abengoa stated: "We have successfully grown our business while seeking to enforce strict financial discipline to maintain our strong liquidity position." JA923 ¶ 130, JA942 ¶ 197. Orally, Abengoa "commented" on its "strong liquidity position" that it had "reinforce[d] the financial discipline" and "we have been strict on the financial discipline managing." JA960 ¶ 266.

These statements are akin to the statements in *Hawaii Structural* concerning "quick," "very smooth" and "great progress"—that were "so vague and ill-suited to concrete measurement that they constitute puffery." *Hawaii Structural Ironworkers Pension Tr. Fund*, 422 F. Supp. 3d at 846. And they are like the statements in *Synchrony* that the Court held to be inactionable—"statements that the company was 'pretty confident' and 'pretty positive' about the prospect of renewing partnerships" and "assertions that Synchrony's 'partner-centric business model has been successful because it aligns its interests with those of its partners.'" *Synchrony*, 988 F.3d at 170. Plaintiffs' reliance on puffery necessarily fails.

15

**B.** **Plaintiffs' allegations concerning the percentage-of-completion accounting method must be considered against Abengoa's disclosures regarding this method.**

Plaintiffs claim that Abengoa's statement that it utilized the percentage-of-completion method was false because—according to allegations from confidential witnesses—there were deviations in the method's application. But, considered against Abengoa's disclosures, plaintiffs have not pleaded any such deviations. *See infra* I.C, E.

Abengoa disclosed that its approach to revenue recognition followed the percentage-of-completion accounting method, which involves "estimates," "significant judgments," and "risks" that cannot "be specifically quantified." JA1098; *see* SA143; *see also Svezzese v. Duratek, Inc.*, 67 F. App'x 169, 171 (4th Cir. 2003) (percentage-of-completion accounting "depends on the ability to make reasonably dependable estimates of contract costs and progress toward the completion of the contract"); *Indiana Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 537 (5th Cir. 2008) (percentage-of-completion accounting involves "estimates" of the "total cost"). The district court recognized plaintiffs' allegations of material falsity as to Abengoa's percentage-of-completion must be considered "in light of the warnings provided."[4]

_____

[4] While the district court did not hold Abengoa's statements to be "shielded under the bespeaks caution doctrine," the court made clear that "the cautionary language" could "[not] be disregarded" and considered it a relevant factor in its

16

Properly considered, the district court properly concluded that plaintiffs' allegations lack the requisite particularity. As discussed below, the FEs on which plaintiffs rely fail to identify why any specific estimate was incorrect or even how the alleged failure to comply with the method could have affected Abengoa's financials.[5] *See Delta Holdings, Inc. v. Nat'l Distillers & Chem. Corp.*, 945 F.2d 1226, 1237 (2d Cir. 1991) (finding estimates non-actionable where it included statement that "actual losses 'may vary significantly from our estimates since underlying data is quite variable and difficult to project.'"); *Shreiber v. Synacor, Inc*, 832 F. App'x 54 (2d Cir. 2020) (finding estimates of future revenue non-actionable); *Shaw Grp., Inc.*, 537 F.3d at 540 (mere allegations that defendants

---

analysis. SA141–142. Of course, this Court may affirm on any ground supported by the record, including that the statements are shielded under the bespeaks caution doctrine. *See, e.g.*, *Millares Guiraldes de Tineo v. United States*, 137 F.3d 715, 719 (2d Cir. 1998).

[5] *See, e.g.*, App. Br. 10 (relying on FE7 reference to a project where Inabensa [not Abengoa] allegedly "increased the project margin to 86% for" a project in India, without any specifics on why the estimate was false); *id.* at 11 (relying on FE7 reference to a "screenshot" of "cost provisions" for Kenya and Ukraine that "demonstrate[ed] how the Company recorded fake expenses," but does not provide any details why these provisions were not accurate or why they were "fake"); *id.* at 39 (relying on FE7 allegation that there was a "policy" preventing managers from "revising initial project margins," without identifying a single project where a project manager was prohibited from revising a project margin); *id.* at 13 (relying on FE5 allegation that "transferring unrelated expenses to new projects was widespread at Abengoa—done to hide undeclared losses from prior projects," without identifying any project or the alleged losses from other projects); *id.* at 14 (relying on FE1 allegation that alleged a financial report showed "false percentages of completion on some projects and failed to show that other projects were over budget" without identifying the false percentages, the projects, or why they were false).

17

"improperly recognized millions of dollars of revenue" in percentage-of-completion accounting were simply "bold statements [that] cannot substitute for factual assertions connecting the corporate executives to specific contracts or accounting or management practices that led to the alleged overstatements.); *Svezzese*, 67 F. App'x at 171 (vague allegations of alleged non-compliance with percentage-of-completion accounting that relies on "estimates" are insufficient); *Payne*, 433 F. Supp. 2d at 585 (cautionary language on percentage-of-completion method "would have alerted investors to how ITG reported its revenue and accounts receivable, whether that method was 'unconventional' as Plaintiffs claim or merely reflective of the percentage-of-completion accounting method as Defendants argue").[6]

Plaintiffs claim that Abengoa's cautionary language and explanation of the percentage-of-completion methodology should be ignored because Abengoa's disclosures "utterly failed to inform investors of the Company's abuse of the percentage-of-completion method as part of its ongoing, widespread accounting

---

[6] To be sure, the allegations are based on fluctuations in "estimates" over time, but plaintiffs allege no facts demonstrating how these estimates were inappropriate. As disclosed, the "estimates" are based on the "highly tailored characteristics of the construction contracts," "the outcome of a construction contract cannot be reliably estimated," and "are unique to the specific facts and circumstances of each contract." SA111–112. The falsity of any estimate, therefore, is "discernible only after it is made," a "prediction" that changes over time, and an "ongoing state of affairs that extends from the present into the future." *Einhorn v. Axogen, Inc.*, 42 F.4th 1218, 1223 (11th Cir. 2022).

fraud." App. Br. 56. This argument fails because the TAC does not adequately allege any actual abuse of this method. Plaintiffs' allegations proffered in support of this theory are fatally non-particularized. *See supra* note 5; *infra*, I.C.

Plaintiffs cite *Meyer v. Jinkosolar Holdings Co., Ltd.*, 761 F.3d 245 (2d Cir. 2014) for support. That decision is distinguishable. There, the issuer received a report of "existing problems" concerning the company's disposal of hazardous solid waste and compliance with environmental standards that rendered false the company's disclosures that it had "installed pollution abatement equipment" and was "monitor[ing] waste treatment and ensur[ing] that these waste emissions comply with . . . China environmental standards." *Id.* at 250. In contrast, no well-pleaded facts in the TAC contradict or are inconsistent with Abengoa's percentage-of-completion statements. *Jinkosolar* is no help to plaintiffs.

### C. The district court correctly held that the FE allegations are insufficient to meet plaintiffs' pleading requirements.

Under this Court's precedents, pleadings may rely on confidential witnesses only if the witnesses "are described . . . with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *Emps.' Ret. Sys. of Gov't of Virgin Islands v. Blanford*, 794 F.3d 297, 305 (2d Cir. 2015). When this first threshold is met, confidential witness statements must then "provide an adequate basis for believing that the defendants' statements were false." *Novak*, 216 F.3d at 314. Plaintiffs "cannot base securities

fraud claims on" confidential witnesses' "speculation and conclusory allegations."
SA137–138 (citing *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001). The district
court appropriately applied these standards to discount the FE allegations and
ultimately conclude that plaintiffs failed to plead material falsity.

### 1. *Not a single FE worked for Abengoa S.A.*

Because confidential sources must "provide an adequate basis for believing
that the defendants' statements were false," *Novak*, 216 F.3d at 313, courts
regularly hold that confidential witnesses whose knowledge is limited to a fraction
of a company or global enterprise lack an adequate basis to impute allegations to
the company as a whole. *See Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283,
305 (S.D.N.Y. 2019) (rejecting confidential witness allegations where "[p]laintiffs
do not allege that the 'facts' known to the confidential witnesses," who worked at a
regional subsidiary, "made their way up the entire corporate hierarchy to the
Individual Defendants"); *In re China Mobile Games & Entm't Grp., Ltd Sec. Litig.*,
2016 WL 922711, at *4 (S.D.N.Y. 2016) ("Plaintiffs try to allege
contemporaneous falsity through CW2, but as they themselves note, CW2 worked
at a CMGE subsidiary, not at the company itself."); *In re Wachovia Equity Sec.
Litig.*, 753 F. Supp. 2d 326, 358 (S.D.N.Y. 2011) (rejecting confidential witness
testimony from manager who supervised training at 15 branch offices where
plaintiffs failed to "specify the size of the region supervised . . . relative to the total

number of branch offices" because the allegations "could describe the anomalies of a rogue fiefdom rather than company-wide practices"); *Steinberg v. Ericsson LM Tel. Co.*, 2008 WL 5170640, at *13 (S.D.N.Y. 2008) (discrediting CWs who "were mid-level managers in the [U.S.] who claim no contacts or communications" with defendants, a Swedish company and its officers, "or even with [the Company's] European corporate headquarters"). Confidential witnesses working at a subsidiary are not presumed to have knowledge of any matters at the parent, not to mention securities law violations or fraud. *See Steinberg*, 2008 WL 5170640, at *13.

Plaintiffs continue to downplay—but cannot escape—that Abengoa did not directly employ a single of the FEs. Abengoa has over 500 subsidiaries worldwide. The FEs' positions at these subsidiaries demonstrate how far they served from Abengoa's upper echelons. App. Br. 53; *see Steinberg*, 2008 WL 5170640, at *13 (discrediting CWs with only secondhand knowledge of corporate headquarters).

- FE1 worked at a U.S. Abengoa subsidiary, Abeinsa EPC;[7]

- FE2 worked at an unknown or unspecified U.S. Abengoa subsidiary;

- FE3 worked at an Abengoa's U.S. "corporate office" in Missouri, which was a subsidiary named Abengoa Bioenergy Corporation;[8]

---

[7] For Abeinsa EPC, the TAC only states that Abeinsa "controlled Abeinsa EPC and Abeinsa BD, two of Abengoa's subsidiaries dedicated to largescale clean energy projects, including solar plants, desalination plants, and bioethanol plants," JA904 ¶ 57, without identifying any specific Abeinsa EPC project, or otherwise alleging Abeinsa EPC's role within Abengoa's global framework.

- FE4, FE5, and FE7 all worked at Inabensa, which is a subsidiary of an Abengoa subsidiary, Abeinsa; and

- FE6 worked for an unrelated company, Canalizaciones Ebro S.L. (Cebro), retained by an Abengoa subsidiary.[9]

*See* JA900 ¶¶ 39–42; JA 901 ¶ 43–44; JA 902 ¶ 46. Plaintiffs baldly claim that the FEs can nonetheless speak to Abengoa's global operations and the conduct of its management in Spain. But they do not plead facts showing how that is close to so.

Plaintiffs (Br. at 53) claim Abeinsa and its subsidiary, Inabensa (*see* JA909 ¶ 75), "led" Abengoa's Engineering and Construction segment that allegedly represented 60% of Abengoa's annual sales. They suggest that this is somehow sufficient to establish that the three former Inabensa employees' allegations are well-pleaded and that these individuals can establish the material falsity of Abengoa's financial statements. Plaintiffs cite no case law for this proposition.

---

[8] Plaintiffs do not allege Abengoa Bioenergy Corporation's role within Abengoa's global framework.

[9] Plaintiffs rely on FE6 to argue that Abengoa ordered unnecessary supplies for a pipeline project. JA919 ¶ 113. He is alleged to be a contractor's employee. There is unsurprisingly no suggestion that FE6 interacted with the subsidiary's management, let alone Abengoa management. He had no basis to allege fraud by Abengoa. *See Glaser*, 772 F. Supp. 2d at 594 (finding confidential witnesses from one company insufficient to support allegations related to another company). Indeed, there is reason to question FE6's motives, as his company was involved in a payment dispute with Abengoa. JA901 ¶ 44; *cf. Higginbotham v. Baxter Int'l Inc.*, 495 F.3d 753, 756–757 (7th Cir. 2007) (distrusting confidential witnesses with an "axe[] to grind").

Even so, the TAC does not plead Abeinsa's (or Inabensa's) contribution to Abengoa's Engineering and Construction segment with any reasonable degree of specificity, leaving it impossible to determine its role within Abengoa's larger global framework, as the district court recognized. SA135. The TAC only alleges that Inabensa "led" Abeinsa's "'Installations' division within the Engineering and Construction group," JA904 ¶ 55, without detailing the number of divisions within the group, the size of the Installation division, or whether other companies comprised the division. The TAC does not allege how purported accounting irregularities for a handful of Inabensa projects could have impacted the Registration Statement or Abengoa's later financials and related public statements. *See Hutchison v. Deutsche Bank Secs., Inc.*, 647 F.3d 479, 485 (2d Cir. 2011) (courts assessing materiality determine "whether the misstatement concerns a segment or other portion of the registrant's business that has been identified as playing a significant role in the registrant's operations or profitability") (quoting SEC Staff Accounting Bulletin No. 99, 64 Fed. Reg. at 45,152).

As the district court agreed, the FEs do not support the "company-wide theory" plaintiffs require because they worked for distant subsidiaries and "there are no allegations that they interacted with Abengoa management." SA135; *see Steinberg*, 2008 WL 5170640, at *13 (discrediting CWs who failed to claim any "contacts or communications" with "corporate headquarters"); *Local No. 38 Int'l*

*Bhd. of Elec. Workers Pension Fund v. Am. Exp. Co.*, 724 F. Supp. 2d 447, 460 (S.D.N.Y. 2010) (discrediting CWs where "many . . . were employed in rank-and-file positions" and were "low-level employees" with "no contact with the [defendants]"); *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 594 (S.D.N.Y. 2011) (finding that statements by CWs who were not alleged to have ever had any contact with the individual defendants were insufficient as a matter of law); *Frankfurt-Tr. Inv. Luxemburg AG v. United Techs. Corp.*, 336 F. Supp. 3d 196, 221–22 (S.D.N.Y. 2018) (rejecting as "inherently not derived from . . . 'personal knowledge'" the CWs' report that superiors "employed two or three levels above" conveyed the CWs concerns to management); *Shaw Grp., Inc.*, 537 F.3d at 539 (rejecting assertion that "problems were widely known throughout the company" where the plaintiffs failed to allege "when, how and what the confidential source" interacted with management).

### 2. *FE7 provides unverified statements from a foreign proceeding.*

Plaintiffs principally rely on borrowed and unverified statements from FE7, who provided an anonymous letter in a Spain National Court proceeding. Courts in this Circuit "generally do not consider averments taken directly from uncorroborated allegations embedded in a complaint in another action or parroted allegations for which counsel has not conducted independent investigation."

*Amorosa v. Gen. Elec. Co.*, 2022 WL 3577838, at *1 (S.D.N.Y. 2022).[10] This principle is derived from the requirement of Rule 11 that by presenting a pleading to the court, counsel certifies that to the best of his or her "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b). To comply with Rule 11, when counsel cites an "alleged confidential witnesses in a complaint, the certification means that counsel has spoken with these confidential witnesses

---

[10] *Accord In re DraftKings Inc. Sec. Litig.*, 2023 WL 145591, at *18 (S.D.N.Y. 2023) (claims "based on unsourced or anonymously sourced allegations" are insufficient under the securities laws) (citing *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 804 (S.D.N.Y. 2020) (disregarding confidential statements where plaintiff's counsel "appear to have done nothing whatsoever," including "tr[ying] to locate or contact . . . the source[] on which they rely," "to confirm the identities or statements of the confidential sources cited in the JCap Report"); *In re Lehman Bros. Sec. & ERISA Litig.*, 2013 WL 3989066, at *4 (S.D.N.Y. 2013) (disregarding confidential witness statements where "[t]here is no suggestion that counsel in this action has spoken with these confidential witnesses or even knows who they are," and noting that "[a]llowing counsel to rely on confidential witness statements recounted in a separate complaint would provide the Court little assurance that the factual contentions have any evidentiary support."); *In re USB AG Sec. Litig.*, 2012 WL 4471265, at *17 n.17 (S.D.N.Y. 2012) ("[B]ecause such allegations are taken directly from uncorroborated allegations embedded in a complaint in another action, the Court will not consider them."), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014); *N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan & Plymouth Cty. Ret. Ass'n v. MDC Partners, Inc.*, 2016 WL 5794774, at *8 (S.D.N.Y. 2016) (same); *In re Hebron Tech. Co., Ltd. Sec. Litig.*, 2021 WL 4341500, at *17 (S.D.N.Y. 2021) ("[C]ourts have been loath . . . to sustain as sufficiently particular securities fraud complaints based on . . . uncorroborated statements of CWs [that] are sourced secondhand" (internal quotation marks and citations omitted)); *Deluca v. GPB Auto. Portfolio, LP*, 2020 WL 7343788, at *16–17 (S.D.N.Y. 2020) ("As a threshold matter, plaintiffs cannot rely on allegations from other lawsuits to plead legally sufficient fraud claims.").

and knows who they are." *In re Lehman Bros. Sec. & Erisa Litig.*, 2013 WL 3989066, at *4 (S.D.N.Y. 2013). Without that, a complaint may not "rely on confidential witness statements recounted in a separate complaint" because it "would provide the Court little assurance that the factual contentions have any evidentiary support." *Id.* Thus, as this Court has instructed, pleadings that "merely recite[] others' allegations" are insufficient under the securities laws. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 180 (2d Cir. 2015).[11]

This mandates rejection of FE7. Plaintiffs do not claim they attempted to locate or contact FE7, confirm FE7's identity, confirm the statements, or even speak with FE7. *Cf.* JA902 ¶ 45 (identifying that FE7's allegations come from an anonymous letter in the National Court in Spain). Plaintiffs provide no support for the proposition that FE7's allegations have "vetted by independent tribunals in Spain." App. Br. 11. Suggesting otherwise, the Spanish court dismissed all claims in the proceeding in which FE7 filed his or her whistleblower letter (Procedimiento

---

[11] In *Loreley*, this Court permitted the plaintiffs to rely on findings from an SEC order because the plaintiffs separately alleged other "non-conclusory facts and . . . these additional factual pleadings [we]re sufficient to render unproblematic any implied reliance on the SEC findings." 797 F.3d at 180. Critical to the Court's decision was that the plaintiffs had more than just borrowed allegations and that "[t]hese allegations—albeit clearly overlapping with the SEC order—[we]re made directly by Plaintiffs"—a fact entirely absent here.

Abreviado 0000007/2017). *See* JA1006; JA727–728; Sánchez Ortega Br. at I.B.2.c.; *infra*, I.E.1.

FE7's allegations themselves are substantively deficient because, as the district court rightly recognized, FE7's allegations fail to describe the alleged fraud with particularity. Plaintiffs claim FE7 "provided specific instances" of fraud. But FE7 only refers to single a project where Inabensa (not Abengoa) allegedly "increased the project margin to 86% for" a project in India, which allegedly allowed Inabensa to "recognize a profit of €3 million in 2014, the total estimated profit for the entire project, even though the project had "hardly even started." App. Br. 10. Even ignoring the fact that this project was for Inabensa and not Abengoa (which as discussed above is fatal), this is simply an instance involving an alleged "estimate" of project revenue consistent with the percentage-of-completion method. As Abengoa's disclosure stated: "Revenue from construction contracts is recognized using the percentage-of completion method for contracts whose outcome can be reliably estimated and it is probable that they will be profitable." JA947.

Plaintiffs point to no factual allegation identifying reason to second-guess whether the revenue from the India project was reliably estimated. Same for FE7's unfounded allegations of an alleged violation of "IAS 11's percentage-of-completion rule," which is congruent with the same disclosure regarding estimates

for contracts. FE7 allegedly provided a "screenshot" of "cost provisions" for Kenya and Ukraine that "demonstrate[ed] how the Company recorded fake expenses," but does not provide any details why these provisions were not accurate or why they were "fake." FE7's statements that there was a "policy" preventing managers from "revising initial project margins" failed to identify a single project where a project manager was prohibited from revising a project margin. Simply put, even were FE7's anonymous allegations to be credited, they lack any semblance of the particularity required to plead falsity. *See Shaw Grp., Inc.*, 537 F.3d at 537 (discrediting confidential witnesses who "fail[ed] to provide sufficient details about their sources to credit their statements and fail to tie those statements to the large-scale accounting fraud that allegedly took place").[12]

### 3. *FE1 offers second-hand comments of events well-prior to the Class Period.*

FE1 lacks any basis to discuss events during the Class Period. The TAC describes FE1 as a Human Resources director at a U.S. subsidiary until March 2013—*seven months prior* to the Class Period. JA900 ¶ 39. This is reason alone to disregard all statements attributed to FE1. *See In re Hebron Tech.*, 2021 WL

---

[12] The allegation attributed to FE7 that Abengoa "recorded fake expenses through accounting entries referred to as 'cost provisions'" is irrelevant to the Securities Act claim since the earliest alleged improper cost provision to which FE7 refers occurred two months after Abengoa filed the Registration Statement. *Long Miao*, 442 F. Supp. 3d at 803 (disregarding confidential witness allegations "entirely unmoored in time").

4341500, at *18 (refusing to give weight to confidential witness who left the company 15 months before the class period).

There is no allegation that FE1 had any role in finance or accounting. All FE1's supposed knowledge is based on what other unnamed employees allegedly *told* FE1 (*see* JA900 ¶ 39, JA909 ¶ 76, JA919–920 ¶ 114–117)—the type of hearsay that can and should be disregarded. *See In re Inv. Tech. Grp., Inc. Sec. Litig.*, 2018 WL 1449206, at *5 (S.D.N.Y. 2018) ("[C]ourts in this District . . . discount[] allegations based on information supplied by a confidential witness that was not obtained first-hand") (citing *Janbay v. Canadian Solar, Inc.*, 2013 WL 1287326, at *8 (S.D.N.Y. 2013)); *Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 139 n.17 (D. Conn. 2007) (rejecting CW claims as "impermissible hearsay" that "cannot be considered" where CW "reported that he was told by unnamed 'superiors'" and other personnel about company's accounting issues).

### 4.    *FE2 and FE3's statements are based on their vague "belief."*

The TAC describes FE2 as an "accounting executive" having "broad oversight for accounting and financial reporting" at unnamed U.S. subsidiaries. The TAC does not give any additional information regarding FE2's position. JA900 ¶ 40, JA909 ¶ 77. The TAC does not say *when* FE2 worked for Abengoa or *any* related entity. Therefore, there is no basis to credit any allegations attributed to FE2. *See, e.g.*, *In re Elan Corp. Sec. Litig.*, 543 F. Supp. 2d 187, 207 (S.D.N.Y.

2008) ("[A] confidential source [must] meet the PSLRA's particularity requirement"); *Limantour v. Cray Inc.*, 432 F. Supp. 2d 1129, 1143 (W.D. Wash. 2006) (failure to "provide the dates of CW[]'s employment . . . is a fatal flaw").

In any event, FE2 offers only generalized expressions of awareness of "instances" or "believed" that certain things happened, which is insufficient. JA911 ¶¶ 85–87; *Tyler v. Liz Claiborne, Inc.*, 814 F. Supp. 2d 323, 340 (S.D.N.Y. 2011) ("plaintiff can[not] plausibly allege a speaker's knowledge of, or access to information, based on the unsupported belief or recollection of a confidential witness.").

The TAC describes FE3 as a "Senior Staff Accountant" in an Abengoa office in Missouri, which was a subsidiary named Abengoa Bioenergy Corporation, who left in July 2014, with 13 months left in the 22-month Class Period. JA910 ¶ 79. As with the others, the TAC attributes to FE3 general statements insufficient under the PSLRA. FE3 purports to comment generally on FE3's "belie[f] that Abengoa" had "double books" and how things were handled "on some occasions" but does not explain why or how the processes allegedly employed were improper and who knew about them. *See* JA910 ¶¶ 79, 81–82. None of the generalizations FE3 offers are sufficient to support the TAC's claims. *See Posner v. Coopers & Lybrand*, 92 F.R.D. 765, 769 (S.D.N.Y. 1981), *aff'd*, 697 F.2d 296 (2d Cir. 1982) (rejecting assertions that use of percentage-of-completion

method was improper the vague assertions were "not dealing with a concrete fact, but rather with a conclusion: 'that the process . . . was not economically viable'").

<div style="margin-left: 2em;">

5.    *FE4 and FE5's generalized allegations failed to explain with specificity what effect the alleged wrongful conduct had on Abengoa's statements regarding its financial health.*

</div>

The TAC does not allege that FE4 or FE5, who worked only for Inabensa, one of over 500 Abengoa subsidiaries, interacted with senior management, anyone else at Abengoa's headquarters, or anyone outside Inabensa for that matter. SA135; *see also Steinberg*, 2008 WL 5170640, at *13; *Local No. 38*, 724 F. Supp. 2d at 460; *Glaser*, 772 F. Supp. 2d at 594; *Frankfurt-Tr.*, 336 F. Supp. 3d at 221–22. Their allegations concerning certain projects fail because "there are no specific allegations outside of Inabensa." SA137. The TAC admits that FE4 only "assumed" there were allegedly incorrect "SAP records." SA136 (citing JA910 ¶ 84, JA912 ¶ 91). Likewise, FE5 only "vaguely alleges that he 'was instructed by his superiors to manipulate accounting entries' to meet the pre-determined project margins, without providing the names or roles of those 'superiors' nor explaining why it would be impossible to estimate fluctuating costs to keep project margins steady." SA136–137 (citing JA901 ¶ 43, JA918–919 ¶ 111). Further, FE5 only "vaguely states that 'directors inflated the project margin' and that he 'discovered expenses . . . that appeared to be costs from previous, unrelated projects' without explaining the basis for these allegations." SA137 (citing JA919 ¶ 112).

The district court rightly saw these allegations as "speculation and conclusory" and that they did not satisfy this Court's requirements for confidential witness statements. SA137–138. The district court rightly held that "the allegations as to accounting irregularities provide the financial impact regarding only a handful of projects, so the generalized allegations regarding the company as a whole cannot explain with specificity 'what effect the alleged conduct had on the company's statements regarding its financial health.'" SA138 (citing *Davidoff v. Farina*, 2005 WL 2030501, at *13 (S.D.N.Y. 2005).

On appeal here, plaintiffs simply double-down on their allegations without addressing any of the shortcomings pointed out by the district court. The only response they offer is that "FE4 and FE5 were vetted by plaintiffs' counsel and the credibility of [FE4 and FE5] was subject to a thorough investigation by prosecuting authorities." App. Br. 43. The district court did not disregard FE4 or FE5 merely for a lack of vetting by counsel but for an inability to meet the particularity requirement for confidential witness allegations in this Circuit. Thus, even had plaintiffs "vetted" the FEs, it would not overcome their failure to plead factual allegations with particularity.[13]

\*　　　\*　　　\*　　　\*　　　\*

---

[13] FE4 and FE5's alleged testimony should not lend weight to plaintiffs' allegations considering any such testimony was in the same vacated proceeding as FE7. *See supra*, I.C.2. Moreover, plaintiffs fail to allege what these FEs even supposedly testified about in Spain.

For all these reasons, the district court correctly concluded that "the generalized [FE] allegations regarding the company as a whole cannot explain with specificity 'what effect the alleged conduct had on the company's statements regarding its financial health.'" SA134–138.[14]

### D. The district court correctly held allegations of two bookkeeping systems are insufficient to establish material falsity.

The district court appropriately held that, even if statements concerning dual accounting records from the insufficient FEs were considered, the related allegation that Abengoa used the SAP software system and a separate online accounting system, and reconciled differences between these systems, did not support a claim that any public statements were materially false. *See* SA35 ("There is nothing to suggest that having two systems was inherently fraudulent, or that the method for correcting any discrepancies was inherently improper.").

---

[14] Plaintiffs' cases do not suggest the district court erred in its analysis. In *N.J. Carpenters Health Fund*, the unnamed employees relied upon worked at "'regional operations offices' . . . across the country," and there was "no basis for believing that factors unique to the relevant offices, rather than company-wide practices, resulted in the 'pressure to achieve loan production' that these employees allegedly experienced." *N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 123–24 (2d Cir. 2013). Here, the FEs did not simply work at different offices – the FEs worked at ***different companies, in different countries***. *See supra*, I.C.1. Moreover, there are no allegations that any FEs interacted with the individual defendants or anyone that worked at Abengoa's headquarters. *Id.* Conversely, in *Blanford*, on which plaintiffs rely, the confidential witnesses had direct conversations with senior managers who were employees of the issuer. *Blanford*, 794 F.3d 297.

Plaintiffs acknowledge that the two separate bookkeeping systems were not hidden but readily available internally. SA139 (citing JA907 ¶ 67 ("This dual system of accounting was commonplace and widely known within Abengoa. When project managers were asked for their margin estimates . . . they would reply by asking for clarification as to which margin was actually being requested."). In addition, as the district court stressed, Abengoa reportedly made efforts to rectify any accounting errors identified. SA139; *see Stevelman v. Alias Research, Inc.*, 174 F.3d 79, 84 (2d Cir. 1999) (rectifying accounting errors is not indicative of fraud). For example, Abengoa created the Controller Department in May 2015 to audit the profit margins of past projects and purchased a new project management system to address Abeinsa's cost provision accounting. JA982 ¶ 337. The district court also found plaintiffs' allegations regarding the difficulties changing project margins within SAP due to Abengoa requiring multiple levels of approval did not credibly demonstrate a lack of strict financial discipline. SA139; *see also In re Iconix Brand Grp. Inc.*, 2017 WL 4898228 at *18 (S.D.N.Y. 2017) (finding that the plaintiff did not particularly allege how accounting decisions were improper, or that defendants knew their accounting was improper in any way). In that regard, as detailed above, FE allegations regarding this allegedly wrongful practice and policy were not sufficiently specific. Nor was it alleged why a multi-level approval system would necessarily lead to inflated project margins. *See* SA139.

On these issues, the district court's reasoning was proper, and its conclusion correct. The TAC's dual accounting allegations fail because plaintiffs: (i) did not identify a single project or entry wrongfully altered because of dual accounting, (ii) did not plead facts indicating that discrepancies between these records resulted in false disclosures; and (iii) relied on the same deficient FE allegations to make these non-particularized claims. *See supra*, I.C.; *see also Shaw Grp., Inc.*, 537 F.3d at 540 (rejecting that alleged discussions in meeting to prematurely recognize revenue supported securities claim where plaintiff did not "allege that the reports or the meetings included information at odds with Shaw's public statements."). On the face of the TAC, the district court certainly did not make any "premature fact determinations" as plaintiffs claim, because there were no well-pleaded allegations to consider in the first place.

### E. The district court correctly held that allegations borrowed from foreign proceedings do not support material falsity.

#### 1. *The district court properly declined to accept the truth of allegations borrowed from the foreign proceedings.*

After finding the FEs' allegations insufficient, the district court correctly followed this Court's precedent, as numerous others before it, and "decline[d] to assume the truth of the allegations' in the Spanish proceedings," made by others "as those proceedings have not concluded." SA143; *see also Loreley*, 797 F.3d at 180; *see also supra*, I.C.2 (citing cases). The allegations include those "pulled from

FE7's anonymous letter to the Spanish court and there is no indication that counsel confirmed the accuracy of the statements." SA136. Nor is there any indication that counsel attempted to corroborate any of the other allegations that it plucked from the foreign proceedings.

Plaintiffs are wrong that the "nature of those proceedings attest to their reliability." *Cf.* App. Br. 42; *see also* Sánchez Ortega Br. I.B.2.c. As described more fully in Sánchez Ortega's brief, the Seville proceeding was commenced in 2016 by a group of private investors and is in the investigatory phase (one of three procedural stages). The decision from the Seville court on June 8, 2020, transferring the case to the National Court (itself of questionable relevance) was *vacated* and the matter transferred back to the investigative court in Seville. Sánchez Ortega Br. I.B.2.c. Plaintiffs claim that the confidential witnesses were "vetted and found sufficiently reliable in those proceedings to support [] indictment[s]," but fail to tell this Court that the criminal actions against Abengoa's former Executive Chairman Felipe Benjumea Llorente and Sánchez Ortega resulted in *acquittals*. The only other proceeding plaintiffs reference, the ICAC proceeding, resulted in a fine against Deloitte, **with no finding against Abengoa**. *See infra*, I.E.3. The United States equivalent of the ICAC, the Public Company Accounting Oversight Board (PCAOB) concluded that Deloitte's "audits had been properly completed and perfectly recorded." JA1147. The Spanish

CNMV previously made a separate final determination that there was no issue with Abengoa's financial statements, and it was not "hiding . . . the true economic-financial reality . . . communicated to the market." JA799. The "nature of [the Foreign] proceedings" do not attest to their reliability in this action, and to the contrary, their progress and outcomes rebut any inference of falsity or wrongdoing.

Plaintiffs' cases are inapposite because the allegations in those cases were independently verified, supported and corroborated by other documents, and intended to be used for limited purposes. In contrast, the foreign proceedings allegations here lack similar indicia of reliability and are presented as the backbone of the TAC's claims. *See* App. Br. 41–43.[15]

---

[15] *In re Mylan N.V. Sec. Litig.*, 379 F. Supp. 3d 198, 214–215 (S.D.N.Y. 2019) (accepting New York Attorney General's allegations that the plaintiffs' counsel was able to independently confirm); *In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d 458, 471 (S.D.N.Y. 2012) (only admitting evidence from an SEC complaint and a non-prosecution agreement that had independent documentary support through the plaintiff's limited discovery), *aff'd*, 525 F. App'x 16 (2d Cir. 2013); *Strougo v. Barclays PLC*, 105 F. Supp. 3d 330, 343 (S.D.N.Y. 2015) (allowing facts from New York Attorney General's complaint against the defendant only to determine whether the NYAG's suit or the defendant's misstatements caused a drop in stock price); *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC*, 376 F. Supp. 2d 385, 395 (S.D.N.Y. 2005) (SEC complaint was corroborated by a liquidator's report and statements of the defendant to investors); *SEC v. Lee*, 720 F. Supp. 2d 305, 340–341 (S.D.N.Y. 2010) (relying on more than just an SEC complaint, including SEC filings that corroborated the complaint).

2. *The triangulation allegations derived from the foreign proceedings do not support falsity.*

Plaintiffs proffer allegations from the Seville proceedings, allegedly drawn from a KPMG report submitted "in response to the indictments" (without making that report available) that includes emails from 2012. JA915 ¶ 99. Plaintiffs allege the report concludes accounting fraud occurred at Abengoa by providing examples of "invoice triangulation" at Abengoa subsidiaries. JA915 ¶ 102, JA916 ¶ 103. The district court properly found that plaintiffs failed to establish how allegations relating to the subsidiary Inabensa's finances had or even could have a material impact on Abengoa's vastly broader global operations to render Abengoa's disclosures fraudulently misleading. *See* SA143; *see also Peifa Xu v. Gridsum Holding Inc.*, 2021 WL 773002, at *9 (S.D.N.Y. 2021) (holding that for a statement to be material, the alleged misstatement must be material in the context of the company's total operations); *Hutchison*, 647 F.3d at 485.

In that regard, Abengoa disclosed that when Abengoa's financial statements are consolidated, "[a]ll intragroup assets and liabilities, equity, income, expenses and cash flows relating to transactions between members of the Group are eliminated in full." JA1099 ("'Group' . . . refer[s] to Abengoa, S.A., together with its subsidiaries unless the context otherwise requires."); JA1091. This means that transferring expenses between Abengoa's subsidiaries would not impact Abengoa's consolidated financial statements. Thus, because all the 2012 emails

38

plaintiffs cite refer to negotiations and "invoice triangulation" at Inabensa Turkey (not Abengoa), they are immaterial to Abengoa's disclosed financials. *See Peifa Xu*, 2021 WL 773002, at *9 (requiring a statement to be material in the context of the company's total operations); *see also Hutchison*, 647 F.3d at 485. Plaintiffs simply fail to allege how this supposed "scheme" had any material impact on Abengoa's consolidated financial statements whatsoever. *Peifa Xu*, 2021 WL 773002, at *9; *see also Hutchison*, 647 F.3d at 485 (holding that allegations must impact "a segment or other portion of the registrant's business . . . playing a significant role in the registrant's operations or profitability").

Even so, plaintiffs have not adequately plead wrongdoing in connection with the "triangulation scheme." Plaintiffs try to conjure malfeasance from an email that "[t]he purchase order of Peru from Hyunsung is going to be triangulated, it is too big to not use it, urgently start to negotiate." JA916 ¶ 105. There is nothing in this email that suggests anything inappropriate or any scheme at all. This email explicitly about negotiations with a third party rebuts plaintiffs' allegations. If the purchase order was a fabrication, there would be no purpose to negotiating terms with a third-party. The district court properly concluded that neither plaintiffs' complaint nor briefs explained:

> "how the existence of the triangulation scheme makes false Abengoa's statements regarding its use of a percentage-of-completion accounting model, especially in light of [Abengoa's disclosures], the lack of specific allegations

39

concerning the impact of the alleged triangulation scheme on the financial statements as a whole, and the relatively small percentage of total assets involved."

SA143 (citing *Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 204 (2d Cir. 2009) (an accounting classification affecting less than one third of the company's total assets was immaterial); *Dura Pharm., Inc.*, 544 U.S. at 345 (plaintiffs must specify why a statement is materially misleading).

Plaintiffs do not address these shortcomings on appeal. There is no mention of how the existence of the purported triangulation scheme allegedly affected any financial disclosure. Plaintiffs tacitly admit they cannot make such an allegation: "emails directing the invoice triangulation scheme for several projects was not the sum total of that scheme, but representative of the fraudulent accounting." App. Br. 57. This only underscores the vague, wholly speculative, and insufficient allegations. *Davidoff*, 2005 WL 2030501, at *13 (dismissing "allegations regarding improper revenue recognition are exceedingly general and do not explain with any specificity what effect the alleged conduct had on the company's statements regarding its financial health"); *Wojtunik v. Kealy*, 394 F. Supp. 2d 1149, 1160 (D. Ariz. 2005) (dismissing allegations of violations of percentage-of-completion accounting where the plaintiff failed to plead the "extent to which the alleged WIP manipulations affected IFC's financial statements or IFC's overall financial position").

Plaintiffs' suggestion that the district court made a related "premature determination of materiality" misconstrues the opinion. The district court did not make a materiality decision; it accurately stated that the TAC "lack[ed] [] specific allegations concerning the impact of the alleged triangulation scheme on the financial statements as a whole, and the relatively small percentage of total assets involved." SA143.

Regardless, the numbers the district court referenced were indisputably immaterial: €16 million in allegedly unearned revenue represented just 0.25% of Abengoa's total revenue of €6,312 million for 2012. *See* JA1107, SA143. Plaintiffs allege no facts overcoming the presumption that 0.25% difference is immaterial. *See Tabak v. Canadian Solar Inc.*, 549 F. App'x 24, 27 (2d Cir. 2013) (improperly recognized revenue constituting "only 2.7% of CSI's total 3Q2009 revenue" is immaterial); *ECA*, 553 F.3d at 204 ("[a]n accounting classification decision that affects less than one-third of a percent of total assets does not suggest materiality"); *Peifa Xu*, 2021 WL 773002, at *9 ("misstatement was not material, because the understated tax liability amounted only to 4.9% of . . . reported net revenue"); *In re Lone Pine Res., Inc.*, 2014 WL 1259653, at *4 (S.D.N.Y. 2014) (citing SEC Staff Accounting Bulletin No. 99, 64 Fed. Reg., 45,150 (1999)) (impact of less than 5% presumptively immaterial). Indeed, despite claiming the

district court made a "premature determination of materiality," plaintiffs make no argument that this 0.25% was material.

The case plaintiffs rely on is far afield. In *Altimeo Asset Management v. Qihoo 360 Technology Company, Ltd.*, the defendants stated that "the Buyer Group does not have any current plans" to relist the company it was purchasing for $9.4 billion, when it did have plans and was in active negotiations to do so. 19 F.4th 145, 150–151 (2d Cir. 2021). The *Altimeo* court found that this misleading statement or omission could be material to investors who claimed that they sold their portion of $9.4 billion in shares at a deflated price. *Id.*

The charges are obviously different here. Plaintiffs claim that the "Company's alleged systematic false recording of expenses" was material, but they miss the point. They do not plead facts. Aside from some vague scheme that they failed to plead, *see supra*, I.A–D, the only *particular* incident of a purported "false recording" is an allegation of a 0.25% deviation related to AVE Mecca Medina and Cunene Water Pipeline projects. JA1107. That is immaterial as a matter of law and does not support their claim that there was a "pervasive" violation of percentage-of-completion accounting. *See Pension Tr. of Chi.*, 553 F.3d at 204 ("[a]n accounting classification decision that affects less than one-third of a percent of total assets does not suggest materiality").

3. *The ICAC proceeding resulting in a fine against Deloitte without any determination against Abengoa does not support falsity.*

The Institute for Accounting and Accounts Audit ("ICAC"), an agency within Spain's Ministry of Economy, issued a fine against Deloitte based on its non-compliance with the requisite auditing standards. JA1145. Plaintiffs do not allege that there was a fine or finding made against Abengoa. This dulls any reliance thereon to show material falsity of any Abengoa disclosure. *See Touchstone Strategic Tr. v. Gen. Elec. Co.*, 2022 WL 4536800, at *2 (S.D.N.Y. 2022) (refusing to credit allegations from an order that was the "not the result of an actual adjudication of any of the issues") (quoting *Amorosa*, 2022 WL 3577838, at *2 (disregarding allegations from SEC investigation and civil complaint)); *In re E-House Sec. Litig.*, 2021 WL 4461777, at *14 (S.D.N.Y. 2021) (refusing to credit allegations "relying on arguments [from] Cayman Islands proceedings").[16]

Further, as discussed above, the PCAOB concluded that Deloitte's "audits had been properly completed and perfectly recorded." JA1147. The National Securities Market Commission, an agency with Spain's Ministry of Economy,

---

[16] For this reason, plaintiffs' reliance on *In Foreign Exchange Benchmark Rates* and *Information Resources* betrays them. The courts there considered allegations from foreign proceedings or investigations that were completed and resulted in fines or findings against the defendant. *See In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 74 F. Supp. 3d 581, 592 (S.D.N.Y. 2015) (foreign proceedings were completed and resulted in fines against the defendants when the district court rendered its opinion); *Info. Res., Inc. v. Dun & Bradstreet Corp.*, 1998 WL 851607, at *1 (S.D.N.Y. 1998) (considering findings).

made a final determination that there was no issue with Abengoa's financial statements. JA799 ¶ 3. The CNMV found that Abengoa provided investors with "sufficient information . . . to be able to assess the current situation of the ABENGOA group." JA799 ¶ 3, JA815 ¶ 36. Thus, the only findings anywhere concerning Abengoa's financial statements speaks to their adequacy.

> 4. *The National Court proceedings in Madrid in their investigatory phase do not support falsity.*

There have been no findings on the merits in the National Court proceedings in Madrid. *See* JA824 at 6:25–7:1. Plaintiffs purport to rely on the public prosecutor's allegations, without submitting the prosecutor's filing for the Court or Appellees to review. They simply purport to parrot those filings without any independent investigation. *Amorosa*, 2022 WL 3577838, at *3 (disregarding all secondhand allegations, including those borrowed from SEC investigation and civil complaint).

The prosecutor's supposed presentation of accusations does not change that the case "is in the 'investigatory stage,'" which plaintiffs acknowledge is "the initial stage where an investigation takes place . . . to find out the reality of the events that led to the initiation of the proceedings." JA933 ¶ 176, JA935 ¶ 180. The fact of an initial investigation and related accusations are insufficient to support falsity. *Touchstone Strategic Tr.*, 2022 WL 4536800, at *2; *Amorosa*, 2022 WL 3577838, at *3; *In re E-House Sec. Litig.*, 2021 WL 4461777, at *14.

44

5. *The criminal proceedings against Benjumea and Sánchez Ortega resulting in acquittals do not support falsity.*

Plaintiffs rely on Spanish prosecutions involving Benjumea and Sánchez Ortega, in which the only final determinations to date regarding either Benjumea or Sánchez Ortega were *acquittals. See* JA1120; *see also In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d at 471 (finding non-prosecution agreement was not independently admissible evidence). These proceedings certainly do not help plaintiffs.

**F.     Abengoa disclosed its capital raising activities and liquidity issues.**

When dismissing the SAC, the district court correctly found that plaintiffs could not maintain allegations of falsity as to Abengoa's statements because "all of [the alleged] capital-raising activities were public," which "underscored" plaintiffs' failure to show these statements were fraudulent. SA36. Plaintiffs continue to ignore the substantial disclosures and warnings regarding debt levels and liquidity made throughout the proposed class period, which preclude liability as the district court held. SA36. In dismissing the TAC, the district court correctly held that plaintiffs have not sufficiently alleged the underlying accounting fraud to show the statements were false or misleading. It distinguished *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 245 (2d Cir. 2016), which plaintiffs attempt to rely on again here. SA147. The district court recognized that the *Vivendi* jury analyzed evidence that the company publicly emphasized growth because it was hard to track, creating a

false sense of profitability and cash flow, and that there was significant evidence that the company had no cash flow, despite its statements to the contrary. SA147.

In contrast here, Abengoa repeatedly disclosed its reliance on "short-term financing lines to finance . . . working capital requirements" and detailed the risks associated with this reliance and what could happen if this financing became unavailable. *See* JA1156. As the TAC explains, it is this very disclosed risk that manifested and necessitated capital raises. Abengoa also disclosed the importance of its access to the capital markets and explained that it would "continue to monitor the evolution of our market capitalization." JA300 ("[W]e believe our market capitalization is affected by our level of indebtedness, as our refinancing risk may be high relative to certain other borrowers . . ."); JA263 ("We aim to continue to access the global capital markets from time to time, as appropriate and subject to market conditions, in order to further diversify our funding sources."); *see also In re ProShares Tr. Sec. Litig.*, 728 F.3d 96, 102–04 (2d Cir. 2013) (disclosing the risk that investments "may diverge significantly" precluded Section 11 liability for investment losses that followed because further disclosures of the risk of loss would not have been "viewed by a reasonable investor as having significantly altered the import of the total mix of information ProShares made available"); As the district court found, plaintiffs' failure to allege any particularized facts

demonstrating the falsity of the liquidity statements is "underscored" by plaintiffs' admission that "capital-raising activities were public." SA36.

### G. The district court properly held that claims based on the July 31 statement fail.

The district court properly determined – twice – that plaintiffs failed to plead that the July 31 Statement was false when made. SA148. Plaintiffs mistakenly claim that in doing so, the district court drew an inappropriate inference for Abengoa. App. Br. 64–65. But no inference is required because the "mere disclosure of adverse information shortly after a positive statement does not support a finding that the prior statement was false at the time it was made." *Elliott Assocs., L.P. v. Covance, Inc.*, 2000 WL 1752848, at 7 (S.D.N.Y. 2000).

Plaintiffs (Br. 64) tack this allegation on as "part of the overarching scheme to hide Abengoa's liquidity risk" and ask the Court to infer falsity. As the district court found, however, plaintiffs have not sufficiently alleged the existence of an accounting fraud scheme. SA148; *see also supra*, I.A–F. And the TAC does not plausibly connect this alleged misstatement with any putative scheme. The district court did nothing wrong by rejecting plaintiffs' calls for an inference in their favor without a well-pleaded factual predicate. *See Faulkner v. Verizon Commc'ns, Inc.*, 156 F. Supp. 2d 384, 400 (S.D.N.Y. 2001) (holding that the plaintiffs must provide "facts from which [falsity] could be inferred . . . to satisfy the requisites of Rule 9(b) and the PSLRA"); *SRM Glob. Fund L.P. v. Countrywide Fin. Corp.*, 2010 WL

2473595, at *10 (S.D.N.Y. 2010) (holding that the plaintiff must establish falsity before urging inferences), *aff'd sub nom. SRM Glob. Fund Ltd. P'ship v. Countrywide Fin. Corp.*, 448 F. App'x 116 (2d Cir. 2011).

The TAC cannot fairly challenge Abengoa's genuinely held belief on July 31 that it "at [that] time" on a Friday that it did not need to "tap" the capital markets. Abengoa's subsequent disclosure the following Monday that it would in fact seek capital, does not automatically render the July 31 or any other statement false as plaintiffs suggest. The notion that Abengoa deliberately lied about its liquidity needs on Friday and then disclosed the truth about these needs before market open Monday is implausible. To be sure, plaintiffs fail to allege any trading between the alleged misrepresentation and corrective disclosure. *See Batson v. Rim San Antonio Acquisition, LCC*, 2016 WL 6901312, at *9 (S.D.N.Y. 2016) (plaintiffs failed to plead "transaction causation" in absence of alleged false statement before "[p]laintiffs invested").

## II.   THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFFS FAILED TO ALLEGE CORPORATE SCIENTER.

Plaintiffs have failed to allege scienter as required for both of their claims against Abengoa.[17] To show scienter, plaintiffs must show a strong inference of

---

[17] As explained in Sánchez Ortega's brief, and incorporated herein, plaintiffs must allege scienter under Rule 9(b) and the PSLRA for purposes of their Securities Act claim because this claim sounds in fraud. *See Caiafa v. Sea Containers Ltd.*,

fraudulent intent. *Eichler*, 264 F.3d at 142. This requires (1) pleading facts showing that Appellees had both the motive and opportunity to commit fraud, or (2) presenting strong circumstantial evidence of conscious misbehavior or recklessness. *Id*. The Supreme Court has instructed: a court reviewing scienter allegations must "engage in a comparative evaluation," considering "not only inferences urged by the plaintiff . . . but also competing inferences rationally drawn from the facts alleged." *Tellabs*, 551 U.S. at 314.

Plaintiffs may plead Abengoa's scienter in two ways. The first and "most straightforward" way is to impute scienter to Abengoa from an individual defendant, director, or officer who either "made" the challenged misstatement or who, while "not the actual speaker," was "involved in the dissemination of the fraud." *Jackson v. Abernathy*, 960 F.3d 94, 98 (2d Cir. 2020). The second and "exceedingly rare" way allows "collective corporate scienter" to "be inferred" where the statement's falsity is exceedingly "dramatic." *Jackson*, 960 F.3d at 99 (internal quotations omitted). Plaintiffs fail to raise an inference of scienter as to any individual imputable to Abengoa, and do not come close to showing any alleged misstatements were "exceedingly dramatic." *Id*.; *see* JA1107; SA143. The district court's holistic analysis of the scienter allegations appropriately resulted in the determination that plaintiffs failed to satisfy their pleading burden.

---

2008 WL 11516813, at *5 (S.D.N.Y. 2008), *aff'd*, 331 F. App'x 14, *17 (2d Cir. 2009).

### A. The TAC failed to plead the scienter of any individual imputable to Abengoa.

#### *1.* *The district court properly found that plaintiffs failed to allege motive.*

To raise a strong inference of scienter through "motive and opportunity" to defraud, plaintiffs must allege the individuals whose scienter they seek to establish "benefitted in some concrete and personal way from the purported fraud." *ECA*, 553 F.3d at 198 (quoting *Novak*, 216 F.3d at 307–08). "General allegations that" these people "acted in their economic self-interest are not enough." *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 170 (2d Cir. 2000).

Sánchez Ortega's brief addresses the deficiencies of the allegations of his motive to commit the fraud alleged. The TAC fares no better with respect to Felipe Benjumea, the only other specific person whose actions plaintiffs claim support scienter.

As to the TAC's generalized motive allegations, the district court twice correctly applied settled law in finding the conclusory allegation that increased earnings led to additional compensation for "project managers all the way up through department heads and subsidiary directors" cannot give rise to an inference of Abengoa's scienter. SA150–151. It is unclear how the scienter of such unnamed, ill-defined individuals may be imputed to Abengoa. Regardless, the motivation "to show stronger financial statements . . . are exactly the kinds of motivations that

courts in this circuit routinely reject." SA44; *see also In re PXRE Grp., Ltd. Sec. Litig.*, 600 F. Supp. 2d 510, 532 (S.D.N.Y. 2009) (motive "to prevent the negative ramifications of a resultant drop of . . . stock price—even if such a drop would allegedly threaten the 'survival' of a company—is far too generalized") (citing *Eichler*, 264 F.3d at 142); *see also Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 54 (2d Cir. 1995) (holding that "the existence, without more, of executive compensation dependent upon stock value does not give rise to a strong inference of scienter") (citing *Ferber v. Travelers Corp.*, 785 F. Supp. 1101, 1107 (D. Conn. 1991) ("[I]ncentive compensation can hardly be the basis on which an allegation of fraud is predicated."). This generic motive theory is all plaintiffs appear to proffer on appeal. App. Br. 67–68.

Plaintiffs' motive allegations are also insufficient to the extent they rely on discounted FEs. SA149.

> 2.  *The district court correctly found that plaintiffs failed to allege conscious misbehavior or recklessness based on the same insufficiently plead allegations relied on for falsity.*

Because the TAC failed to adequately allege motive, "the strength of the circumstantial allegations" of scienter "must be correspondingly greater." *Eichler*, 264 F.3d at 142 (internal quotation marks and citation omitted).

The district court correctly concluded that the "triangulation scheme" allegations fail to support a strong inference of scienter. As discussed above, the

district court determined that these allegations were not suggestive of fraud "in light of [Abengoa's disclosures], the lack of specific allegations concerning the impact of the alleged triangulation scheme on the financial statements as a whole, and the relatively small percentage of total assets involved." SA143; *supra*, I.E.2. The district court found the KPMG report describing the triangulation scheme was insufficient to salvage this deficient theory. SA149. The failed "triangulation scheme" theory is how plaintiffs unsuccessfully sought and continue to seek to establish Benjumea's scienter.

Benjumea's emails reveal no hint of his state of mind. They show only advocacy for the negotiation and finalization of transactions to allow for the recording of actual costs. JA916 ¶ 105; *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007). There is no factual basis for inferring from these emails that Benjumea was promoting or approving the fabrication of costs.

Even adopting plaintiffs' unfounded characterizations of Benjumea's emails still leaves only "invoice triangulation" at Inabensa Turkey more than a year prior to the class period. The TAC offers no basis to measure the impact of such alleged conduct on Abengoa's total operations. *See Peifa Xu*, 2021 WL 773002, at *9. As explained above, the alleged irregularities at Inabensa Turkey were immaterial and irrelevant to Abengoa's aggregated financials and do not support a strong inference of scienter. *See, e.g.*, *Tabak*, 549 F. App'x at 27; *Peifa Xu*, 2021 WL 773002, at *9;

*Svezzese*, 67 F. App'x at 173 (holding that "allegations of accounting irregularities and violations" as to the percentage-of-completion accounting method did not "evidence fraudulent intent or recklessness sufficient to survive a motion to dismiss under the Second Circuit standard").

Similarly, the district court appropriately refused to draw an inference of scienter as to anyone based on a judge in the Spanish National Court granting a motion to add parties into an action. SA150. As the district court properly recognized, the Spanish court did not make any finding relevant to Abengoa's scienter. *See Touchstone Strategic Tr.*, 2022 WL 4536800, at *4 (disregarding SEC order that "made no findings regarding scienter"). And "the existence of an investigation alone is not sufficient to give rise to a requisite cogent and compelling inference of scienter." *City of Brockton Ret. Sys. v. Avon Prods., Inc.*, 2014 WL 4832321, at *23 (S.D.N.Y. 2014) (internal quotation marks and citation omitted); *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006); SA44 (citing *In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *17 n.17); *see also supra*, I.C.2; I.E.

Plaintiffs cite to *In re Petrobras Secs. Litig.* for the proposition that a police investigation and arrest of four non-defendant executives was enough to show scienter for the corporation. App. Br. 67–68 (citing 116 F. Supp. 3d 368, 382–83 (S.D.N.Y. 2015). They do not mention that in *Petrobras* the scienter of these non-

defendant executives was undisputed. Rather, the question in that case was whether these executives' scienter could be imputed to the corporation. *Id.* ("Although defendants do not dispute that the CAC adequately pleads scienter with respect to the four Corrupt Executives who carried out the bribery scheme, they argue that the adverse interest exception applies to the Petrobras entities because the Corrupt Executives acted entirely to benefit themselves and their political patrons, at the Company's expense."). As such, whether an investigation and arrests were enough to make a strong inference of scienter was not litigated in that case. *Id.*

Plaintiffs point to the ICAC's determination that Deloitte knew Abengoa's financial statements contained material inaccuracies, and that this provides the "'connective tissue'" the district court found lacking for scienter. App. Br. 68. But the ICAC only found Deloitte's "noncompliance with the auditing standards" related to "the absence of documentary evidence." JA1146. Deloitte's fine was not based on findings that Abengoa's account were false, and other agencies in both Spain and the US found no error in Deloitte's audit or any issues with Abengoa's financials. JA1147. So, this is all irrelevant. It does not begin to relate to Abengoa's scienter. *See Touchstone*, 2022 WL 4536800, at *4. Plaintiffs do not show how a fine against Deloitte provides the requisite "connective tissue" to Abengoa's entire global apparatus, especially considering the CNMV's exculpatory finding. Regardless, an accounting error is not sufficient to show

fraud. *See In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2014 WL 7176187, at *7 (S.D.N.Y. 2014) ("The fact of an error, even a large error, does not suggest knowledge or intent to misstate when the financial results were originally published.") (quoting *Dobina v. Weatherford Int'l Ltd.*, 909 F. Supp. 2d 228, 250–51 (S.D.N.Y. 2012)). Plaintiffs have not established an inference of scienter that is cogent and at least as compelling as any opposing inference of non-fraudulent intent.[18]

**B.     The district court properly found that plaintiffs failed to plead corporate scienter based on allegations of a 0.25% deviation.**

The TAC is devoid of well-pleaded allegations that support making this the "exceedingly rare" case where corporate scienter can be based on the "dramatic" nature of a statement's falsity. *See KBC Asset Mgmt.*, 2022 WL 480213, at *3 (finding "operational failure that never should have happened and . . . is deeply embarrassing" not sufficient to establish corporate scienter) (quoting *Jackson*, 960 F.3d at 99). In *Teamsters Local 445 Freight Division Pension Fund v. Dynex*, this Court offered the following hypothetical of such an exceedingly rare case: "[s]uppose General Motors announced that it had sold one million SUVs in 2006, and the actual number was zero." *Teamsters Loc. 445 Freight Div. Pension Fund v.*

---

[18] The district court also held that Sánchez Ortega's resignation was not suspicious, but even if it were, it would not rescue plaintiffs' claims. SA151–152. As noted, Sánchez Ortega's scienter is addressed in his brief, which Abengoa incorporates by reference here.

*Dynex Cap. Inc.*, 531 F.3d 190, 195 (2d Cir. 2008) (citing *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 710 (7th Cir. 2008)). In line with that standard, courts in this Circuit have found an inference of corporate scienter where a company failed to disclose an $8.1 billion exposure to collateralized debt obligations, *see In re MBIA, Inc., Sec. Litig.*, 700 F. Supp. 2d 566, 574 (S.D.N.Y. 2010), and where a company misrepresented $4.4 billion in capital costs, *see In re NovaGold Res. Inc. Sec. Litig.*, 629 F. Supp. 2d 272, 299–300 (S.D.N.Y. 2009).

The TAC contains no allegations approaching this magnitude. As described above, plaintiffs entirely failed to show any connection between the alleged misstatements and the impact on Abengoa. Most generously, the TAC's only specific factual allegations of dollar amounts impacted involve alleged unearned revenue representing just 0.25% of Abengoa's total revenue for 2012. To put that in context with the General Motors SUV example from *Dynex*, that would be a disclosure of 1,000,000 sales when the true number was 997,500. This is immaterial and certainly not so "dramatic" to support corporate scienter. *Jackson*, 960 F.3d at 99; *see* JA1107; SA143; *In re Duke Energy Corp. Sec. Litig.*, 282 F. Supp. 2d 158, 160–61 (S.D.N.Y. 2003), *aff'd*, 113 F. App'x 427 (2d Cir. 2004) (allegations concerning "revenues for the relevant period amounts to about 0.3% of Duke Energy's total revenues for that period—an immaterial percentage as a matter of law.").

The district court's analysis resulted appropriately in the determination that plaintiffs' scienter allegations cumulatively fail to satisfy their burden.

## III.  THE SECURITIES ACT CLAIMS ARE UNTIMELY.

Even assuming plaintiffs stated a Securities Act claim against Abengoa, the district court correctly dismissed it as time barred. SA127. As explained in the Underwriters' brief, incorporated herein, plaintiffs first filed Section 11 claims on August 2, 2016, more than one year after disclosures by Abengoa alerted the market to the alleged misstatements underlying the Securities Act claims. SA129; 15 U.S.C. § 77m. As explained in the Underwriters' brief, the claims are thus time barred under the statute of limitations (Br. I.A), and the statute of repose also provides an independent ground for dismissal of the Securities Act claim against Abengoa (Br. I.B).

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should affirm the district court's judgment.

Dated:  March 13, 2023        Respectfully submitted,
      New York, New York      *s/ Jeffrey D. Rotenberg*
                                      Richard F. Hans
                                      Jeffrey D. Rotenberg
                                      Marc A. Silverman
                                      1251 Avenue of the Americas
                                      New York, NY 10020
                                      (212) 335-4500 (Phone)
                                      (212) 335-4501 (Fax)
                                      richard.hans@us.dlapiper.com

jeffrey.rotenberg@us.dlapiper.com
marc.silverman@us.dlapiper.com

*Attorneys for Defendants-Appellee*
*Abengoa, S.A.*

<u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Second Circuit Local Rule 32.1(a)(4) because this brief contains 12,025 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14 point Times New Roman font.

Dated:  March 13, 2023
      New York, New York

<u>*s/ Jeffrey D. Rotenberg*</u>
Richard F. Hans
Jeffrey D. Rotenberg
Marc A. Silverman
1251 Avenue of the Americas
New York, NY 10020
(212) 335-4500 (Phone)
(212) 335-4501 (Fax)
richard.hans@us.dlapiper.com
jeffrey.rotenberg@us.dlapiper.com
marc.silverman@us.dlapiper.com

*Attorneys for Defendant-Appellee*
*Abengoa, S.A.*