# 22-2438-cv

# United States Court of Appeals

### for the

# Second Circuit

JESSE SHERMAN, ARLETTE SHERMAN,

*Lead Plaintiffs-Appellants,*

PAMCAH-UA LOCAL 675 PENSION FUND,

*Movant-Appellant,*

MICHAEL FRANCISCO, Individually and on
Behalf of All Others Similarly Situated,

*Plaintiff,*

DANIEL LAMOUREAUX, Individually and on
Behalf of All Others Similarly Situated,

*Consolidated-Plaintiff,*

– v. –

*(For Continuation of Caption See Inside Cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLEE
## MANUEL SÁNCHEZ ORTEGA

STEPHEN A. RADIN
BEN MARCU
LIZ GREFRATH
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

*Counsel for Defendant-Appellee Manuel Sánchez Ortega*

ABENGOA, S.A., MANUEL SÁNCHEZ ORTEGA, CANACCORD GENUITY INC., HSBC SECURITIES (USA) INC., MERRILL LYNCH INTERNATIONAL, SOCIÉTÉ GÉNÉRALE,

*Defendants-Appellees,*

SANTIAGO SEAGE, BARBARA ZUBIRIA, IGNACIO GARCIA ALVEAR, ALICIA VELARDE VALIENTE, BANCO SANTANDER, S.A., CARLOS SUNDHEIM LOSADA, CHRISTOPHER HANSMEYER, CLAUDI SANTIAGO PONSA, ENRIQUE BORRAJO LOVERA, FELIPE BENJUMEA LLORENTE, FERNANDO SOLIS MARTINEZ-CAMPOS, IGNACIO SOLIS GUARDIOLA, JAVIER BENJUMEA LLORENTE, JESUS GARCIA-QUILEZ GOMEZ, JOSE B. TERCEIRO, JOSE BORRELL FONTELLES, JOSE JOAQUIN ABAURRE LLORENTE, JOSE LUIS AYA ABAURRE, MARIA TERESA BENJUMEA LLORENTE, RICARDO MARTINEZ RICO,

*Defendants.*

# TABLE OF CONTENTS

Page

JURISDICTIONAL STATEMENT ..........................................................1

ISSUES PRESENTED.........................................................................1

STATEMENT OF THE CASE.................................................................2

    A.    Facts Relevant to Issues Submitted for Review ....................................2

    B.    Relevant Procedural History ................................................6

    C.    Rulings Presented For Review ..............................................9

STANDARD FOR REVIEW ..................................................................9

SUMMARY OF ARGUMENT ................................................................9

ARGUMENT ..................................................................................16

I.    THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFFS FAIL TO STATE A CLAIM AGAINST MR. SÁNCHEZ ORTEGA UNDER SECTIONS 10(b) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934 ......................................................16

    A.    Plaintiffs Section 10(b) Claim Against Mr. Sánchez Ortega Fails On The Grounds Argued By Abengoa: Plaintiffs Fail To Allege A Misstatement ....................................................16

    B.    Plaintiffs Section 10(b) Claim Against Mr. Sánchez Ortega Also Fails Because Plaintiffs Do Not Allege Scienter on the Part of Mr. Sánchez Ortega ..............................................16

        1.    Plaintiffs Do Not Allege Motive – And Concede The Opposite of Motive: The Alleged Fraud Cost Mr. Sánchez Ortega Millions of Euros ............................20

        2.    Plaintiffs Do Not Allege Conscious Misbehavior or Recklessness........................................................21

            a.    Service as Chief Executive Officer ................................22

            b.    Sarbanes-Oxley Certification .........................................25

            c.    Criminal Proceedings in Spain .......................................27

            d.    Mr. Sánchez Ortega's Resignation ..................................34

    C.    Plaintiffs Fail To Allege Control Person Liability Under Section 20(a)..........................................................41

II.     THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFFS
        FAIL TO STATE A CLAIM AGAINST MR. SÁNCHEZ ORTEGA
        UNDER SECTIONS 11 AND 15 OF THE SECURITIES ACT OF
        1933 ...............................................................................................45

        A.     Plaintiffs' Section 11 Claim Against Mr. Sánchez Ortega Fails
               On The Grounds Argued By The Underwriter Defendants and
               Abengoa: The Claims Are Time-Barred and Plaintiffs Have
               Failed To Allege A Misstatement .........................................46

        B.     Plaintiffs' Section 11 Claim Against Mr. Sánchez Ortega Also
               Fails Because the Claim Sounds in Fraud and Plaintiffs Do Not
               Allege Scienter ....................................................................46

        C.     Plaintiffs' Fail To Allege Control Person Liability Under
               Section 15 ...........................................................................53

CONCLUSION ..................................................................................................54

WEIL:\98852529\5\10471.0003

# TABLE OF AUTHORITIES

**Cases:**            **Page(s)**

*In re Aceto Corp. Sec. Litig.*,
    2019 WL 3606745 (E.D.N.Y. Aug. 6, 2019) ....................................................35

*In re Adient plc Sec. Litig.*,
    2020 WL 1644018 (S.D.N.Y. Apr. 2, 2020) ...............................................35, 36

*Amorosa v. Gen. Elec. Co.*,
    2022 WL 3577838 (S.D.N.Y. Aug. 19, 2022)..............................................4, 30

*Adirondack Transit Lines, Inc. v. United Transp. Union, Loc. 1582*,
    305 F.3d 82 (2d Cir. 2002) ...................................................................................46

*Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*,
    28 F.4th 343 (2d Cir. 2022) .......................................................9, 16, 19, 20, 22

*Behrendsen v. Yangtze River Port & Logistics Ltd.*,
    2021 WL 2646353 (E.D.N.Y. June 28, 2021) ....................................................42

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*,
    448 F.3d 573 (2d Cir. 2006) ................................................................................47

*In re BHP Billiton Ltd. Sec. Litig.*,
    276 F. Supp. 3d 65 (S.D.N.Y. 2017) ..................................................................18

*In re BioScrip, Inc. Sec. Litig.*,
    95 F. Supp. 3d 711 (S.D.N.Y. 2015) ..................................................................50

*In re BISYS Sec. Litig.*,
    397 F. Supp. 2d 430 (S.D.N.Y. 2005) ....................................................11, 35, 36

*Blank v. TriPoint Glob. Equities, LLC*,
    338 F. Supp. 3d 194 (S.D.N.Y. 2018) ................................................................23

*Born v. Quad/Graphics, Inc.*,
    521 F. Supp. 3d 469 (S.D.N.Y. 2021) ................................................................23

iii

*C.D.T.S. No. 1 & A.T.U. Loc. 1321 Pension Plan v. UBS AG*,
    2013 WL 6576031 (S.D.N.Y. Dec. 13, 2013), *aff'd sub nom. Westchester
    Teamsters Pension Fund v. UBS AG*, 604 F. App'x 5 (2d Cir. 2015)..........39, 40

*Caiafa v. Sea Containers Ltd.*,
    2008 WL 11516813 (S.D.N.Y. May 15, 2008), *aff'd*, 331 F. App'x 14
    (2d Cir. 2009)........................................................................................52

*Caiafa v. Sea Containers Ltd.*,
    331 F. App'x 14 (2d Cir. 2009) ...........................................................49

*In re Carter-Wallace, Inc. Sec. Litig.*,
    1999 WL 1029713 (S.D.N.Y. Nov. 10, 1999), *aff'd*, 220 F.3d 36 (2d Cir.
    2000) .....................................................................................................11

*In re Chembio Diagnostics, Inc. Sec. Litig.*,
    586 F. Supp. 3d 199 (E.D.N.Y. 2022), *reconsideration denied*, 2022 WL
    2872671 (E.D.N.Y. July 21, 2022).................................................51, 52

*In re Chembio Diagnostics, Inc. Sec. Litig.*,
    2022 WL 2872671 (E.D.N.Y. July 21, 2022)...............................51, 52

*Chen v. X Fin.*,
    2022 WL 765417 (E.D.N.Y. Mar. 13, 2022).....................................23

*City of Brockton Ret. Sys. v. Avon Prods., Inc.*,
    2014 WL 4832321 (S.D.N.Y. Sept. 29, 2014) ............................23, 29

*City of N. Miami Beach Police Officers' & Firefighters' Ret. Plan v. Nat'l
    Gen. Holdings Corp.*, 2021 WL 212337 (S.D.N.Y. Jan. 21, 2021), *aff'd
    sub nom. Town of Davie Police Officers Ret. Sys. v. City of N. Miami
    Beach Police Officers' & Firefighters' Ret. Plan*,
    2021 WL 5142702 (2d Cir. Nov. 5, 2021) ........................................22

*City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*,
    450 F. Supp. 3d 379 (S.D.N.Y. 2020) ...............................................18

*City of Taylor Gen. Emps. Ret. Sys. v. Magna Int'l Inc.*,
    967 F. Supp. 2d 771 (S.D.N.Y. 2013) ...............................................11

*Colautti v. Franklin*,
    439 U.S. 379 (1979).............................................................................46

iv

*Cortina v. Anavex Life Scis. Corp.*,
2016 WL 7480415 (S.D.N.Y. Dec. 29, 2016) ....................................................30

*Cozzarelli v. Inspire Pharms. Inc.*,
549 F.3d 618 (4th Cir. 2008) ............................................................................50

*Dandridge v. Williams*,
397 U.S. 471 (1970)..........................................................................................46

*Das v. Rio Tinto PLC*,
332 F. Supp. 3d 786 (S.D.N.Y. 2018) ..............................................................35

*In re DDAVP Direct Purchaser Antitrust Litig.*,
585 F.3d 677 (2d Cir. 2009) .............................................................................18

*Deluca v. GPB Auto. Portfolio, LP*,
2020 WL 7343788 (S.D.N.Y. Dec. 14, 2020) ..................................................30

*In re Deutsche Bank Aktiengesellschaft Sec. Litig.*,
2017 WL 4049253 (S.D.N.Y. June 28, 2017), *aff'd sub nom. Sfiraiala v.
Deutsche Bank Aktiengesellschaft*, 729 F. App'x 55 (2d Cir. 2018)..................30

*In re Diebold Nixdorf, Inc., Sec. Litig.*,
2021 WL 1226627 (S.D.N.Y. Mar. 30, 2021)............................................26, 36

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
822 F.2d 1242 (2d Cir. 1987) ...........................................................................18

*In re DraftKings, Inc. Sec. Litig.*,
2023 WL 145591 (S.D.N.Y. Jan. 10, 2023) ......................................4, 12, 22, 23

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009) .......................................................................19, 20

*Ernst & Ernst v. Hochfelder*,
425 U.S. 185 (1976)..........................................................................................17

*Fogel v. Wal-Mart de Mexico SAB de CV*,
2017 WL 751155 (S.D.N.Y. Feb. 17, 2017) ....................................................23

*In re Forcefield Energy, Inc. Sec. Litig.*,
2017 WL 1319802 (S.D.N.Y. Mar. 29, 2017)...................................................43

v

*Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*,
268 F. Supp. 3d 526 (S.D.N.Y. 2017) ..............................................................40

*In re Fuwei Films Sec. Litig.*,
634 F. Supp. 2d 419 (S.D.N.Y. 2009) ...............................................................50

*Garfield v. NDC Health Corp.*,
466 F.3d 1255 (11th Cir. 2006) ...................................................................26, 27

*In re Gentiva Sec. Litig.*,
932 F. Supp. 2d 352 (E.D.N.Y. 2013) ...................................................29, 50, 52

*Gillis v. QRX Pharma Ltd.*,
197 F. Supp. 3d 557 (S.D.N.Y. 2016) ..............................................................36

*Glaser v. The9, Ltd.*,
772 F. Supp. 2d 573 (S.D.N.Y. 2011) ..............................................6, 12, 38, 40

*Glazer Cap. Mgmt., LP v. Magistri*,
549 F.3d 736 (9th Cir. 2008) ............................................................................27

*Gregory v. ProNAi Therapeutics Inc.*,
297 F. Supp. 3d 372 (S.D.N.Y.), *aff'd*, 757 F. App'x 35 (2d Cir. 2018) ...........37

*In re Henry Schein, Inc. Sec. Litig.*,
2019 WL 8638851 (E.D.N.Y. Sept. 17, 2019) ..................................................30

*In re Hertz Glob. Holdings Inc.*,
905 F.3d 106 (3d Cir. 2018) .............................................................................26

*In re HEXO Corp. Sec. Litig.*,
524 F. Supp. 3d 283 (S.D.N.Y. 2021) ..............................................................50

*Ho v. Duoyuan Glob. Water, Inc.*,
887 F. Supp. 2d 547 (S.D.N.Y. 2012) ..............................................................40

*Honeyman v. Hoyt (In re Carter-Wallace, Inc. Sec. Litig.)*,
220 F.3d 36 (2d Cir. 2000) ...............................................................................21

*In re Iconix Brand Grp., Inc.*,
2017 WL 4898228 (S.D.N.Y. Oct. 25, 2017)........................................12, 35, 37

*Ind. Elec. Workers Pension Tr. Fund IBEW v. Shaw Grp., Inc.*,
    537 F.3d 527 (5th Cir. 2008) ..............................................................27

*Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers Loc. #6 Pension
    Fund v. Int'l Bus. Machs. Corp.*, 205 F. Supp. 3d 527 (S.D.N.Y. 2016) .....13, 26

*Jackson v. Abernathy*,
    960 F.3d 94 (2d Cir. 2020) ................................................................25

*JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*,
    412 F.3d 418 (2d Cir. 2005) ..............................................................45

*In re JP Morgan Chase Sec. Litig.*,
    363 F. Supp. 2d 595 (S.D.N.Y. 2005) .................................................53

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001) ...............................................11, 12, 20, 21, 22

*KBC Asset Mgmt. NV v. MetLife, Inc.*,
    2022 WL 480213 (2d Cir. Feb. 17, 2022) ......................................36, 37

*In re Keyspan Corp. Sec. Litig.*,
    383 F. Supp. 2d 358 (E.D.N.Y. 2003) ..................................................6

*Knipe v. Skinner*,
    999 F.2d 708 (2d Cir. 1993) ..............................................................45

*Konkol v. Diebold, Inc.*,
    590 F.3d 390 (6th Cir. 2009), *abrogated on other grounds by Matrixx
    Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011)..............................27

*Kuriakose v. Fed. Home Loan Mortg. Corp.*,
    897 F. Supp. 2d 168 (S.D.N.Y. 2012), *aff'd sub nom. Cent. States, Se. &
    Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x
    72 (2d Cir. 2013).............................................................................3

*Lewis v. Graves*,
    701 F.2d 245 (2d Cir. 1983) .........................................................37, 38

*Ley v. Vistcon Corp.*,
    543 F.3d 801 (6th Cir. 2008), *abrogated on other grounds by Matrixx
    Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011)..............................27

vii

*Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp., PLC*,
  902 F. Supp. 2d 329 (S.D.N.Y. 2012), *aff'd sub nom. IBEW Loc. Union
  No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland
  Grp., PLC*, 783 F.3d 383 (2d Cir. 2015) .................................................37, 39, 40

*Lipow v. Net1 UEPS Techs., Inc.*,
  131 F. Supp. 3d 144 (S.D.N.Y. 2015) ...................................................6, 23, 29, 30

*In re Lululemon Sec. Litig.*,
  14 F. Supp. 3d 553 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir.
  2015) .........................................................................................................................11

*Marcu v. Cheetah Mobile Inc.*,
  2020 WL 4016645 (S.D.N.Y. July 16, 2020) ......................................................23

*In re MBIA, Inc. Sec. Litig.*,
  700 F. Supp. 2d 566 (S.D.N.Y. 2010) ..................................................................19

*In re Micro Focus Int'l Plc Sec. Litig.*,
  2020 WL 5817275 (S.D.N.Y. Sept. 29, 2020) ....................................................52

*Mills v. Polar Molecular Corp.*,
  12 F.3d 1170 (2d Cir. 1993) ..................................................................................51

*Mishkin v. Ageloff*,
  1998 WL 651065 (S.D.N.Y. Sept. 23, 1998) .................................................43, 44

*Mizzaro v. Home Depot, Inc.*,
  544 F.3d 1230 (11th Cir. 2008) ............................................................................27

*In re Morgan Stanley Info. Fund Sec. Litig.*,
  592 F.3d 347 (2d Cir. 2010) ..................................................................................45

*In re MRU Holdings Sec. Litig.*,
  769 F. Supp. 2d 500 (S.D.N.Y. 2011) ...............................................................6, 11

*N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan &
  Plymouth Cnty. Ret. Ass'n v. MDC Partners, Inc.*,
  2016 WL 5794774 (S.D.N.Y. Sept. 30, 2016) .............................4, 26, 36, 38, 40

*Novak v. Kasaks*,
  216 F.3d 300 (2d. Cir. 2000) ................................................................................24

WEIL:\98852529\5\10471.0003

*Pa. Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp.*,
874 F. Supp. 2d 341 (S.D.N.Y. 2012) ...............................................................18

*Patel v. L-3 Commc'ns Holdings Inc.*,
2016 WL 1629325 (S.D.N.Y. Apr. 21, 2016) ....................................................27

*In re Petrobras Sec. Litig.*,
116 F. Supp. 3d 368 (S.D.N.Y. 2015) ...............................................................34

*In re Plug Power, Inc. Sec. Litig.*,
2022 WL 4631892 (S.D.N.Y. Sept. 29, 2022) ...................................................26

*Plumbers & Pipefitters Nat'l Pension Fund v. Orthofix Int'l N.V.*,
89 F. Supp. 3d 602 (S.D.N.Y. 2015) .................................................................25

*Plumbers & Steamfitters Loc. 773 Pension Fund v. Canadian Imperial Bank
of Com.*, 694 F. Supp. 2d 287 (S.D.N.Y. 2010).................................................23

*In re PXRE Grp., Ltd., Sec. Litig.*,
600 F. Supp. 2d 510 (S.D.N.Y. 2009), *aff'd sub nom. Condra v. PXRE
Grp. Ltd.*, 357 F. App'x 393 (2d Cir. 2009) ......................................................35

*Quintanilla-Mejia v. Garland*,
3 F.4th 569 (2d Cir. 2021) ................................................................................45

*Reilly v. U.S. Physical Therapy, Inc.*,
2018 WL 3559089 (S.D.N.Y. July 23, 2018)......................................................26

*In re Renewable Energy Grp. Sec. Litig.*,
2022 WL 14206678 (2d Cir. Oct. 25, 2022) .....................................13, 17, 24, 51

*In re Rockwell Med., Inc. Sec. Litig.*,
2018 WL 1725553 (S.D.N.Y. Mar. 30, 2018)....................................................22

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004) ............................................................48, 49, 50, 51

*Rotunno v. Wood*,
2022 WL 14997930 (2d Cir. Oct. 27, 2022) .....................................................35

*S. Cherry St., LLC v. Hennessee Grp. LLC*,
573 F.3d 98 (2d Cir. 2009) ...............................................................................21

WEIL:\98852529\5\10471.0003

*Salis v. Mayorkas*,
2021 WL 6425204 (2d Cir. Oct. 21, 2021) ........................................................45

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Phillip Morris Cos.*, 75 F.3d 801 (2d Cir. 1996) ........................................................12

*Schaffer v. Horizon Pharma PLC*,
2018 WL 481883 (S.D.N.Y. Jan. 18, 2018) ........................................................30

*Schiro v. Cemex, S.A.B. de C.V.*,
396 F. Supp. 3d 283 (S.D.N.Y. 2019) ........................................34, 36, 37, 38, 40

*SEC v. First Jersey Sec., Inc.*,
101 F.3d 1450 (2d Cir. 1996) ........................................................41

*SEC v. Yorkville Advisors, LLC*,
305 F. Supp. 3d 486 (S.D.N.Y. 2018) ........................................................43

*Set Cap. LLC v. Credit Suisse Grp. AG*,
996 F.3d 64 (2d Cir. 2021) ........................................................17

*Shields v. Citytrust Bancorp, Inc.*,
25 F.3d 1124 (2d Cir. 1994) ........................................................12

*In re Silvercorp Metals, Inc. Sec. Litig.*,
26 F. Supp. 3d 266 (S.D.N.Y. 2014) ........................................................18

*Silverstrand Invs. v. AMAG Pharms., Inc.*,
707 F.3d 95 (1st Cir. 2013) ........................................................51

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*,
365 F.3d 353 (5th Cir. 2004) ........................................................17

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
33 F. Supp. 3d 401 (S.D.N.Y. 2014) ........................................................42, 43

*Steamfitters Loc. 449 Pension Plan v. AT&T Inc.*,
2022 WL 17587853 (2d Cir. Dec. 13, 2022) ........................................................49

*Stichting Pensioenfonds ABP v. Wachovia Corp. (In re Wachovia Equity Sec. Litig.)*, 753 F. Supp. 2d 326 (S.D.N.Y. 2011) ........................................................23

WEIL:\98852529\5\10471.0003

*Strougo v. Barclays PLC*,
105 F. Supp. 3d 330 (S.D.N.Y. 2015) ................................................................23

*Sudler v. City of New York*,
689 F.3d 159 (2d Cir. 2012) ...............................................................................46

*Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*,
531 F.3d 190 (2d Cir. 2008) ...............................................................................24

*Tecku v. Yieldstreet, Inc.*,
2022 WL 1322231 (S.D.N.Y. May 3, 2022) .....................................................42

*Tellabs Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)........................... 1, 10, 11, 12, 17, 19, 20, 22, 25, 27, 34, 38

*Touchstone Strategic Tr. v. Gen. Elec. Co.*,
2022 WL 4536800 (S.D.N.Y. Sept. 28, 2022) ..................................................30

*Turner v. MagicJack VocalTec, Ltd.*,
2014 WL 406917 (S.D.N.Y. Feb. 3, 2014) .........................................................6

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
2022 WL 4085677 (S.D.N.Y. Sept. 2, 2022) ....................................................18

*In re UBS AG Sec. Litig.*,
2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012), *aff'd sub nom. City of
Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173
(2d Cir. 2014)................................................................................................30, 36

*Ultramares Corp. v Touche*,
255 N.Y. 170 (1931) ...........................................................................................51

*Van Dongen v. CNinsure Inc.*,
951 F. Supp. 2d 457 (S.D.N.Y. 2013) ...............................................................40

*In re Veon Ltd. Sec. Litig.*,
2018 WL 4168958 (S.D.N.Y. Aug. 30, 2018)........................................35, 42, 43

*Viacom Int'l Inc. v. Icahn*,
946 F.2d 998 (2d Cir. 1991) ...............................................................................46

*In re Weight Watchers Int'l Inc., Sec. Litig.*,
504 F. Supp. 3d 224 (S.D.N.Y. 2020) ...............................................................43

xi

*Wilbush v. Ambac Fin. Grp., Inc.*,
   271 F. Supp. 3d 473 (S.D.N.Y. 2017) ................................................................37

*Woodley v. Wood*,
   2022 WL 103563 (S.D.N.Y. Jan. 11, 2022), *aff'd sub nom. Rotunno v. Wood*, 2022 WL 14997930 (2d Cir. Oct. 27, 2022) ......................................23, 36

*Woolgar v. Kingstone Co.*,
   477 F. Supp. 3d 193 (S.D.N.Y. 2020) .......................................................11, 36

*Wyche v. Advanced Drainage Sys., Inc.*,
   2017 WL 971805 (S.D.N.Y. Mar. 10, 2017), *aff'd*, 710 F. App'x 471 (2d Cir. 2017) ....................................................................................................35

*Y-GAR Cap. LLC v. Credit Suisse Grp. AG*,
   2020 WL 71163 (S.D.N.Y. Jan. 2, 2020) .......................................................50

*Zhong Zheng v. Pingtan Marine Enter. Ltd.*,
   379 F. Supp. 3d 164 (E.D.N.Y. 2019) ............................................................26

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ..........................................................................26

**Statutes and Rules:**

15 U.S.C. § 77k(a)(1) ...........................................................................................45

15 U.S.C. § 77v .......................................................................................................1

15 U.S.C. § 78j(b) ...................................................................................................1

15 U.S.C. § 78u-4(b)(2) .........................................................................................17

15 U.S.C. § 78aa ......................................................................................................1

28 U.S.C. § 1291 .....................................................................................................1

28 U.S.C. § 1331 .....................................................................................................1

17 C.F.R. § 240.10b-5 .............................................................................................1

Fed. R. Civ. P. 9(b) ................................................. 10, 15, 17, 46, 49, 50, 51, 53

WEIL:\98852529\5\10471.0003

# JURISDICTIONAL STATEMENT

The United States District Court for the Southern District of New York (Edgardo Ramos, District Judge) had jurisdiction over this matter pursuant to 28 U.S.C. § 1331) (federal question), 15 U.S.C. § 77v (jurisdiction for offenses and suits under the Securities Act of 1933), and 15 U.S.C. § 78aa (jurisdiction for offenses and suits under the Securities Exchange Act of 1934). This Court has jurisdiction pursuant to 28 U.S.C. § 1291 (final decisions of district courts). The orders appealed from were entered on August 21, 2020, September 10, 2021 and August 30, 2022. Judgment was entered on August 31, 2022. The notice of appeal was timely filed on September 29, 2022.

# ISSUES PRESENTED

1. Did the district court properly dismiss plaintiffs' claim against Manuel Sánchez Ortega under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder (1) because the claim fails for the reasons Abengoa contends in its separate brief, or, (2) even if the claim survives against Abengoa, because plaintiffs fail to allege scienter on the part of Mr. Sánchez Ortega due to plaintiffs' failure to allege facts demonstrating, as required by *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007), a "strong inference" of fraudulent intent that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent"?

2.     Did the district court properly dismiss plaintiffs' control person claim under Section 20(a) of the Securities Exchange Act of 1934 against Mr. Sánchez Ortega (1) because plaintiffs fail to allege a primary violation under Section 10(b) by the controlled entity, Abengoa, or, (2) even if the claim survives against Abengoa, because plaintiffs fail to allege culpable participation on the part of Mr. Sánchez Ortega?

3.     Did the district court properly dismiss plaintiffs' claim against Mr. Sánchez Ortega under Section 11 of the Securities Act of 1933 (1) because the claim fails for the reasons the Underwriter Defendants (defined below) and Abengoa contend in their separate briefs, or, (2) even if the claim survives against the Underwriter Defendants or Abengoa, because plaintiffs' Section 11 claim against Mr. Sánchez Ortega sounds in fraud and plaintiffs fail to allege scienter on the part of Mr. Sánchez Ortega?

4.     Did the district court properly dismiss plaintiffs' control person claim under Section 15 of the Securities Act of 1933 against Mr. Sánchez Ortega because plaintiffs fail to allege a primary violation under Section 11 by the controlled entity, Abengoa?

## STATEMENT OF THE CASE

### A.     Facts Relevant to Issues Submitted for Review

This action challenges statements made with and following an October

WEIL:\98852529\5\10471.0003

17, 2013 public offering of American Depository Shares ("ADSs") by Abengoa, S.A., a Spanish energy and clean technology company headquartered in Seville, Spain. During the alleged class period, October 17, 2013 to August 3, 2015, Abengoa had sprawling worldwide operations in more than 70 countries in Europe, North America, South America, Africa, and Asia, with over 500 subsidiaries and over 27,000 employees worldwide. SA98-99; JA904 ¶53; JA261-62, 264. Mr. Sánchez Ortega served as Abengoa's chief executive officer until he resigned on May 19, 2015. Appellants Br. at 21.

Plaintiffs allege that the statements challenged in this action were false and misleading because Abengoa did not disclose a fraud, notwithstanding the absence of even a single restatement or revision of Abengoa's financial figures during the 7-1/2 years since the end of the alleged class period – surely a fact that "negat[es] any inference" that Abengoa "materially misstated its financials." *Kuriakose v. Fed. Home Loan Mortg. Corp.*, 897 F. Supp. 2d 168, 181 (S.D.N.Y. 2012), *aff'd sub nom. Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72 (2d Cir. 2013).

According to plaintiffs, the alleged fraud was masterminded by Filipe Benjumea Llorente, a member of Abengoa's founding family and Abengoa's executive chairman until September 2015. Appellants Br. at 17 n.5. Plaintiffs allege that

WEIL:\98852529\5\10471.0003

Mr. Benjumea Llorente sent emails "order[ing] senior officials at various subsidiaries to artificially inflate the percentages of completion of projects and profit margins by recording expenses incurred on unrelated projects" – so called "invoice triangulation." *Id.* at 2.

Plaintiffs rely heavily on allegations made by a confidential whistleblower, "FE7," whose identity plaintiffs do not claim they know and whose allegations plaintiffs do not claim they have vetted, much less confirmed. SA136; Appellants Br. at 9-12, 14, 25, 30, 39-40, 45, 47-48, 52, 55, 68. "Courts 'generally do not consider averments taken directly from uncorroborated allegations embedded in a complaint in another action or parroted allegations for which counsel has not conducted independent investigation.'" *Amorosa v. Gen. Elec. Co.*, 2022 WL 3577838, at *1 (S.D.N.Y. Aug. 19, 2022) (quoting *N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan & Plymouth Cnty. Ret. Ass'n v. MDC Partners, Inc.*, 2016 WL 5794774, at *8 (S.D.N.Y. Sept. 30, 2016) (Sullivan, J.)); *see also In re DraftKings Inc. Sec. Litig.*, 2023 WL 145591, at *18-20 (S.D.N.Y. Jan. 10, 2023) (collecting cases "discount[ing] or put[ting] aside altogether as ill-pled" allegations based on an "unidentified source" where plaintiffs' counsel "does not even know the source's name, position, or other attributes tending to bear on the source's credibility").

Plaintiffs also rely heavily on allegations by five other anonymous

4

"former employees" plaintiffs call "FE1" to "FE5," and an anonymous employee of a company involved in a joint venture with Abengoa that had a falling out with Abengoa, who plaintiffs call "FE6." Appellants Br. at 1, 11-16, 30, 40, 45-55, 68-69. Together, plaintiffs say, the allegations by these seven anonymous individuals "provide a consistent picture" of "accounting fraud." *Id*. at 1. Plaintiffs also point, repeatedly, to a sanction assessed by Spain's Instituto de Contabilidad y Auditoría de Cuentas (the "ICAC") against Abengoa's independent auditor, Deloitte S.L., in connection with Deloitte's audits of Abengoa. *Id*. at 23-25, 29-30, 40, 43-44, 49-50, 52-53, 57, 67-68.

Plaintiffs allege – in completely conclusory fashion, and without a shred of factual support – that Mr. Sánchez Ortega participated, with scienter, in the alleged fraud. But plaintiffs tie none of their allegations of fraud to Mr. Sánchez Ortega. Plaintiffs do not allege that any of Mr. Benjumea Llorente's emails were sent to, received by, or even mention Mr. Sánchez Ortega. FE7's anonymous whistleblower letter never mentions Mr. Sánchez Ortega. Plaintiffs do not point to a single allegation attributed to any of FE1 to FE7 that mentions Mr. Sánchez Ortega, much less establishes any contact or reporting line connecting FE1 or FE7 and Mr. Sánchez Ortega. And, the ICAC's sanction of Deloitte has nothing whatsoever to do with Mr. Sánchez Ortega.

5

The proof is in the pudding. If Mr. Sánchez Ortega had been a partici-

pant in a fraud, he would have known that the value of Abengoa stock and ADSs –

including his own nearly one million shares of Abengoa stock worth millions of

euros (JA265; JA478) – would plummet once the fraud was revealed. But Mr.

Sánchez Ortega "is not alleged to have sold a single share of his own Abengoa stock

or ADS[s]." SA41; *see also* SA87. Instead, by holding his Abengoa stock, Mr.

Sánchez Ortega "*lost* large sums of money." SA41. His conduct is obviously

"inconsistent with the allegation that [he] harbored information that the Company's

financial health was in grave jeopardy." *In re MRU Holdings Sec. Litig.*, 769 F.

Supp. 2d 500, 516 (S.D.N.Y. 2011) (quoting *In re Keyspan Corp. Sec. Litig.*, 383 F.

Supp. 2d 358, 383 (E.D.N.Y. 2003)), *quoted in Glaser v. The9, Ltd.*, 772 F. Supp.

2d 573, 593 (S.D.N.Y. 2011), *Turner v. MagicJack VocalTec, Ltd.*, 2014 WL

406917, at *11 (S.D.N.Y. Feb. 3, 2014), *and Lipow v. Net1 UEPS Techs., Inc.*, 131

F. Supp. 3d 144, 161 (S.D.N.Y. 2015); *see also* additional cases collected in

Summary of Argument below.

## B.     Relevant Procedural History

On August 10, 2015 and September 3, 2015, this and another action

were filed alleging claims against Abengoa, Mr. Sánchez Ortega, and three other

officers of Abengoa under Sections 10(b) and 20(a) of the Securities Exchange Act

of 1934 on behalf of purchasers of Abengoa ADSs during a class period alleged to

WEIL:\98852529\5\10471.0003

begin on October 17, 2013 and end on August 3, 2015. ECF 1; *Lamoureaux v. Abengoa, S.A.*, No. 15 Civ. 6971 (ECF 1). On May 24, 2016, the district court consolidated the two actions and appointed lead plaintiffs. ECF 19.

On August 2, 2016, lead plaintiffs filed a First Amended Complaint naming Abengoa, 21 directors and officers of Abengoa, including Mr. Sánchez Ortega, and investment banks that served as the underwriters of Abengoa's October 17, 2013 public offering of ADSs including Canaccord Genuity Inc., HSBC Securities (USA) Inc., Merrill Lynch International, and Société Général (the "Underwriter Defendants"), re-alleging plaintiffs' claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and adding claims under Sections 11 and 15 of the Securities Act of 1933. Supp. App. 1-87. Plaintiffs served just two of the 21 directors and officers plaintiffs sued: Mr. Sánchez Ortega and Christopher Hansmeyer, Abengoa's authorized representative in the United States, who never appeared in this action and whose whereabouts are unknown. ECF 87 at 2; SA11-12; SA60.

In late 2015 and early 2016, Abengoa filed for creditor protection in Spain and Abengoa's U.S.-based affiliates filed for bankruptcy protection in the United States. Appellants Br. at 22, 26; SA10; SA57; SA119-20. Abengoa emerged from bankruptcy in mid-2019. Appellants Br. at 26; SA11; SA59.

On September 27, 2019, plaintiffs informed the district court that they did not intend to serve or pursue claims against the 19 Abengoa directors and officers

plaintiffs had sued other than Messrs. Sánchez Ortega and Hansmeyer. ECF 87 at 2; SA11; SA59-60. On October 28, 2019, plaintiffs filed a Second Amended Complaint. JA25-113. In light of plaintiffs' determination not to proceed against 19 Abengoa directors and officers plaintiffs previously had sued, allegations previously attributed to four "Individual Exchange Act Defendants" and 21 "Individual Securities Act Defendants" were now somehow attributed in identical or near identical words only to Messrs. Sánchez Ortega and Hansmeyer. Supp. App. 6-8, 18-19, 85-86 ¶¶19-25, 61-63, 267-68; JA31-32, 43, 111-112 ¶¶21-23, 26, 70-72, 283-84.

On August 21, 2020, the district court dismissed all claims in the Second Amended Complaint. SA28-46.

On September 30, 2020, plaintiffs moved for leave to amend a third time. ECF 142. On September 10, 2021, the court granted leave except with respect to plaintiffs' claims under Sections 10(b) and 20(a) of the Securities Exchange Act against Mr. Sánchez Ortega, on the ground that "further amendment of those claims would be futile." SA77-96. Accordingly, plaintiffs' Section 10(b) and 20(a) claims against Mr. Sánchez Ortega were dismissed with prejudice. SA96.

On September 17, 2021, plaintiffs filed their Third Amended Complaint, including claims under Sections 11 and 15(a) of the Securities Act against Mr. Sánchez Ortega. JA888-1085.

On August 30, 2022, the district court dismissed the Third Amended

WEIL:\98852529\5\10471.0003

Complaint with prejudice, including all remaining claims against Mr. Sánchez Ortega. SA125-53. The district court stated that "plaintiffs have already had a chance to amend in response to the Court's opinion dismissing the [Second Amended Complaint]," and, "[a]ccordingly, dismissal is with prejudice." SA153.

On August 31, 2002, the district court entered its final judgment. SA154.

### C.   Rulings Presented For Review

Plaintiffs present three rulings for review: the district court's August 21, 2020 decision dismissing all of plaintiffs' claims (SA1-46), the district court's September 10, 2021 decision dismissing plaintiffs' Section 10(b) claims against Mr. Sánchez Ortega with prejudice (SA47-97), and the district court's August 30, 2022 decision dismissing all remaining claims with prejudice (SA98-153).

## STANDARD FOR REVIEW

This Court "review[s] *de novo* a district court's dismissal of a complaint for failure to state a claim." *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 351 (2d Cir. 2022).

## SUMMARY OF ARGUMENT

*Plaintiffs' Securities Exchange Act of 1934 Claim*. The district court correctly dismissed plaintiffs' claim under Section 10(b) of the Securities Exchange Act of 1934 against Mr. Sánchez Ortega on the same grounds the district court dismissed the claim against Abengoa: plaintiffs fail to allege an actionable false or

9

misleading statement and fail to allege scienter.

The arguments in Points A-F of Abengoa's brief with respect to plaintiffs' failure to prove an actionable misstatement with respect to the portion of the class period Mr. Sánchez Ortega served as Abengoa's chief executive officer (through May 19, 2015) are the same with respect to Abengoa and Mr. Sánchez Ortega and are not repeated here. *See* Argument Point I A below.

The arguments in Point II of Abengoa's brief with respect to scienter demonstrate plaintiffs' failure to allege corporate scienter – i.e., scienter on the part of anyone whose conduct can be imputed to Abengoa. With respect to Mr. Sánchez Ortega, plaintiffs must establish scienter not merely on the part of anyone whose conduct can be imputed to Abengoa, but to Mr. Sánchez Ortega himself. The district court correctly held that plaintiffs fail to allege any such facts.

The Private Securities Litigation Reform Act of 1995, Federal Rule of Civil Procedure 9(b), and the United States Supreme Court's decision in *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007), require a "strong inference" of fraudulent intent that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." This Circuit applies *Tellabs* by looking for facts showing (1) that a defendant had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness, but the determinative inquiry remains as stated in *Tellabs*: "would a reasonable person deem

WEIL:\98852529\5\10471.0003

the inference of scienter at least as strong as any opposing inference." *Id.* at 326.

Plaintiffs concede that Mr. Sánchez Ortega had no motive to commit fraud. As the district court noted, Mr. Sánchez Ortega "*lost* large sums of money" (SA41) – indeed, *millions of euros* – by holding rather than selling his large stake in Abengoa stock, even after he left Abengoa, and even though stock sales are "a 'normal and expected' consequence of retirement." *City of Taylor Gen. Emps. Ret. Sys. v. Magna Int'l Inc.*, 967 F. Supp. 2d 771, 799 (S.D.N.Y. 2013) (quoting *In re Carter-Wallace, Inc. Sec. Litig.*, 1999 WL 1029713, at *5 (S.D.N.Y. Nov. 10, 1999), *aff'd*, 220 F.3d 36 (2d Cir. 2000), and collecting decisions), *quoted in In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 586 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015)).

Mr. Sánchez Ortega's conduct is plainly "inconsistent with the allegation that [he] harbored information that the Company's financial health was in grave jeopardy." *MRU*, 769 F. Supp. 2d at 516, *quoted in* cases collected in Statement of the Case Point A above. Had Mr. Sánchez Ortega known that a fraud was about to be uncovered, he "would have rushed to cash out before the fraud was revealed and stock prices plummeted." *In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 445 (S.D.N.Y. 2005), *quoted in Woolgar v. Kingstone Co.,* 477 F. Supp. 3d 193, 235 (S.D.N.Y. 2020). "Where 'plaintiff's view of the facts defies economic reason, . . . [it] does not yield a reasonable inference of fraudulent intent.'" *Kalnit v. Eichler*, 264 F.3d 131,

WEIL:\98852529\5\10471.0003

140-41 (2d Cir. 2001) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994)). It certainly defies economic reason to think that Mr. Sánchez Ortega would have held his "fraudulently inflated stock. . . *while knowing that the information illuminating the fraud was seeping into the market.*" *Glaser*, 772 F. Supp. 2d at 593, *quoted in In re Iconix Brand Grp., Inc.*, 2017 WL 4898228, at *16 (S.D.N.Y. Oct. 25, 2017); *see also San Leandro Emergency Med. Grp. Profit Sharing Plan v. Phillip Morris Cos.*, 75 F.3d 801, 814 (2d Cir. 1996) (the fact that . . . defendants did not sell their shares during the relevant class period sufficiently undermines plaintiffs' claim regarding motive"); *DraftKings*, 2023 WL 145591, at *34 (collecting decisions weighing "the extent to which the insider availed himself or herself of, or forewent, the opportunity to turn a profit before disclosure of concealed bad news" in determining whether to infer scienter). The inference of fraud is obviously not "at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314; Argument Point I B 1 below.

Plaintiffs' conscious misbehavior and recklessness allegations involving Mr. Sánchez Ortega also fail. Plaintiffs point only to (1) Mr. Sánchez Ortega's service as chief executive officer, (2) his certification as Abengoa's chief executive officer of Abengoa's internal controls over financial reporting under the Sarbanes-Oxley Act of 2002, (3) criminal proceedings in Spain that are still in the investigation stage, and (4) Mr. Sánchez Ortega's resignation "months before the scheme was

WEIL:\98852529\5\10471.0003

exposed." Appellants Br. at 70.

"[G]eneralized allegations" predicated on what a defendant "must have known '[b]y virtue of [his or her] responsibilities and activities as a senior officer' are precisely the kind of conclusory allegations that fail to satisfy the PSLRA's heightened pleading standard." *In re Renewable Energy Grp. Sec. Litig.*, 2022 WL 14206678, at *3 (2d Cir. Oct. 25, 2022) (summary order); Argument Point I B 2 a below. Likewise, Sarbanes-Oxley certifications, which all CEOs are required to sign by law, "add nothing substantial to the scienter calculus" because allowing these certifications "to create an inference of scienter in every case where there was an accounting error . . . would eviscerate the pleading requirements for scienter." *Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers Loc. #6 Pension Fund v. Int'l Bus. Machs. Corp.*, 205 F. Supp. 3d 527, 536 (S.D.N.Y. 2016); Argument Point I B 2 b below.

The criminal proceedings in Spain also do not aid plaintiffs' cause. The courts in Spain have reached none of the conclusions plaintiffs say they have. Plaintiffs cite two proceedings, only the first of which even involves Mr. Sánchez Ortega, and both of which are still in the investigation stage – the first of three phases of criminal proceedings in Spain. The district court did not err in following a long line of decisions declining to assume the truth of mere allegations in far-from-finished actions in other courts. *See* Argument Point I B 2 c below.

WEIL:\98852529\5\10471.0003

Mr. Sánchez Ortega's resignation also establishes nothing. Plaintiffs allege no facts making fraud at least as compelling an inference as the inference that Mr. Sánchez Ortega resigned for any of the many reasons corporate officers resign other than fraud. The claim also defies logic: why would Mr. Sánchez Ortega resign knowing, as plaintiffs claim, that Abengoa was "on the brink of financial collapse" (Appellants Br. at 70), but at the same time continue to hold – rather than sell – Abengoa stock worth millions of euros? *See* Argument Point I B 2 d below.

The district court also correctly dismissed plaintiffs' Section 20(a) control person claim against Mr. Sánchez Ortega, on two grounds: (1) plaintiffs' failure to allege a primary violation under Section 10(b) against Abengoa, and, (2) even assuming, for the sake of argument, that plaintiffs have alleged a primary violation against Abengoa, plaintiffs have failed to allege Mr. Sánchez Ortega's "culpable participation" in the primary violation for the same reasons plaintiffs have failed to allege scienter on the part of Mr. Sánchez Ortega. Plaintiffs address only the first of these two grounds, and are wrong; as demonstrated in Abengoa's brief, the district court correctly dismissed the primary claim against Abengoa. Plaintiffs do not address the district court's alternative holding, and thus concede their failure to allege culpable participation and thus a claim under Section 20(a) against Mr. Sánchez Ortega. *See* Argument Point I C below.

WEIL:\98852529\5\10471.0003

*Plaintiffs' Securities Act of 1933 Claim.* The district court correctly dismissed plaintiffs' claim under Section 11 of the Securities Act of 1933 against Mr. Sánchez Ortega on the same grounds the district court dismissed the claim against the Underwriter Defendants and Abengoa: (1) the claim is time-barred, as demonstrated in Point I of the Underwriter Defendants' brief, and (2) the challenged statements are not actionable misstatements, as demonstrated in Point I of Abengoa's brief. The arguments in the Underwriter Defendants' and Abengoa's briefs are the same with respect to the Underwriter Defendants, Abengoa, and Mr. Sánchez Ortega and are not repeated here. *See* Argument Point II A below.

The district court could also have dismissed plaintiffs' Section 11 claim against Mr. Sánchez Ortega – and this Court may affirm the dismissal of the claim – on a third ground the district court did not reach: the claim sounds in fraud and, therefore, Federal Rule of Civil Procedure 9(b) requires plaintiffs to plead scienter with particularity. As discussed above, plaintiffs have not alleged scienter on the part of Mr. Sánchez Ortega. *See* Argument Point II B below.

The district court dismissed plaintiffs' Section 15 control person claim against Mr. Sánchez Ortega due to plaintiffs' failure to allege a primary violation under Section 11 against Abengoa. As demonstrated in Abengoa's brief, the district court correctly dismissed the primary claim against Abengoa. *See* Argument Point II C below.

WEIL:\98852529\5\10471.0003

# ARGUMENT

## I. THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFFS FAIL TO STATE A CLAIM AGAINST MR. SÁNCHEZ ORTEGA UNDER SECTIONS 10(b) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934

"To state a claim under Section 10(b) and Rule 10b-5, a plaintiff must plead: (1) a misstatement or omission of material fact; (2) scienter; (3) a connection with the purchase or sale of securities; (4) reliance; (5) economic loss; and (6) loss causation." *Bristol-Myers*, 28 F.4th at 351-52.

### A. Plaintiffs Section 10(b) Claim Against Mr. Sánchez Ortega Fails On The Grounds Argued By Abengoa: Plaintiffs Fail To Allege A Misstatement

Plaintiffs' Section 10 claim against Mr. Sánchez Ortega fails on the grounds briefed by Abengoa that apply equally to Mr. Sánchez Ortega: plaintiffs' failure to allege a misstatement or omission during the portion of the class period Mr. Sánchez Ortega served as Abengoa's chief executive officer (through May 19, 2015), as demonstrated in Points I A-F of Abengoa's brief.

### B. Plaintiffs Section 10(b) Claim Against Mr. Sánchez Ortega Also Fails Because Plaintiffs Do Not Allege Scienter on the Part of Mr. Sánchez Ortega

Abengoa also argues, in Point II of its brief, that the district court correctly held that plaintiffs have failed to allege corporate scienter – i.e., scienter allegations with respect to anyone whose intent could be imputed to Abengoa. Even assuming, for the sake of argument, that plaintiffs have alleged corporate scienter,

WEIL:\98852529\5\10471.0003

they still must, but do not, allege scienter on the part of Mr. Sánchez Ortega.

"To survive a motion to dismiss, a securities-fraud complaint must satisfy the heightened pleading standards established by the Private Securities Litigation Reform Act ('PSLRA') and Federal Rule of Civil Procedure 9(b), which require that a plaintiff allege with particularity both the circumstances constituting fraud and the facts supporting a defendant's fraudulent intent." *Renewable Energy*, 2022 WL 14206678, at *1; *see also Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 75 (2d Cir. 2021) ("[a] complaint alleging securities fraud must also satisfy heightened pleading requirements set forth in Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995"). "The PSLRA requires plaintiffs to state with particularity . . . the facts evidencing scienter, i.e., the defendant's intention 'to deceive, manipulate, or defraud.'" *Tellabs*, 551 U.S. at 313 (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 & n.12 (1976)).

Critically, with respect to Mr. Sánchez Ortega, the PSLRA and Rule 9(b) require that plaintiffs allege scienter with respect to *each defendant*. *See* 15 U.S.C. § 78u-4(b)(2) (the complaint shall, "with respect to each act or omission . . . state with particularity facts giving rise to a strong inference that *the defendant* acted with the required state of mind") (emphasis added); *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 364-65 (5th Cir. 2004) ("PSLRA references to 'the defendant' may only reasonably be understood to mean 'each defendant' in

WEIL:\98852529\5\10471.0003

multiple defendant cases"); *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) ("[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform *each defendant* of the nature of his alleged participation in the fraud") (emphasis added); *City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 419 (S.D.N.Y. 2020) (Nathan, J.) ("[b]oth Rule 9(b) and the PSLRA require that '[i]n a case involving multiple defendants, plaintiffs must plead circumstances providing a factual basis for scienter for each defendant'") (quoting *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 695 (2d Cir. 2009)).

Accordingly, courts have repeatedly dismissed claims against individuals in cases in which plaintiffs have adequately alleged corporate scienter. *See, e.g.*, *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2022 WL 4085677, at *52 (S.D.N.Y. Sept. 2, 2022) (finding scienter with respect to corporation but not its chief executive officer); *In re BHP Billiton Ltd. Sec. Litig.*, 276 F. Supp. 3d 65, 92-94 (S.D.N.Y. 2017) (finding scienter with respect to corporation but not its chief executive officer, chairman, and chief financial officer); *Pa. Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp.*, 874 F. Supp. 2d 341, 359 (S.D.N.Y. 2012) (finding scienter with respect to corporation but not its past and current chief executive officers and chief financial officer); *In re Silvercorp Metals, Inc. Sec. Litig.*, 26 F. Supp. 3d 266, 276-77 (S.D.N.Y. 2014) (finding scienter with respect to corporation but not its chairman

WEIL:\98852529\5\10471.0003

and chief executive officer and chief financial officer); *In re MBIA, Inc. Sec. Litig.*, 700 F. Supp. 2d 566, 588-94 (S.D.N.Y. 2010) (finding scienter with respect to corporation but not its chairman, chief executive officer, and president, and not its chief financial officer).

  *Tellabs* governs. Under *Tellabs*, scienter requires particularized factual allegations supporting a "strong inference" of fraudulent intent on the part of each defendant that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." 551 U.S. at 314. "To determine whether the plaintiff has alleged facts that give rise to the requisite 'strong inference' of scienter, a court must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Id*. at 323-24. "To qualify as 'strong' . . . , an inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id*. at 309. "A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id*. at 324.

  In applying *Tellabs*, this Circuit looks for "facts showing '(1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness.'" *Bristol-Myers*, 28 F.4th at 355 (quoting *ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan*

*Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009)). The determinative inquiry, however, remains as stated in *Tellabs*: "[w]hen the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference." 551 U.S. at 326.

Plaintiffs' allegations with respect to Mr. Sánchez Ortega do not come close to meeting this exacting standard.

**1. Plaintiffs Do Not Allege Motive – And Concede The Opposite of Motive: The Alleged Fraud Cost Mr. Sánchez Ortega Millions of Euros**

The district court correctly held that plaintiffs have alleged no motive on the part of Mr. Sánchez Ortega to commit fraud. SA40-41; SA87-88. Plaintiffs, indeed, "conceded . . . the issue" in the district court. SA88. Plaintiffs concede the issue in this Court as well: the word "motive" appears just once in plaintiffs' brief on appeal, in plaintiffs' recitation of the black-letter law stated above – that scienter may be alleged by "facts giving rise to a strong inference . . . that the defendant had the 'motive and opportunity to commit fraud.'" Appellants Br. at 29 (citation omitted). Plaintiffs never use the word "motive" again.

To allege motive, "plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from the fraud." *Kalnit*, 264 F.3d at 139. Plaintiffs do not allege any "concrete personal benefit" received by Mr. Sánchez Ortega. SA40-41; SA87-94. Plaintiffs do not allege that Mr. Sánchez Ortega "sold a

WEIL:\98852529\5\10471.0003

single share of his own Abengoa stock or ADS[s]." SA41; *see also* SA87. Plaintiffs do not dispute that Mr. Sánchez Ortega "*lost* large sums of money" – indeed, millions of euros – by holding rather than selling his large stake in Abengoa stock, even after leaving Abengoa. SA41. This is a concrete personal *loss* – the *opposite* of a concrete personal *benefit*.

### 2. Plaintiffs Do Not Allege Conscious Misbehavior or Recklessness

The district court also correctly held that plaintiffs have not alleged conscious misbehavior or recklessness on the part of Mr. Sánchez Ortega. SA41-43; SA87.

"To survive dismissal under the 'conscious misbehavior' theory, the appellants must show that they alleged reckless conduct . . . , which is 'at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'" *Kalnit*, 264 F.3d at 142 (quoting *Honeyman v. Hoyt (In re Carter-Wallace, Inc. Sec. Litig.)*, 220 F.3d 36, 39 (2d Cir. 2000)). Securities-fraud requires "conscious recklessness – i.e., a state of mind *approximating actual intent*, and *not merely a heightened form of negligence*." *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009). Where, as here, "no motive or opportunity (other than a generalized business motive) is shown, the circumstantial evidence of conscious

WEIL:\98852529\5\10471.0003

misbehavior 'must be correspondingly greater' and show 'highly unreasonable' behavior or that which evinces 'an extreme departure from the standards of ordinary care[.]'" *Bristol-Myers*, 28 F.4th at 355 (quoting *Kalnit*, 264 F.3d at 142). "Without showing motive, [plaintiffs'] uphill battle to plead a strong inference of scienter becomes that much steeper." *City of N. Miami Beach Police Officers' and Firefighters' Ret. Plan v. Nat'l Gen. Holdings Corp.*, 2021 WL 212337, at *11 (S.D.N.Y. Jan. 21, 2021), *aff'd sub nom. Town of Davie Police Officers Ret. Sys. v. City of N. Miami Beach Police Officers' & Firefighters' Ret. Plan,* 2021 WL 5142702 (2d Cir. Nov. 5, 2021).

Plaintiffs' conscious misbehavior or recklessness allegations with respect to Mr. Sánchez Ortega do not begin to show conscious recklessness or a "strong inference" of fraudulent intent that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314.

### a. Service as Chief Executive Officer

Plaintiffs first contend that Mr. Sánchez Ortega's service as "CEO at a company rife with fraud" gives rise to a strong inference of scienter. Appellants Br. at 69. But "it is practically hornbook law that 'accusations' such as these, which are 'founded on nothing more than a defendant's corporate position[,] are entitled to no weight.'" *In re Rockwell Med., Inc. Sec. Litig.*, 2018 WL 1725553, at *14 (S.D.N.Y. Mar. 30, 2018) (Sullivan. J.) (collecting cases); *see also DraftKings,* 2023 WL

145591, at *36 ("it is 'well established that a defendant's position does not, without more, support a conclusion that the defendant had access to information contradicting an alleged misrepresentation'") (quoting *Marcu v. Cheetah Mobile Inc.*, 2020 WL 4016645, at *7 (S.D.N.Y. July 16, 2020)); *Plumbers & Steamfitters Loc. 773 Pension Fund v. Canadian Imperial Bank of Com.*, 694 F. Supp. 2d 287, 300 (S.D.N.Y. 2010) ("[c]ourts in this Circuit have long held that accusations founded on nothing more than a defendant's corporate position are entitled to no weight"), *quoted in Stichting Penioenfonds ABP v. Wachovia Corp. (In re Wachovia Equity Sec. Litig.)*, 753 F. Supp. 2d 326, 366 (S.D.N.Y. 2011), *City of Brockton Ret. Sys. v. Avon Prods., Inc.*, 2014 WL 4832321, at *19 (S.D.N.Y. Sept. 29, 2014), *Strougo v. Barclays PLC*, 105 F. Supp. 3d 330, 350 (S.D.N.Y. 2015), *Lipow*, 131 F. Supp. 3d at 163, *Fogel v. Wal-Mart de Mexico SAB de CV*, 2017 WL 751155, at *16 (S.D.N.Y. Feb. 17, 2017), *Blank v. TriPoint Glob. Equities, LLC*, 338 F. Supp. 3d 194, 215 (S.D.N.Y. 2018), *Born v. Quad/Graphics, Inc.*, 521 F. Supp. 3d 469, 493 (S.D.N.Y. 2021), *Woodley v. Wood*, 2022 WL 103563, at *7 (S.D.N.Y. Jan. 11, 2022), *aff'd sub nom. Rotunno v. Wood*, 2022 WL 14997930 (2d Cir. Oct. 27, 2022) (summary order), *and Chen v. X Fin.*, 2022 WL 765417, at *11 (S.D.N.Y. Mar. 13, 2022). "Such generalized allegations" predicated on what a defendant "must have known '[b]y virtue of [his or her] responsibilities and activities as a senior officer' are precisely the kind of conclusory allegations that fail to satisfy the PSLRA's

WEIL:\98852529\5\10471.0003

heightened pleading standard." *Renewable Energy*, 2022 WL 14206678, at *3.

This principle is particularly applicable in the context of Abengoa, with its over 500 subsidiaries in more than 70 countries in Europe, North America, South America, Africa, and Asia. SA99; JA904 ¶53; JA261. This principle is not altered, as plaintiffs suggest, by plaintiffs' claim that they have alleged "specific examples of accounting fraud" at two of Abengoa's over 500 subsidiaries, Abeinsa Ingeniería y Construcción Industrial S.A. and Instalaciones Inabensa S.A. (the latter of which was a subsidiary of a subsidiary of a subsidiary of a subsidiary of Abengoa (JA281, tenth line, identifying three entities between Inabensa and Abengoa)), because both those subsidiaries were within Abengoa's Engineering and Construction division, and Abengoa's Engineering and Construction division as a whole – not these two subsidiaries – produced 60% of Abengoa's total revenues. Appellants Br. at 8-9, 53.

To the contrary, the district court correctly held – and plaintiffs do not dispute – that, "[t]o the extent that plaintiffs assert that defendants had access to contrary facts, the complaint must 'specifically identify the reports or statements containing this information.'" SA41-42 (citation omitted); SA88 (citation omitted); *Novak v. Kasaks*, 216 F.3d 300, 309 (2d. Cir. 2000) ("[w]here plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information"), *quoted in, e.g., Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*, 531 F.3d 190, 196 (2d Cir. 2008), *and*

WEIL:\98852529\5\10471.0003

*Jackson v. Abernathy*, 960 F.3d 94, 99 (2d Cir. 2020). Plaintiffs do not allege that Mr. Sánchez Ortega had access to any specific report or statement containing any such information. The district court thus did not err in concluding that "scienter requires that a defendant be specifically informed of contrary information" and that an allegation that a fraud occurred within two subsidiaries of a division that produced 60% of Abengoa's revenue cannot "substitute" for "specific factual allegations linking [Mr. Sánchez Ortega] to the alleged accounting fraud." SA92-93.

Accordingly, the fact that Mr. Sánchez Ortega served as Abengoa's chief executive officer does not establish a "strong inference" of fraudulent intent that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314.

### b. Sarbanes-Oxley Certification

Plaintiffs next argue that Mr. Sánchez Ortega's "certification of Abengoa's internal controls over financial reporting under Sarbanes-Oxley places him at the center of the fraud." Appellants Br. at 69. The district court correctly held that plaintiff "cannot raise an inference of fraudulent intent based on the signing of a certification" without also alleging – which plaintiffs do not allege – "'facts . . . show[ing] a concomitant awareness of or recklessness to the materially misleading nature of the statements.'" SA93-94 (quoting *Plumbers & Pipefitters Nat'l Pension Fund v. Orthofix Int'l N.V.*, 89 F. Supp. 3d 602, 615 (S.D.N.Y. 2015)).

WEIL:\98852529\5\10471.0003

Sarbanes-Oxley certifications "'add nothing substantial to the scienter calculus'" because allowing these certifications "'to create an inference of scienter in every case where there was an accounting error . . . would eviscerate the pleading requirements for scienter.'" *Int'l Ass'n of Heat*, 205 F. Supp. 3d at 536 (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1004 (9th Cir. 2009)), *quoted in N. Collier*, 2016 WL 5794774, at *22, *Reilly v. U.S. Physical Therapy, Inc.*, 2018 WL 3559089, at *19 (S.D.N.Y. July 23, 2018), *Zhong Zheng v. Pingtan Marine Enters. Ltd.*, 379 F. Supp. 3d 164, 181 (E.D.N.Y. 2019), *In re Diebold Nixdorf, Inc., Sec. Litig.*, 2021 WL 1226627, at *14 (S.D.N.Y. Mar. 30, 2021), *and In re Plug Power, Inc. Sec. Litig.*, 2022 WL 4631892, at *19 (S.D.N.Y. Sept. 29, 2022).

Plaintiffs do not address the decisions the district court cited for this proposition (SA94) or the numerous others in accord. *See, e.g.*, *In re Hertz Glob. Holdings Inc.*, 905 F.3d 106, 118 (3d Cir. 2018) ("[a]n allegation that a defendant signed a SOX certification attesting to the accuracy of an SEC filing that turned out to be materially false does not add to the scienter puzzle in the absence of any allegation that the defendant knew he was signing a false SEC filing or recklessly disregarded inaccuracies contained in an SEC filing"); *Zucco*, 552 F.3d at 1004 ("[o]ur sister circuits . . . have unanimously agreed" and "[w]e have . . . joined these circuits and have ruled that 'Sarbanes-Oxley certifications are not sufficient, without more, to raise a strong inference of scienter") (collecting decisions); *Garfield v. NDC*

*Health Corp.*, 466 F.3d 1255, 1266 (11th Cir. 2006) ("a Sarbanes-Oxley certification is only probative of scienter if the person signing the certification was severely reckless in certifying the accuracy of the financial statements"), *quoted in Ind. Elec. Workers Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 545 (5th Cir. 2008), *Ley v. Vistcon Corp.*, 543 F.3d 801, 812 (6th Cir. 2008), *abrogated on other grounds by Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48-50 (2011), *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1252 (11th Cir. 2008), *Glazer Cap. Mgmt. v. Magistri*, 549 F.3d 736, 747 (9th Cir. 2008), *and Konkol v. Diebold, Inc.*, 590 F.3d 390, 402 (6th Cir. 2009), *abrogated on other grounds by Matrixx*, 563 U.S. at 48-50; *Patel v. L-3 Commc'ns Holdings Inc.*, 2016 WL 1629325, at *10 (S.D.N.Y. Apr. 21, 2016) ("a Sarbanes-Oxley certification is probative of scienter only if the complaint alleges specific contrary information, such as glaring accounting irregularities or other red flags, of which the certifying defendant had reason to know") (citation omitted). Plaintiffs do not cite a single decision to the contrary.

Accordingly, the fact that Mr. Sánchez Ortega signed Sarbanes-Oxley certifications does not establish a "strong inference" of fraudulent intent that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314.

### c. Criminal Proceedings in Spain

Plaintiffs contend that two criminal proceedings in Spain "provide a

WEIL:\98852529\5\10471.0003

strong inference of scienter" on the part of Mr. Sánchez Ortega. Appellants Br. at 69. Plaintiffs ignore altogether a third proceeding, in which all defendants, including Mr. Sánchez Ortega, were acquitted of all charges against them. JA727. The district court correctly declined "'to assume the truth of the allegations' in the Spanish proceedings'" plaintiffs do cite, "as those proceedings have not concluded" (SA143 (quoting SA43)) – and, indeed, and as "Plaintiffs acknowledge[d]" in the district court, "[t]hose proceedings are still in the preliminary investigation stage." SA89.

Plaintiffs wildly exaggerate the status of proceedings in Spain, claiming that Spain's National Court has found "the evidence . . . sufficient to show criminal conduct and financial misrepresentation" and that "the judge assigned to the matter . . . after investigation . . . believes the facts constitute a crime," that the "allegations have been investigated independently by members of Spain's judiciary" and "found sufficiently reliable for the cases to proceed towards trial," that the Spanish National Court has "concluded that the evidence submitted . . . was sufficient to show that 'some type of criminal offense' had been committed," and that the Spanish National Court has "independently evaluated the evidence . . . and found it sufficient to show 'some type of criminal offense.'" Appellants Br. at 2, 14, 22-23, 24, 67. The record shows nothing of the sort.

The first of the two proceedings in Spain, and the only one naming Mr. Sánchez Ortega as a defendant, was commenced in 2016 by a group of Abengoa

investors against Messrs. Benjumea and Sánchez Ortega in Spain's National Court in Madrid. *Id*. at 23. Unlike the United States, Spain permits private individuals to file criminal complaints, without law enforcement officials first conducting formal, pre-complaint investigations. JA935 ¶180. According to Plaintiffs' Third Amended Complaint, once a private citizen initiates a criminal proceeding and the proceeding is accepted by the court, "three (3) phases" follow: "(i) first stage of investigation . . . ; (ii) the . . . intermediate stage . . . ; and (iii) the trial stage." JA933 ¶175; JA935 ¶¶180, 182; *see also id*. JA933-34 ¶¶176-78 (describing the three phases). Plaintiffs admit in their Third Amended Complaint that the proceeding is only at "the investigatory stage." JA935 ¶180.

Plaintiffs state that "the investigating judge accepted the complaint" in 2017 after concluding that "evidence was sufficient to investigate whether the financial statements disseminated by Abengoa and the positive financial situation disclosed by its managers . . . were contrary to financial and economic reality." Appellants Br. at 23. A determination to accept a complaint commences "phase one" of the three phases of a criminal proceeding: an investigation. Courts have consistently held, as the district court held here (SA43; SA89), that "the existence of an investigation alone is not sufficient to give rise to a requisite cogent and compelling inference of scienter." *In re Gentiva Secs. Litig.*, 932 F. Supp. 2d 352, 380 (E.D.N.Y. 2013), *quoted in City of Brockton*, 2014 WL 4832321, at *23, *Lipow*, 131 F. Supp.

3d at 164, *Cortina v. Anavex Life Scis. Corp.*, 2016 WL 7480415, at *8 (S.D.N.Y. Dec. 29, 2016), *Schaffer v. Horizon Pharma PLC*, 2018 WL 481883, at *13 (S.D.N.Y. Jan. 18, 2018), *In re Henry Schein, Inc. Sec. Litig.*, 2019 WL 8638851, at *22 (S.D.N.Y. Sept. 17, 2019), *and Deluca v. GPB Auto. Portfolio, L.P.*, 2020 WL 7343788, at *17 n.190 (S.D.N.Y. Dec. 14, 2020); *see also Lipow*, 131 F. Supp. 3d at 164 (no scienter notwithstanding "government investigations into whether Net 1 engaged in criminal misconduct").

Accordingly, "citation to a number of lawsuits and government investigations . . . provides no evidence of scienter." *In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, 2017 WL 4049253, at *8 (S.D.N.Y. June 28, 2017), *aff'd sub nom. Sfiraiala v. Deutsche Bank Aktiengesellschaft*, 729 F. App'x 55 (2d Cir. 2018). "Court[s] will not consider" allegations "taken directly from uncorroborated allegations embedded in a complaint in another action." *In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *17 n.17 (S.D.N.Y. Sept. 28, 2012), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014), *quoted in Amorosa*, 2022 WL 3577838, at *1 n.2 *and Touchstone Strategic Tr. v. Gen. Elec. Co.*, 2022 WL 4536800, at *2 (S.D.N.Y. Sept. 28, 2022). A complaint's "recitation of inconclusive . . . investigations . . . does not suffice." *Deluca*, 2020 WL 7343788, at *17 n.190. "[I]nvestigations are just that, investigations." *Lipow*, 131 F. Supp. 3d at 167, *quoted in Schaffer*, 2018 WL 481883, at *13.

WEIL:\98852529\5\10471.0003

Plaintiffs also state that the National Court granted a motion to expand the complaint in 2020 to include Abengoa, Abengoa's auditor, and two members of Abengoa's audit committee because "the evidence submitted against these additional parties was sufficient to show that 'some type of criminal offense' had been committed." Appellants Br. at 24 (quoting JA937 ¶185); JA1072. But the National Court states, in the very same sentence, in words plaintiffs ignore, that its ruling is "without prejudice to the decisions that may arise from subsequent proceedings." JA1072. To avoid any doubt, the National Court states that "it is still necessary to determine" whether the actions of the newly added defendants "meet the criteria of the crimes that led to these charges." JA1080. And, of course, "some type of criminal offense" is not necessarily an offense involving scienter. For all these reasons, this procedural decision adding new defendants to the action provides no basis for a "strong inference of scienter" even with respect to the defendants in the case discussed in the decision, much less defendants not discussed in the decision, including Mr. Sánchez Ortega.

The second of the two proceedings in Spain was commenced in 2018 by a second group of Abengoa investors in the Criminal Investigation Court in Seville. Appellants Br. at 25. These Abengoa investors assert claims against the two Abengoa subsidiaries noted above, Abeinsa and Inabensa, plus "senior officers" (*id.*) – but not Mr. Sánchez Ortega. *Id.*; ECF 151-24 at 2 (listing names of defendants).

WEIL:\98852529\5\10471.0003

Plaintiffs state that, on June 9, 2020 – a typo, the correct date is June 8, 2020 – "the investigating judge in Seville elevated the criminal action against Abeinsa and Inabensa to the National Court in Madrid," where the previously filed proceeding is pending. Appellants Br. at 25-26. Plaintiffs state, without quoting the decision, that "[t]he judge determined that the alleged financial accounting fraud pervaded Abengoa in its entirety." *Id*. at 26, 50.

The June 8, 2020 decision does not include the words "financial accounting fraud pervaded Abengoa in its entirety" or anything resembling any such determination. ECF 151-2. The June 8, 2020 decision simply denied an appeal of a decision by the court in the Seville action, issued on February 10, 2020, transferring the action, which the court stated is "in the initial phase of investigation," to the National Court "in view of the evident connection between the facts" in the actions in the court in Seville and in the National Court, "without prejudice of the data yielded by a full investigation of this case" and "without prejudice of any allegations raised in their legitimate right by the appearing defen[dants]." ECF 151-24 at 3, 4, 6. The words "financial accounting fraud pervaded Abengoa in its entirety" do not appear in either the February 10, 2020 or June 8, 2020 decision. ECF 151-24; ECF 151-2. And, even if there had been such a determination, the transfer of a proceeding in which Mr. Sánchez Ortega is not a party from one court to another court could not possibly provide a basis to infer a "strong inference of scienter" against Mr.

WEIL:\98852529\5\10471.0003

Sánchez Ortega.

Worst of all, plaintiffs neglect to tell this Court that on November 6, 2020 – almost a full year before plaintiffs filed their Third Amended Complaint – the National Court "revoke[d]" the court in Seville's February 10, 2020 decision "in its entirety" and "transfer[red] the matter back to the Criminal Investigation Court in Seville." JA878; SA59. The National Court's November 6, 2020 decision states that the proceeding in Seville "is in the early stages of the investigation phase" and that the Abengoa investors' claim in the action that "unlawful accounting practices" were "widespread" throughout Abengoa is a "mere allegation" not based on "any incriminating information." JA876, 877. The National Court describes the "investigation" by the court in Seville as "initial," "indiscriminate," and "generic." JA877.

The district court did not err in declining to assume the truth of the allegations in proceedings in Spain that are still in their early stages and in holding that the proceedings in Spain are "not sufficient to give rise to a requisite cogent and compelling inference of scienter." SA43 (quotation omitted). The courts in Spain have reached none of the conclusions plaintiffs say the courts in Spain have reached. The proceedings in Spain do not establish a "strong inference" of fraudulent intent that is "cogent and at least as compelling as any opposing inference of nonfraudulent

WEIL:\98852529\5\10471.0003

intent." *Tellabs*, 551 U.S. at 314.[1]

### d.    Mr. Sánchez Ortega's Resignation

Plaintiffs also contend that Mr. Sánchez Ortega's resignation on May 19, 2015, six months after "a highly damaging revelation concerning Abengoa's leverage ratios" in November 2014 (which, elsewhere in plaintiffs' brief, plaintiffs describe as a debt mischaracterization that was "perhaps improper"), and amidst unnamed "internal auditors and controllers" "uncovering" unspecified "evidence of fraud," "months before the scheme was exposed," "supports the inference that Ortega acted with scienter." Appellants Br. at 21, 34, 70; JA895, 963-64 ¶¶12, 274-80. The district court correctly held that plaintiffs have not alleged "'a factual basis to conclude that the resignation was tied to participation in or knowledge of the fraud.'" SA42-43 (quoting *Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 303 (S.D.N.Y. 2019), *quoted in* SA93.

---

[1] *In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 382 (S.D.N.Y. 2015), the sole decision plaintiffs cite for the proposition that the existence of a criminal proceeding in another country warrants a strong inference of scienter that is cogent and at least as compelling as any inference of non-fraudulent intent (Appellants' Br. at 67-68), is easily distinguished. *Petrobras* involved corporate officers who had been arrested for, among other things, adding 3% adjustments to contract bids and using the proceeds to pay bribes and kickbacks to themselves and Brazilian politicians. 116 F. Supp. 3d at 374. The moving defendant in *Petrobras* – the corporate entity – conceded scienter on the part of corporate officers and argued only that the officers' scienter could not be imputed to the corporate entity. *Id*. at 382. The parties did not litigate, and the court did not decide, what must be alleged in addition to the mere existence of a criminal proceeding in order to infer scienter.

WEIL:\98852529\5\10471.0003

The claim, indeed, defies logic: why would Mr. Sánchez Ortega resign knowing, as plaintiffs claim, that Abengoa was "on the brink of financial collapse" (Appellants Br. at 70), but continue to hold – rather than sell – Abengoa stock worth millions of euros about to plummet in value? And, the district court noted, plaintiffs allege that "Abengoa made efforts to rectify accounting errors, by for example, creating the Controller Department in May 2015." SA139. Fraudsters do not tighten internal controls, and, fraudsters who fear that new internal controls will uncover their fraud do not resign but continue to hold stock worth millions of euros.

This Court's recent decision in *Rotunno v. Wood*, 2022 WL 14997930 (2d Cir. Oct. 27, 2022) (summary order), recognizes that corporate executives change positions for any number of reasons other than fraud (*id*. at *3), and courts across this Circuit agree "there are any number of reasons that an executive might resign, most of which are not related to fraud." *BISYS*, 397 F. Supp. 2d at 446, *quoted in In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 545 (S.D.N.Y. 2009) (Sullivan, J.), *aff'd sub nom. Condra v. PXRE Grp. Ltd.*, 357 F. App'x 393 (2d Cir. 2009), *Wyche v. Advanced Drainage Sys., Inc.*, 2017 WL 971805, at *17 (S.D.N.Y. Mar. 10, 2017), *aff'd*, 710 F. App'x 471 (2d Cir. 2017), *Iconix*, 2017 WL 4898228, at *19, *In re Veon Ltd. Sec. Litig.*, 2018 WL 4168958, at *19 (S.D.N.Y. Aug. 30, 2018), *Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 815 (S.D.N.Y. 2018), *In re Aceto Corp. Sec. Litig.*, 2019 WL 3606745, at *9 (E.D.N.Y. Aug. 6, 2019), *In re Adient*

WEIL:\98852529\5\10471.0003

*plc Sec. Litig.*, 2020 WL 1644018, at \*29 (S.D.N.Y. Apr. 2, 2020), *Woolgar*, 477 F. Supp. 3d at 240, *and Diebold Nixdorf*, 2021 WL 1226627, at \*14.

Courts thus "have consistently held that an officer's resignation, without more, is insufficient to support a strong inference of scienter." *Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 605 (S.D.N.Y. 2016) (collecting cases), *quoted in N. Collier*, 2016 WL 5794774, at \*21; *see also Woodley*, 2022 WL 103563, at \*9 ("a 'resignation by itself is insufficient to support an allegation of scienter'") (citation omitted); *Schiro*, 396 F. Supp. 3d at 303 (a resignation, "[s]tanding alone, . . . does not raise a strong inference of scienter") (collecting cases). Rather, "[a]dditional factual allegations linking the termination or resignation to the alleged fraud are necessary." *Diebold Nixdorf*, 2021 WL 1226627, at \*14; *see also Woolgar*, 477 F. Supp. 3d at 240 ("'absent additional factual allegations linking [an executive's] resignation . . . to the alleged fraud, such allegations are insufficient to raise a strong inference of scienter'") (quoting *UBS*, 2012 WL 4471265, at \*18); *BISYS*, 397 F. Supp. 2d at 447 ("absent any alleged facts linking the two resignations and the alleged fraud, the resignations . . . do not support an inference of conscious misbehavior or recklessness").

Accordingly, this Court held in *KBC Asset Mgmt. NV v. MetLife, Inc.*, 2022 WL 480213 (2d Cir. Feb. 17, 2022) (summary order), that "suspicious" resignations are "suggestive of scienter . . . only in the context of other compelling

circumstantial allegations supporting scienter." *Id*. at *3. A resignation "can establish scienter only if the plaintiff alleges independent evidence corroborating that the employee who resigned held a culpable state of mind." *Schiro*, 396 F. Supp. 3d at 303. Plaintiffs must "plead facts non-speculatively linking the resignation[ ] . . . to the company's alleged fraud." *Gregory v. ProNAi Therapeutics Inc.*, 297 F. Supp. 3d 372, 415 (S.D.N.Y.), *aff'd*, 757 F. App'x 35, 38 n.4 (2d Cir. 2018); *see also Iconix*, 2017 WL 4898228, at *19 ("Complaint does not plead particularized facts connecting the resigning executives to fraudulent conduct"). "For executive resignations to raise a strong inference of scienter, they must be highly unusual and suspicious." *Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp., PLC*, 902 F. Supp. 2d 329, 343 (S.D.N.Y. 2012), *aff'd sub nom. IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383 (2d Cir. 2015) (citation omitted), *quoted in Wilbush v. Ambac Fin. Grp., Inc.*, 271 F. Supp. 3d 473, 499 (S.D.N.Y. 2017).

Here, plaintiffs' First and Second Amended Complaints acknowledge a perfectly nonculpable explanation for Mr. Sánchez Ortega's resignation: his desire, following heart surgery, "to live a quieter life." Supp. App. 75 ¶¶228-31; JA100-101 ¶¶244-47. Recognizing this, plaintiffs excised all references to Mr. Sánchez Ortega's heart surgery from their Third Amended Complaint. This "transparent litigation tactic" – "like sleight of hand that is *slower* than the eye" (*Lewis v. Graves*, 701 F.2d

245, 249 (2d Cir. 1983)) – does not bar consideration of what plaintiffs pleaded and then "unpleaded" in assessing whether plaintiffs' inference of scienter is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314. Under *Tellabs*, "omissions and ambiguities count against inferring scienter." *Id.* at 326.

Even putting aside Mr. Sánchez Ortega's heart surgery, courts have rejected far more particularized and far less conclusory attempts to link resignations to fraud than plaintiffs' allege here. The court in *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 598 (S.D.N.Y. 2011), held that even resignations "actually tied" to "inadequate internal controls over financial reporting" do "not come close to connecting those resignations to . . . fraud." The court in *North Collier Fire Control & Rescue District Firefighter Pension Plan & Plymouth County Retirement Ass'n v. MDC Partners, Inc.*, 2016 WL 5794774, at *21 (S.D.N.Y. Sept. 30, 2016) (Sullivan, J.), held that allegations that an officer resigned during an SEC investigation and "returned certain bonus payments or forewent certain severance packages" neither "connect a resignation to fraud" nor "support[ ] an inference of fraud that is at least as compelling as an inference of mismanagement or one of the myriad other reasons an executive might resign."

Likewise, the court in *Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 303 (S.D.N.Y. 2019), held that the inference of scienter on the part of a CEO

who resigns the same day a corporation discloses the payment of bribes "is not as compelling as its competing, non-culpable inference," because "[w]hen corporate misconduct is disclosed, members of management resign for all sorts of reasons, including that they were negligent in overseeing the responsible employees or simply because the optics of changing management are better for investors and regulators." The court in *Lighthouse Financial Group v. Royal Bank of Scotland Group, PLC*, 902 F. Supp. 2d 329, 343 (S.D.N.Y. 2012), *aff'd sub nom. IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383 (2d Cir. 2015), held that resignations after "large losses" are "at least as consistent with punishing those at the helm for their poor judgment and leadership" as "relating to concocting a scheme to defraud shareholders." The court in *C.D.T.S. No. 1 & A.T.U. Loc. 1321 Pension Plan v. UBS AG*, 2013 WL 6576031, at *7 (S.D.N.Y. Dec. 13, 2013), *aff'd sub nom. Westchester Teamsters Pension Fund v. UBS AG*, 604 F. App'x 5 (2d Cir. 2015), rejected the "suggest[ion] that an inference of scienter can be drawn" from one officer's resignation and another officer's demotion and resignation because "there are a number of other, more plausible reasons why personnel may have been demoted and resigned, some of which may be related to significant trading loss but are not suggestive of intentional fraud."

Mr. Sánchez Ortega's resignation in this action involves none of the

facts present in *Glaser*, *North Collier*, *Schiro*, *Lighthouse*, and *C.D.T.S.*: no resig-

nation "actually tied" to inadequate internal controls, no resignation during an SEC

investigation with a return of bonus payments and foregone severance, no resig-

nation the same day as the disclosure of bribes, and no resignation following large

losses. Even those facts failed to make fraud at least as compelling an inference as

any other reason for the resignations in those actions. *A fortiori*, fraud is not at least

as compelling an inference as any of the other possible inferences here, including

that Mr. Sánchez Ortega resigned for any of the many reasons corporate officers

resign other than fraud.[2]

---

[2] Plaintiffs' cases (Appellants Br. at 70) are easily distinguished, as each involved much more than simply a resignation. *See Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 551-53 (S.D.N.Y. 2017) ("timing and circumstances" surrounding resignations of an executive chairman, a chief executive officer, and a chief financial officer "contribute[d] to the inference of scienter," where, shortly before these officers resigned, they sold large percentages (92%, 83%, and 68%, respectively) of their stock, and, shortly after they resigned, the corporation announced a restatement eliminating "fictitious nonmonetary revenue," internal control deficiencies including "concerns about tone at the top," and "remedial measures" including "separating certain personnel"); *Van Dongen v. CNinsure Inc.*, 951 F. Supp. 2d 457, 473-74 (S.D.N.Y. 2013) (finding scienter based on resignations and retirements of insiders, where the insiders were "aware of information that contradicted" statements they had made in public disclosures, and were involved in misconduct uncovered by analysts, including one retirement the day of the first analyst report); *Ho v. Duoyuan Glob. Water, Inc.*, 887 F. Supp. 2d 547, 559, 571, 575 (S.D.N.Y. 2012) (finding scienter on the part of a chief financial officer, Stephen Park, despite stating that "Park's resignation by itself is insufficient to support an allegation of scienter," because Park's resignation occurred "approximately at the same time" corporation announced accounting issues and an investment company report identified "additional areas of concern," including "inoperable" sales office

WEIL:\98852529\5\10471.0003

### C.  Plaintiffs Fail To Allege Control Person Liability Under Section 20(a)

Plaintiffs' Section 20(a) claim against Mr. Sánchez Ortega alleges control person liability. The district court correctly held – and plaintiffs do not dispute – that, "[t]o assert a prima facie case under Section 20(a), a plaintiff 'must show a primary violation by the controlled person and control of the primary violator by the targeted defendant, and show that the controlling person was in some meaningful sense a culpable participant in the fraud perpetrated by the controlled person.'" SA94 (citation omitted); *see also SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996) ("[i]n order to establish a prima facie case of controlling-person liability, a plaintiff must show a primary violation by the controlled person and control of the primary violator by the targeted defendant, . . . and show that the controlling person was 'in some meaningful sense [a] culpable participant[ ] in the fraud perpetrated by [the] controlled person[ ]'") (citations omitted).

Plaintiffs' one-sentence argument on this subject contends only that the district court "dismissed control liability claims because it found no primary liability" on the part of Abengoa, and, "[b]ecause the court erred in rejecting primary liability, its rejection of control liability was also error." Appellants Br. at 70. As

---

phone numbers, and two weeks before four independent directors resigned in a letter stating that management, including Park, had intentionally "hampered" an audit).

WEIL:\98852529\5\10471.0003

demonstrated in Abengoa's brief, plaintiffs are wrong: the district court did not err in dismissing the primary claim against Abengoa.

But even assuming, for the sake of argument, that a primary violation has been alleged against Abengoa, the district court also dismissed plaintiffs' Section 20(a) claim against Mr. Sánchez Ortega on a second and independent ground: "since 'culpable participation is an element of a Section 20(a) claim,' it 'must be pleaded with the same particularity as scienter.'" SA94 (quoting *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 438 (S.D.N.Y. 2014), *and Veon*, 2018 WL 4168958, at *21). Accordingly, the district court concluded, "[e]ven assuming that Plaintiffs have sufficiently alleged a Section 10(b) claim against Abengoa . . . , Plaintiffs have failed to plead scienter as to Sánchez Ortega." SA95. Thus, "Plaintiffs have failed to state a claim that Sánchez Ortega was a culpable participant pursuant to Section 20(a)." *Id.*

In so ruling, the district court followed the overwhelming majority rule in this Circuit. *See Tecku v. Yieldstreet, Inc.*, 2022 WL 1322231, at *16 (S.D.N.Y. May 3, 2022) ("the heightened pleading standards of the PSLRA apply with respect to the third prong of a Section 20(a) claim, which requires plaintiffs to allege facts demonstrating that the defendant was a culpable participant"); *Behrendsen v. Yangtze River Port & Logistics Ltd.*, 2021 WL 2646353, at *17 (E.D.N.Y. June 28, 2021) ("[c]ulpable participation 'must be pleaded with the same particularity as scienter[,]'

meaning 'that an allegation of culpable participation requires particularized facts of the *controlling person's* conscious misbehavior or recklessness'") (citation omitted); *In re Weight Watchers Int'l Inc., Sec. Litig.*, 504 F. Supp. 3d 224, 264 (S.D.N.Y. 2020) (stating majority view that the culpable participation requirement mandates alleging scienter and "[t]his Cout has previously aligned itself with that majority and sees no reason to change its view"); *Veon*, 2018 WL 4168958, at *22 ("this Court will follow the majority rule and apply the PSLRA's heightened pleading standard when assessing culpable participation"); *SEC v. Yorkville Advisors, LLC*, 305 F. Supp. 3d 486, 511 (S.D.N.Y. 2018) ("[a]mong the district courts in this Circuit, the weight of well-reasoned authority requires the plaintiff to prove 'some level of culpable participation at least approximating recklessness in the section 10(b) context'") (citations omitted); *In re Forcefield Energy, Inc. Sec. Litig.*, 2017 WL 1319802, at *16 (S.D.N.Y. Mar. 29, 2017) ("most judges in the District" have "found that a plaintiff must plead culpable participation with scienter"); *Special Situations*, 33 F. Supp. 3d at 437-38 ("the majority of district courts in this Circuit have required Section 20(a) plaintiffs to allege 'that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud'" and that this "must be pleaded with the same particularity as scienter") (collecting additional decisions); *Mishkin v. Ageloff*, 1998 WL 651065, at *25 (S.D.N.Y. Sept. 23, 1998) ("at the initial pleading stage, and in order to withstand a motion to dismiss a section 20(a) claim,

WEIL:\98852529\5\10471.0003

. . . a plaintiff must allege . . . particularized facts of the controlling person's conscious misbehavior as a culpable participant in the fraud").

The majority rule is the correct one; as explained in *Mishkin*, the first in this line of decisions, shortly after the PSLRA was enacted:

> [R]elevant to this argument is section 21(b)(2) of the PSLRA . . . :
>
> "In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."
>
> 15 U.S.C. § 78u-4(b)(2). . . . [A]s part of a plaintiff's prima facie case, a plaintiff must show that "the controlling person was 'in some meaningful sense [a] culpable participant[ ] in the fraud perpetrated by [the] controlled person[.]'" As a result, because a section 20(a) plaintiff must *ultimately* establish a defendant's state of mind, the PSLRA requires a plaintiff, at the pleading stage, to allege particular facts that give rise to a "strong inference" of the requisite state of mind. . . .
>
> Section 78u-4(b)(2) . . . specifically links its heightened pleading standard to any cause of action where a particular state of mind is an element of a plaintiff's case, regardless of the stage at which that element must be proven. Stated somewhat differently, section 78u-4(b)(2) provides the bridge between pleading requirements and ultimate burden that was previously lacking, and dispositive, to the question of a party's initial pleading obligations. In short, I read section 78u-4(b)(2) as requiring compliance with its terms where, as is the case here, a plaintiff must ultimately prove a defendant's state of mind in order to prevail.

1998 WL 651065, at *23 (citations omitted).

By not addressing the district court's dismissal of plaintiffs' Section 20(a) claim on this ground, plaintiff has waived any argument that the district court

WEIL:\98852529\5\10471.0003

erred on this ground. *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005) (arguments "not made in an appellant's opening brief are waived even if the appellant pursued those arguments in the district court"), *quoted in Salis v. Mayorkas*, 2021 WL 6425204, at \*1 (2d Cir. Oct. 21, 2021) (summary order). "Arguments may not be made for the first time in a reply brief." *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993); *see also Quintanilla-Mejia v. Garland*, 3 F.4th 569, 585 n.18 (2d Cir. 2021) ("[i]nsofar as Quintanilla attempts for the first time in his reply brief to appeal the agency's rejection of his religious persecution claim, the argument is waived"); *JP Morgan*, 412 F.3d at 428 (arguments "not made in an appellant's opening brief are waived even if the appellant . . . raised them in a reply brief").

## II. THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFFS FAIL TO STATE A CLAIM AGAINST MR. SÁNCHEZ ORTEGA UNDER SECTIONS 11 AND 15 OF THE SECURITIES ACT OF 1933

"Section 11 of the Securities Act prohibits materially misleading statements or omissions in registration statements filed with the SEC." *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358 (2d Cir. 2010). "In the event of such a misdeed, the statute provides for a cause of action by the purchaser against the security's issuer, its underwriter, and certain other statutorily enumerated parties," (*id.*) including "every person who signed the registration statement" (15 U.S.C. § 77k(a)(1)) – including in this case, Mr. Sánchez Ortega.

WEIL:\98852529\5\10471.0003

**A.** **Plaintiffs' Section 11 Claim Against Mr. Sánchez Ortega Fails On The Grounds Argued By The Underwriter Defendants and Abengoa: The Claims Are Time-Barred and Plaintiffs Have Failed To Allege A Misstatement**

Plaintiffs' Section 11 claim against Mr. Sánchez Ortega fails on grounds briefed by the Underwriter Defendants and Abengoa: the claim is time-barred, as demonstrated in Point I of the Underwriter Defendants' brief, and the challenged statements are not actionable misstatements, as demonstrated in Point I of Abengoa's brief.

**B.** **Plaintiffs' Section 11 Claim Against Mr. Sánchez Ortega Also Fails Because the Claim Sounds in Fraud and Plaintiffs Do Not Allege Scienter**

The district court did not reach a third ground on which plaintiffs' Section 11 claim against Mr. Sánchez Ortega could have been dismissed: the claim sounds in fraud and, therefore, Federal Rule of Civil Procedure 9(b) requires pleading scienter with particularity, which, as demonstrated in Argument Point I B above, plaintiffs have not alleged on the part of Mr. Sánchez Ortega. This Court may affirm on any ground "'whether or not that ground was relied upon or even considered by the trial court.'" *Colautti v. Franklin*, 439 U.S. 379, 397 n.16 (1979) (quoting *Dandridge v. Williams*, 397 U.S. 471, 475 n.6 (1970)), *quoted in*, *e.g.*, *Viacom Int'l Inc. v. Icahn*, 946 F.2d 998, 1000 (2d Cir. 1991), *and Adirondack Transit Lines, Inc. v. United Transp. Union, Loc. 1582*, 305 F.3d 82, 88 (2d Cir. 2002); *see also Sudler v. City of New York*, 689 F.3d 159, 178 (2d Cir. 2012) ("we

46

may affirm an appealed decision on any ground which finds support in the record, regardless of the ground upon which the trial court relied") (quoting *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 580 (2d Cir. 2006)).

In plaintiffs' First and Second Amended Complaints, plaintiffs "affirm-atively state[d] that they do not claim that the Securities Act Defendants or the Underwriter Defendants committed intentional or reckless misconduct or acted with scienter or fraudulent intent." Supp. App. 16-17, 18 ¶¶51, 61; JA41 ¶60; JA43 ¶70. Plaintiffs declared on page one of their memorandum opposing motions to dismiss the Section 11 claims in their Second Amended Complaint that their "claims under the Securities Act are not fraud claims." ECF 122 at 1.

Plaintiffs changed course, dramatically, following the district court's dismissal of plaintiffs' Second Amended Complaint, adopting a new theory for their Section 11 claim. Plaintiffs' Third Amended Complaint deleted the statements in their First and Second Amended Complaints that they "do not claim that the Securi-ties Act Defendants or the Underwriter Defendants committed intentional or reckless misconduct or acted with scienter or fraudulent intent." *Compare* Supp. App. 16-17, 18 ¶¶51, 61 *and* JA41 ¶60; JA43 ¶70 (each including this statement), *with* JA944-45 ¶¶205, 215 (not including this statement).

And plaintiffs' opposition to motions to dismiss plaintiffs' Third

Amended Complaint no longer disclaimed – as their opposition to motions to dismiss plaintiffs' Second Amended Complaint had disclaimed on page one – that plaintiffs' "claims under the Securities Act are not fraud claims." ECF 182. Instead, plaintiffs included, under the point heading "Securities Act Claims," a 10-½ page discussion detailing an alleged "systemic, widespread accounting fraud" in which the words "fraud," "fraudulently," "falsified," "phony," "scheme," "manipulation," "fake," and "materially" or "artificially inflate[d]" appeared over 25 times. *Id*. at 15-26. Mr. Sánchez Ortega accordingly asked the district court to dismiss plaintiffs' Section 11 claim against him on the new ground that the claim now sounded in fraud, and, thus, now required scienter – the ground on which the district court already had dismissed plaintiffs' Section 10(b) claim against Mr. Sánchez Ortega. ECF 190 at 1-4. The district court's decision dismissing plaintiffs' Section 11 claim did not reach this alternate ground for dismissal. SA133-43.

Plaintiffs now double down on fraud as the basis of their Section 11 claim. Under the heading "A. Securities Act Claims," plaintiffs argue for 23 pages that "Plaintiffs plausibly alleged Abengoa committed accounting fraud, which rendered their statements and omissions false and misleading." Appellants Br. at 32, 38-61. The words "fraud," "fraudulent," and "fraudulently" appear more than 40 times in these 23 pages. *Id*. There are no allegations of negligence. *Id*.

This Court's decision in *Rombach v. Chang*, 355 F.3d 164 (2d Cir.

2004), controls. *Rombach* holds that "the heightened pleading standard of Rule 9(b) applies to Section 11 . . . claims insofar as the claims are premised on allegations of fraud" rather than allegations of negligence in conducting a reasonable and diligent investigation with respect to statements alleged to be false or misleading in a registration statement. *Id*. at 171, 178; *see also* at 171-76 (finding claims against corporate officials sounded in fraud); *id*. at 178 (finding claims against underwriters sounded in negligence because plaintiffs alleged that underwriters failed "to make a reasonable and diligent investigation of the statements contained in the Prospectus"). This Court stated that, "[b]y its terms, Rule 9(b) applies to 'all averments of fraud,'" and that "[t]his wording is cast in terms of the conduct alleged" and "is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action." *Id*. at 171 (quoting Fed. R. Civ. P. 9(b)).

This Court reaffirmed *Rombach* in *Caiafa v. Sea Containers Ltd.*, 331 F. App'x 14, 16 (2d Cir. 2009), stating that "[w]e agree with the District Court that plaintiffs' claim under Section 11 of the 1933 Act is premised on allegations of fraud and is therefore subject to the heightened pleading standard of Rule 9(b) of the Federal Civil Procedure." This Court reaffirmed *Rombach* again in *Steamfitters Loc. 449 Pension Plan v. AT&T Inc.*, 2022 WL 17587853, at *3 n.3 (2d Cir. Dec. 13, 2022), quoting the statement in *Rombach* that "the heightened pleading standard of Rule 9(b) applies to Section 11 . . . claims insofar as the claims are premised on allegations

of fraud." *See also In re Fuwei Films Sec. Litig.*, 634 F. Supp. 2d 419, 436-37 (S.D.N.Y. 2009) (Sullivan, J.) (under *Rombach*, "[t]he Court's inquiry focuses on the conduct alleged, not the labels attached," and "the Court finds that the allegations in regard to individual Defendants Yin, Wang, and Zhou sound in fraud, and are thus subject to the heightened pleading requirements of Rule 9(b)"); *Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 629 (4th Cir. 2008) ("almost every circuit court to examine the issue has held" that "Rule 9(b) applies to allegations under the Securities Act where those allegations sound in fraud" and collecting cases).

Accordingly, while "a plaintiff need allege no more than negligence to proceed under Section 11," Section 11 claims "that do rely upon averments of fraud are subject to the test of Rule 9(b)." *Rombach*, 355 F.3d at 171. A Section 11 claim alleging what is alleged here – that a defendant "concealed" the truth from investors – "is a claim sounding in fraud." *Y-GAR Cap. LLC v. Credit Suisse Grp. AG*, 2020 WL 71163, at *4 (S.D.N.Y. Jan. 2, 2020). Rule 9(b) applies where, as here, plaintiffs "stake[ ] their Securities Act claims upon the same factual allegations as their Rule 10b-5 claims." *In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 742 (S.D.N.Y. 2015) (Nathan, J.). Rule 9(b) also applies where, again as here, Section 11 and Section 10(b) claims are "'almost a mirror image' of one another" and "largely parrot" each other. *In re HEXO Corp. Sec. Litig.*, 524 F. Supp. 3d 283, 299 n.17 (S.D.N.Y. 2021) (citation omitted); *Gentiva*, 932 F. Supp. 2d at 394. To avoid Rule

WEIL:\98852529\5\10471.0003

9(b) in a Section 11 claim, plaintiffs must do the opposite of what plaintiffs do here: they "must avoid language 'classically associated with fraud.'" *In re Chembio Diagnostics, Inc. Sec. Litig.*, 586 F. Supp. 3d 199, 225 (E.D.N.Y. 2022), *reconsideration denied*, 2022 WL 2872671, at *8 (E.D.N.Y. July 21, 2022).

Scienter, of course, is "an indispensable element" of any fraud claim. *Ultramares Corp. v Touche*, 255 N.Y. 170, 186 (1931) (Cardozo, J.). Rule 9(b)'s heightened pleading standard therefore includes a requirement that a plaintiff allege scienter; plaintiffs must "explain why the statements were fraudulent." *Rombach*, 355 F.3d at 172 (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)); *see also Silverstrand Invs. v. AMAG Pharms., Inc.*, 707 F.3d 95, 102 (1st Cir. 2013) ("§ 11 does not have a scienter or reliance requirement, and neither the heightened pleading standard of Fed.R.Civ.P. 9(b) nor of the Private Securities Litigation Reform Act applies *unless a § 11 claim sounds in fraud*") (emphasis added). Plaintiffs must "alleg[e] with particularity both the circumstances constituting fraud and the facts supporting a defendant's fraudulent intent." *Renewable Energy*, 2022 WL 14206678, at *1.

In accordance with these principles, "courts in this circuit have consistently applied *Rombach* to dismiss Securities Act claims that sound in fraud but fail to plead scienter." *In re Chembio Diagnostics, Inc. Sec. Litig.*, 2022 WL 2872671,

WEIL:\98852529\5\10471.0003

at *7 (E.D.N.Y. July 21, 2022). In *Caiafa*, for example, this Court affirmed, "substantially for the same reasons" stated in the district court's "careful and thoughtful order," a decision holding that a Section 11 claim that sounded in fraud "must (but does not here) satisfy the particularity requirements of Rule 9(b), including . . . the requirement to plead with particularity a strong inference of scienter.'" 2008 WL 11516813, at *5 (S.D.N.Y. May 15, 2008) (citation omitted), *aff'd*, 331 F. App'x 14, *17 (2d Cir. 2009); *see also Chembio*, 586 F. Supp. 3d at 226-27 (dismissing Section 11 claims sounding in fraud "under Rule 9(b)'s fraud pleading standard" because "I have already found . . . that based on insufficiently alleged scienter, the statements in the Registration Statement and the Prospectus do not support a compelling inference of fraud"), *reconsideration denied*, 2022 WL 2872671, at *8 (plaintiffs "ignor[e] *Rombach*'s clear instruction" and "I adhere to my prior holding that, since plaintiffs' Securities Act claims against the Chembio defendants sounded in fraud but did not address scienter, these claims did not satisfy the heightened pleading standard of Rule 9(b)"); *In re Micro Focus Int'l Plc Sec. Litig.*, 2020 WL 5817275, at *3, *16 (S.D.N.Y. Sept. 29, 2020) (plaintiff's Section 11 claims "sound in fraud," are subject to "the same heightened pleading standard [as] . . . the Rule 10(b) claim," and fail because of the same deficiencies"); *Gentiva*, 932 F. Supp. 2d at 394 ("the Plaintiff here has failed to 'specifically [plead] alternat[ive] theories of fraud and negligence,'" "[a]ccordingly, the Securities claims must satisfy Rule 9(b)," and

WEIL:\98852529\5\10471.0003

"Plaintiff has failed to comply with Rule 9(b) with regard to the Section 11 claim"); *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 635 (S.D.N.Y. 2005) (dismissing Section 11 claim sounding in fraud because, "[i]n contravention of Fed.R.Civ. P. 9(b) and the PSLRA, plaintiffs have failed to plead with particularity a strong inference of scienter").

Accordingly, Rule 9(b), including its requirement that plaintiffs plead with particularity a strong inference of scienter, applies to plaintiffs' Section 11 claim against Mr. Sánchez Ortega. As demonstrated in Argument Point I B above, plaintiffs have failed to allege scienter with respect to Mr. Sánchez Ortega. The district court could have dismissed plaintiffs' Section 11 claim against Mr. Sánchez Ortega on this ground, and this Court may affirm the dismissal on this ground.

## C. Plaintiffs' Fail To Allege Control Person Liability Under Section 15

Plaintiffs' Section 15 claim against Mr. Sánchez Ortega alleges control person liability with respect to plaintiffs' Section 11 claim against Abengoa, in the same manner plaintiffs' Section 20(a) claim against Mr. Sánchez Ortega invokes control person liability with respect to plaintiffs' Section 10(b) claim against Abengoa. The district court held that plaintiffs' Section 15 claim fails because plaintiffs have not alleged primary liability. SA27; SA143-44. Plaintiffs contend that the "the court erred in rejecting primary liability" and thus "its rejection of control liability was also error." Appellants Br. at 70. As demonstrated in Abengoa's brief, the

WEIL:\98852529\5\10471.0003

district court did not err in dismissing the primary claim against Abengoa.

## CONCLUSION

The district court's August 21, 2020, September 10, 2021, and August 30, 2022 orders dismissing all claims against Mr. Sánchez Ortega and August 31, 2022 judgment should be affirmed.

Dated: New York, New York
        March 13, 2023

Respectfully submitted,

WEIL, GOTSHAL & MANGES LLP


    /s/ Stephen A. Radin
STEPHEN A. RADIN
BEN MARCU
LIZ GREFRATH
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
stephen.radin@weil.com
ben.marcu@weil.com
liz.grefrath@weil.com

Counsel for Defendant-Appellee Manuel Sánchez Ortega

WEIL:\98852529\5\10471.0003

# CERTIFICATE OF COMPLIANCE

I, Stephen A. Radin, counsel to appellee Manuel Sánchez Ortega, and a member of the Bar of this Court, certify pursuant to Fed. R. App. P. 32(g) that the attached brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), this document contains 13,246 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman.

/s/ Stephen A. Radin
Stephen A. Radin
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
stephen.radin@weil.com

March 13, 2023

# CERTIFICATE OF SERVICE

I, Stephen A. Radin, counsel to appellee Manuel Sánchez Ortega, and a member of the Bar of this Court, certify that on March 13, 2023, I electronically filed the foregoing brief with the Clerk of the Court using the Court's ECF system, which will send notification of this filing to all ECF participants in this case.

/s/ Stephen A. Radin
Stephen A. Radin
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
stephen.radin@weil.com