# 22-2438-cv

## In the United States Court of Appeals for the Second Circuit

JESSE SHERMAN, ARLETTE SHERMAN,
LEAD PLAINTIFFS-APPELLANTS,

PAMCAH-UA LOCAL 675 PENSION FUND,
MOVANT-APPELLANT,

[CAPTION CONTINUED ON FOLLOWING PAGE]

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK (CIV. NO. 15-6279)
(THE HONORABLE EDGARDO RAMOS, J.)*

**BRIEF OF DEFENDANTS-APPELLEES CANACCORD GENUITY INC.,
HSBC SECURITIES (USA) INC., MERRILL LYNCH INTERNATIONAL,
AND SOCIETE GENERALE**

RICHARD ROSEN
PATRICK MCCUSKER
PAUL, WEISS, RIFKIND,
 WHARTON & GARRISON LLP
 *1285 Avenue of the Americas*
 *New York, NY 10019*

KANNON K. SHANMUGAM
ABIGAIL FRISCH VICE*
E. GARRETT WEST
PAUL, WEISS, RIFKIND,
 WHARTON & GARRISON LLP
 *2001 K Street, N.W.*
 *Washington, DC 20006*
 *(202) 223-7300*

---

MICHAEL FRANCISCO, INDIVIDUALLY AND ON BEHALF OF
ALL OTHERS SIMILARLY SITUATED,
PLAINTIFF,

DANIEL LAMOUREAUX, INDIVIDUALLY AND ON BEHALF OF
ALL OTHERS SIMILARLY SITUATED,
CONSOLIDATED-PLAINTIFF

*v.*

ABENGOA, S.A., MANUEL SANCHEZ ORTEGA, CANACCORD GENUITY INC.,
HSBC SECURITIES (USA) INC., MERRILL LYNCH INTERNATIONAL,
SOCIETE GENERALE,
DEFENDANTS-APPELLEES

SANTIAGO SEAGE, BARBARA ZUBIRIA, IGNACIO GARCIA ALVEAR, ALICI
VELARDE VALIENTE, BANCO SANTANDER, S.A., CARLOS SUNDHEIM
LOSADA, CHRISTOPHER HANSMEYER, CLAUDI SANTIAGO PONSA,
ENRIQUE BORRAJO LOVERA, FELIPE BENJUMEA LLORENTE, FERNANDO
SOLIS MARTINEZ-CAMPOS, IGNACIO SOLIS GUARDIOLA, JAVIER
BENJUMEA LLORENTE, JESUS GARCIA-QUILEZ GOMEZ, JOSE B.
TERCEIRO, JOSE BORRELL FONTELLES, JOSE JOAQUIN ABAURRE
LLORENTE, JOSE LUIS AYA ABAURRE, MARIA TERESA BENJUMEA
LLORENTE, RICARDO MARTINEZ RICO,
DEFENDANTS.

---

[*] Admitted in California and practicing law in the District of Columbia pending application for admission to the D.C. Bar under the supervision of bar members pursuant to D.C. Court of Appeals Rule 49(c)(8).

## CORPORATE DISCLOSURE STATEMENT

Appellee Canaccord Genuity Inc., now known as Canaccord Genuity LLC, is wholly owned by Canaccord Genuity Group Inc. Canaccord Genuity Group Inc. has no parent corporation, and no publicly held company owns 10% or more of its stock.

Appellee HSBC Securities (USA) Inc. is wholly owned by HSBC Markets (USA) Inc., and the ultimate corporate parent of both entities is HSBC Holdings plc. HSBC Holdings plc has no parent corporation, and no publicly held company owns 10% or more of its stock.

Appellee Merrill Lynch International is wholly owned by ML UK Capital Holdings Ltd., and the ultimate corporate parent of both entities is Bank of America Corporation. Bank of America Corporation has no parent corporation, and Berkshire Hathaway Inc. owns 10% or more of its stock.

Appellee Société Générale has no parent corporation, and no publicly held company owns 10% or more of its stock.

# TABLE OF CONTENTS

Page

Statement of the issues ...................................................................1

Statement of the case .....................................................................1

    A.    Legal background ..............................................................2

    B.    Factual background ..........................................................3

    C.    Proceedings below............................................................6

Summary of argument ...................................................................12

Argument .......................................................................................14

    I.    Appellants' Securities Act claims against the underwriters
        are untimely ...................................................................14

        A.    The district court correctly concluded that the
            Securities Act claims were untimely as of August 2016.....15

        B.    The Securities Act claims cannot 'relate back'
            to the first amended complaint ...........................................26

    II.    Appellants' Securities Act claims also fail on the merits.............38

Conclusion......................................................................................39

# TABLE OF AUTHORITIES

Page

## CASES

*10012 Holdings, Inc.* v. *Sentinel Insurance Co.*,
  21 F.4th 216 (2d Cir. 2021) ................................................................14

*Alcatel Securities Litigation, In re*,
  382 F. Supp. 2d 513 (S.D.N.Y. 2005) ................................................33

*ASARCO LLC* v. *Goodwin*, 756 F.3d 191 (2d Cir. 2014) ....................27

*Barilli* v. *Sky Solar Holdings, Ltd.*,
  389 F. Supp. 3d 232 (S.D.N.Y. 2019) ................................................35

*Bear Stearns Mortgage Pass-Through Certificates Litigation,
  In re*, 851 F. Supp. 2d 746 (S.D.N.Y. 2012) ....................................22

*Caldwell* v. *Berlind*, 543 Fed. Appx. 37 (2d Cir. 2013) ....................33

*California Public Employees' Retirement System*
  v. *ANZ Securities, Inc.*, 137 S. Ct. 2042 (2017) ................................3

*City of Pontiac General Employees' Retirement System*
  v. *MBIA, Inc.*, 637 F.3d 169 (2d Cir. 2011) ........................23, 34, 37

*Cohen* v. *S.A.C. Trading Corp.*, 711 F.3d 353 (2d Cir. 2013) ............25

*FDIC* v. *Credit Suisse First Boston Mortgage Securities Corp.*,
  414 F. Supp. 3d 407 (S.D.N.Y. 2019) ................................................24

*Federal Housing Finance Agency for National Mortgage
  Association* v. *Nomura Holding America, Inc.*,
  873 F.3d 85 (2d Cir. 2017) ....................................................16, 18, 23

*Glover* v. *FDIC*, 698 F.3d 139 (3d Cir. 2012) ........................32, 33, 37

*Gomes* v. *Avco Corp.*, 964 F.2d 1330 (2d Cir. 1992) ....................28, 30

*Headley* v. *Tilghman*, 53 F.3d 472 (2d Cir. 1995) ............................27

Cases—continued:

*Henderson* v. *Bolanda*, 253 F.3d 928 (7th Cir. 2001).........................27

*Krupski* v. *Costa Crociere S.p.A.*,
    560 U.S. 538 (2010)................................................................37

*LC Capital Partners, LP* v. *Frontier Insurance Group, Inc.*,
    318 F.3d 148 (2d Cir. 2003) ..........................................*passim*

*Lehman XS Trust, Series 2006-GP2 by U.S. Bank National
    Association* v. *GreenPoint Mortgage Funding, Inc.*,
    916 F.3d 116 (2d Cir. 2019) ..............................3, 28, 29, 31

*Marcus* v. *AT&T Corp.*, 138 F.3d 46 (2d Cir. 1998)...........................33

*Ma* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    597 F.3d 84 (2d Cir. 2010) .................................................34

*Monroe County Employees' Retirement System* v. *YPF
    Sociedad Anonima*, 15 F. Supp. 3d 336 (S.D.N.Y. 2014)..................26

*Newman v. Warnaco Group, Inc.*,
    335 F.3d 187, 194 (2d Cir. 2003) .........................................24

*Noah Educational Holdings, Ltd. Securities Litigation, In re*,
    Civ. No. 8-9203, 2010 WL 1372709 (S.D.N.Y. Mar. 31, 2010) ...........35

*Oja* v. *U.S. Army Corps of Engineers*,
    440 F.3d 1122 (9th Cir. 2006)..........................................28, 30

*Peifa Xu* v. *Gridsum Holding Inc.*,
    Civ. No. 18-3655, 2021 WL 773002 (S.D.N.Y. Feb. 23, 2021)............34, 35

*Police & Fire Retirement System of City of Detroit* v. *IndyMac
    MBS, Inc.*, 721 F.3d 95 (2d Cir. 2013) ....................................2

*Silberstein* v. *Aetna, Inc.*,
    Civ. No. 13-8759, 2015 WL 1424058 (S.D.N.Y. Mar. 26, 2015) ...........25

*Slayton* v. *American Express Co.*, 460 F.3d 215 (2d Cir. 2006) .............*passim*

Cases—continued:

*Staehr* v. *Hartford Financial Services Group, Inc.*,
547 F.3d 406 (2d Cir. 2008) .......................................................12, 23

*Thomas* v. *Citigroup Global Markets Holdings Inc.*,
Civ. No. 21-3673, 2022 WL 1051158 (S.D.N.Y. Mar. 1, 2022),
*report and recommendation adopted as modified*, Civ. No.
21-3673, 2022 WL 951112 (S.D.N.Y. Mar. 30, 2022) ....................25

*VKK Corp.* v. *National Football League*,
244 F.3d 114 (2d Cir. 2001), *abrogated on other grounds by*
*Slayton* v. *American Express Co.*, 460 F.3d 215 (2d Cir. 2006) ................27

## STATUTES AND RULES

Securities Act of 1933:

15 U.S.C. § 77k (§ 11) .............................................................*passim*

15 U.S.C. § 77k(a) (§ 11(a)) ....................................................2, 30

15 U.S.C. § 77k(b)(3) (§ 11(b)(3)).................................................34

15 U.S.C. § 77m (§ 13) ............................................................*passim*

5 U.S.C. § 552a ...................................................................29, 30

11 U.S.C. ch. 15 .......................................................................6

15 U.S.C. §§ 78a *et seq.* ..........................................................33

42 U.S.C. § 1981 ..................................................................28, 30

42 U.S.C. §§ 2000e *et seq.* .......................................................28

Fed. R. App. P. 28(i) .............................................................14, 38

Fed. R. Civ. P. 15 .................................................................*passim*

Fed. R. Civ. P. 15(c)...........................................................3, 13, 26, 37

Page

Rule—continued:

Fed. R. Civ. P. 15(c)(1)(B)..........................................................3, 28, 29

## OTHER AUTHORITIES

Charles Alan Wright et al., *Federal Practice and Procedure*
  (3d ed. 2010)................................................................................25, 28

## STATEMENT OF THE ISSUES

1. A. Whether the Securities Act claims against the underwriter appellees in the third amended complaint were untimely because Abengoa's November 2014 disclosures put appellants on notice of their claims such that they were untimely filed outside the one-year limitations period in August 2016.

B. Whether the Securities Act claims against the underwriter appellees in the third amended complaint were untimely because that complaint was filed outside the three-year repose period and the claims do not "relate back" to the first amended complaint.

2. Whether appellants' Securities Act claims against the underwriter appellees, even if timely filed, fail on the merits.

## STATEMENT OF THE CASE

Appellee Abengoa is a Spanish engineering and construction company that filed for bankruptcy in December 2016. Appellants are investors who claim that the F-1 Registration Statement for Abengoa's public offering of American depository shares on October 17, 2013, contained false statements. That offering was underwritten by appellees Canaccord Genuity Inc., HSBC Securities (USA) Inc., Merrill Lynch International, and Société Générale (collectively, the "underwriter appellees" or "underwriters"). J.A. 898. In the op-

erative version of the complaint, appellants allege that the underwriters violated Section 11 of the Securities Act because the registration statement contained materially false statements.  The alleged misrepresentations centered on assertions that Abengoa "enforce[d] strict financial discipline" and followed the "percentage-of-completion" method of revenue recognition.  J.A. 942-943 (¶ 197).  The district court correctly dismissed the Section 11 claims against the underwriters as untimely and unmeritorious, and its judgment should be affirmed.

## A.    Legal Background

Section 11 of the Securities Act provides a cause of action to the acquirer of a security against "every underwriter with respect to such security" if, as relevant here, "any part of the registration statement" contains "an untrue statement of material fact."  15 U.S.C. § 77k(a).  Section 13 of the Securities Act imposes two distinct time limits on such claims.  *See Police & Fire Retirement System of City of Detroit* v. *IndyMac MBS, Inc.*, 721 F.3d 95, 106-107 (2d Cir. 2013).  *First*, the statute of limitations requires any action to be brought "within one year after the discovery of the untrue statement . . . or after such discovery should have been made by the exercise of reasonable diligence."  15 U.S.C. § 77m.  *Second*, the statute of repose requires the claim to be brought within "three years after the security was bona fide offered to the

public." *Id.*; *see also California Public Employees' Retirement System* v. *ANZ Securities, Inc.*, 137 S. Ct. 2042, 2048-2050 (2017).

An "amendment" to a complaint which would be otherwise untimely "relates back" to the "date of the original" complaint in certain circumstances prescribed by Federal Rule of Civil Procedure 15(c). As relevant here, Rule 15(c)(1)(B) allows relation back if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." As this Court has explained, the "central inquiry" under Rule 15 is "whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations." *Lehman XS Trust, Series 2006-GP2 by U.S. Bank National Association* v. *GreenPoint Mortgage Funding, Inc.*, 916 F.3d 116, 128 (2d Cir. 2019).

## B. Factual Background

1. This appeal concerns alleged false statements in the registration statement for the public offering of Abengoa's shares on October 17, 2013. In that registration statement, Abengoa represented that it incurred two types of debt: (1) corporate recourse debt, typically assumed for the purpose of general corporate spending and guaranteed by Abengoa, and (2) nonrecourse debt, typically assumed by an Abengoa subsidiary for a specific project and

guaranteed only by the assets and cash flow of that subsidiary. It further represented that it incurred non-recourse debt only on a project-by-project basis and that it "d[id] not commit to any projects . . . prior to securing long-term financing." Abengoa disclosed that its corporate debt was subject to a covenant that required Abengoa to maintain a "leverage ratio," ensuring that corporate debt did not exceed a certain multiple of corporate earnings; the multiple was 3x until December 2014 and 2.5x afterwards. The registration statement further represented that, as of June 2013, Abengoa's leverage ratio was 2.32x. Supp. App. 14-15.

On November 12, 2014, Abengoa released its quarterly financial results, reporting increased earnings, stable cash flow, and a decreased leverage ratio of 2.1x. During Abengoa's earnings call with investors and analysts later that day, an analyst raised concerns that Abengoa had inaccurately categorized, as nonrecourse debt, bonds that had been issued in 2014 to generate cash flow and that were guaranteed by Abengoa—in other words, bonds with the defining characteristics of recourse debt. Abengoa's representative explained that Abengoa had classified certain guaranteed debt as "preoperational non-recourse debt" or "non-recourse debt in process." That classification, the representative explained, allowed Abengoa to start projects without waiting (sometimes up to a year) to close on long-term financing. Supp. App. 46, 48-50; S.A. 22; J.A. 157.

In a follow-up call with analysts and investors, Abengoa justified its non-recourse debt in process classification—which it had used for years—and also disclosed that it had been accounting for another €1 billion in guaranteed debt, in addition to the €500 million of the 2014 bonds discussed in the previous call, within that category of non-recourse debt in process. That categorization had the effect of decreasing Abengoa's recourse leverage ratio. When adjusted to include the non-recourse debt in process, Abengoa's leverage ratio was 5.6x— nearly double what it disclosed on November 12 and above the 3x threshold in the debt covenant disclosed in the registration statement. Supp. App. 49-51; J.A. 164-165.

As alleged by appellants, those disclosures "stunned" investors and analysts, generated widespread commentary on the company's financials, and culminated in a 50% drop in Abengoa's share price over the next three trading days. Abengoa "faced myriad further questions about how various liabilities are treated on its balance sheet." Analysts were dissatisfied with Abengoa's answers and did not shy away from expressing as much. For instance, one publication warned that Abengoa's reporting was not trustworthy, and stated that the company was "trying to hide something." Another report similarly flagged Abengoa's credibility issues and funding-access risks. And in a Reuters article, a hedge fund analyst stated, "The more they open the door on their financials, the more questions there are." Supp. App. 49-53.

2.    In 2015, Abengoa continued to report strong cash flow and liquidity, despite the concerns of analysts that certain transactions indicated the company was in need of cash.  But in August 2015, Abengoa sought shareholder approval for asset divestitures and a €650 million capital increase—"significant actions" Abengoa stated were necessary to "reduce corporate debt" and "reinforce [its] balance sheet."  Abengoa's share price fell nearly 45% over the next two business days.  Supp. App. 56-58, 61-62, 65, 70.

By November 25, 2015, Abengoa announced it was filing for bankruptcy protection under Spanish law, and in March 2016, it filed for Chapter 15 bankruptcy in the United States.  Abengoa's shares were delisted from Nasdaq in April 2016.  Supp. App. 72-73.

### C.    Proceedings Below

1.    Two putative class actions were filed on August 10, 2015, and September 3, 2015, in the United States District Court for the Southern District of New York, naming Abengoa and its current and former employees as defendants.  S.A. 11.  The complaints did not allege any violations of the Securities Act, and the underwriters were not named as defendants.  *See* Dkt. 1, at 4-5, 15-19, *Francisco* v. *Abengoa, S.A.*, Civ. No. 15-6279 (S.D.N.Y. Aug. 10, 2015); Dkt. 1, at 5, 19-23, *LaMoureaux* v. *Abengoa, S.A.*, Civ. No. 15-6971 (S.D.N.Y. Sept. 3, 2015).  The actions were consolidated.  J.A. 8.

2.     On August 2, 2016, appellants filed their first amended complaint, alleging for the first time that the underwriters had violated Section 11 of the Securities Act because the registration statement for the October 2013 offering included false statements.  S.A. 11.

In the first amended complaint, appellants alleged that certain provisions of the registration statement "misled the market about Abengoa's liquidity and cash flow."  Supp. App. 16 (¶ 49).  Specifically, appellants alleged that the identified provisions misrepresented (1) Abengoa's "liquidity position, cash flow[,] and capital structure" and that it maintained "[s]trong financial discipline"; (2) the classification of "corporate recourse and non-recourse debt" and that it did "not commit to any projects . . . prior to securing long-term financing"; and (3) that the "corporate leverage ratio" was 2.32x and would remain less than 3x until December 2014, after which it would remain less than 2.5x.  *Id.* at 13-15 (¶¶ 46-48).

Abengoa had accomplished this, appellants alleged, by misclassifying recourse debt as non-recourse debt to decrease its leverage ratio; overstating its "reported cash position" by rejecting supplier invoices and failing to pay contractors; obtaining lines of credit with financial reports that "overstated the value of certain projects" by showing "inaccurate percentages of completion on some projects"; and overstating its financial position when it had "inadequate liquidity and cash flow to fund existing operations and service debt."

Supp. App. 15-16 (¶ 49). Notably, appellants identified no provision of the registration statement relating to the "percentage-of-completion" method of revenue recognition.

3. More than three years later, following a stay of proceedings for Abengoa's bankruptcy, appellants filed a second amended complaint on October 28, 2019. Appellants elected to amend rather than defend the first amended complaint after the underwriters informed them, by letter, that the first amended complaint was untimely because the November 2014 disclosures had put them on notice of their debt misclassification claims. *See* D. Ct. Dkt. 171, at 7; D. Ct. Dkt. 172-1, at 2-6. In the second amended complaint, appellants omitted any reference to the misclassification of debt, although they retained the related allegations concerning commitments to projects before long-term financing was secured. S.A. 21-22. Instead, they alleged for the first time that Abengoa did not follow the revenue-recognition policies set forth in the registration statement and instead routinely recognized revenue prematurely by recording incorrect completion rates for its construction projects. J.A. 40-41. On August 21, 2020, the district court dismissed the Securities Act claims against the underwriters, reasoning that the project financing claim was untimely because the November 2014 disclosures put appellants on notice that Abengoa began some projects before securing long-term financing,

and that appellants had failed validly to state any Securities Act claim.  S.A. 18-27.  The court granted appellants leave to amend the complaint.  S.A. 45-46.

4.      Appellants filed the third amended complaint on September 17, 2021—nearly eight years after the public offering.  In the third amended complaint—the operative version on appeal—appellants again alleged that the registration statement contained a series of false statements concerning Abengoa's "revenue recognition accounting standards."  *See* J.A. 941-943 (¶¶ 196-203).  The complaint identified as false the following statements in the registration statement:

- "Revenue from construction contracts is recognized using the percentage-of-completion method for contracts whose outcome can be reliably estimated and it is probable that they will be profitable."

- "[T]he percentage of completion is determined at the date of every consolidated statement of financial position based on the actual costs incurred as a percentage of total estimated costs for the entire contract."

- "We have established, over the years, a robust project management and control system, with periodic monitoring of each project.  This system is based on the long-track experience of the Group in constructing complex infrastructure and installations.  As far as practicable, we apply past experience in estimating the main elements of construction contracts and rely on objective data such as physical inspections or third parties confirmations."

- "Costs incurred in the period which relate to future project activities are not included when determining the percentage of completion."

J.A. 942-943 (¶ 197) (emphases omitted). Appellants alleged that those statements were false because the company had "systemically inflated its profit margins and concealed its losses in violation of international accounting standards" by committing "widespread, systemic accounting fraud." J.A. 943-944 (¶¶ 198, 203). None of the claimed false statements, and none of the alleged conduct that rendered the statements false, was included in the Securities Act portion of the first amended complaint.

Indeed, by the third amended complaint, little remained of the first. Appellants retained only one alleged misstatement from the first amended complaint, concerning Abengoa's "strict financial discipline." J.A. 942 (¶ 197). The alleged misstatement, as quoted in the complaint, was as follows:

> We have successfully grown our business while seeking to enforce strict financial discipline to maintain our strong liquidity position. As of June 30, 2013, we had cash and cash equivalents and short-term financial investments of €3,222 million, which we believe are sufficient to satisfy our short-term liquidity needs. This strong cash position also assists in bidding for large projects.

*Id.* (¶ 197) (emphasis omitted); *cf.* Supp. App. 26 (¶ 94) (first amended complaint). Appellants omitted the misstatements alleged in the first amended complaint regarding cash flow and liquidity, debt classification, leverage risks, and Abengoa's practice of securing long-term financing before beginning projects. *Compare* J.A. 942-943 *with* Supp. App. 26-28.

The underwriters again moved to dismiss the claims, arguing that the claims in the third amended complaint were time-barred as of the date of the first amended complaint (August 2, 2016) because the November 2014 disclosures put appellants on notice of their Securities Act claims. D. Ct. Dkt. No. 171, at 9-13. The underwriters also argued, in the alternative, that the claims in the third amended complaint could not "relate back" to the first amended complaint. *Id.* at 14-17.

Abengoa and one of its former officers filed separate motions to dismiss the Securities Act claims against them (along with other claims not relevant to the underwriters), and the underwriters joined in Abengoa's argument that appellants failed to state a claim because the alleged misstatements were non-actionable puffery and not false. D. Ct. Dkt. 171, at 2 n.1; D. Ct. Dkt. 177, at 5-21.

5.     The district court granted the motions to dismiss. S.A. 128. Of relevance to the Securities Act claims against the underwriters, the court concluded that the November 2014 disclosures sufficed to put appellants on at least inquiry notice of their claims, including the claims alleging accounting improprieties. The court noted appellants' allegations that, after the November 2014 disclosures, "fissures" appeared in Abengoa's "public façade"; that "the market" believed Abengoa had "attempted an accounting slight-of-hand";

and that the misclassification raised "myriad further questions about how various liabilities are treated on [Abengoa's] balance sheet." S.A. 129 (quoting J.A. 895 (¶ 12)). The court concluded that the disclosures "should have alerted any reasonable investor that something [was] seriously wrong." S.A. 130 (quoting *Staehr* v. *Hartford Financial Services Group, Inc.*, 547 F.3d 406, 434 (2d Cir. 2008)).

In addition, the district court concluded that the alleged misstatement regarding Abengoa's efforts to "enforce strict financial discipline," J.A. 942 (¶ 197), was "nonactionable puffery." S.A. 133. And it concluded that appellants had failed adequately to allege the falsity of any of the misstatements. *See* S.A. 138, 143. The court held that dismissal was warranted on those grounds as well. S.A. 143.

This appeal followed.

## SUMMARY OF ARGUMENT

I.      Appellants' Securities Act claims against the underwriters are untimely. The operative third amended complaint was filed outside the three-year repose period. The claims in the operative complaint are therefore untimely unless they were (A) timely filed in an earlier complaint (B) to which the claims "relate back." Neither requirement is satisfied.

A.      The district court correctly determined that the Securities Act claims were untimely even at the time the first amended complaint was filed

in August 2016. Abengoa's public disclosures in November 2014 revealed that Abengoa had misclassified debt. Analysts publicly stated that this misclassification weakened Abengoa's "credibility" and suggested that the company may have been deceiving investors. Appellants therefore knew or should have known that the registration statement contained the alleged misrepresentations; they had a duty to investigate potential wrongdoing; and they failed to allege they undertook any such investigation following the November 2014 disclosures. Because appellants' claims were subject to a one-year limitations period, they were thus time-barred as of August 2016. Accordingly, there is no timely complaint for the third amended complaint to "relate back" to.

B. Even if the claims in the first amended complaint were timely filed, appellants' Securities Act claims were not among those claims, and the claims in the operative third amended complaint thus do not "relate back" under Rule 15(c). *First*, with one exception, none of the alleged misstatements in the third amended complaint was alleged to be false in the first amended complaint, and to that extent the third amended complaint alleges new causes of action that cannot relate back to the first amended complaint. *Second*, appellants' theory of misconduct in the operative complaint is distinct from the theory originally alleged. The first amended complaint alleges that the misclassification of certain debts misled investors about Abengoa's leverage ratio, cash flow, and liquidity; the third amended complaint alleges that Abengoa's

statements about its accounting methodology misled investors because the company was committing widespread, systemic accounting fraud to inflate its revenues.

II. Pursuant to Federal Rule of Appellate Procedure 28(i), the underwriters adopt by reference the arguments made by appellee Abengoa that the Securities Act claims fail on the merits because (1) the alleged misstatements are nonactionable puffery and (2) appellants failed to allege falsity.

## ARGUMENT

This Court reviews the district court's decision to grant the motion to dismiss de novo. *See, e.g., 10012 Holdings, Inc.* v. *Sentinel Insurance Co.*, 21 F.4th 216, 219 (2d Cir. 2021). This Court should affirm the district court's dismissal of the Securities Act claims against the underwriters because the claims in the third amended complaint were time-barred and because appellants failed sufficiently to allege any violation of the Securities Act.

## I. APPELLANTS' SECURITIES ACT CLAIMS AGAINST THE UNDERWRITERS ARE UNTIMELY

Appellants do not dispute that the operative third amended complaint (like the second amended complaint) was filed outside the three-year repose period for violations of Section 11 of the Securities Act. *See* 15 U.S.C. § 77m (providing that the repose period runs three years after securities are "offered to the public"); *compare* J.A. 922 (¶¶ 125-126) (public offering in October 2013),

*with* J.A. 20 (third amended complaint filed September 2021), *and* J.A. 13 (second amended complaint filed October 2019). Instead, appellants contend that the *first* amended complaint was timely filed in August 2016 within both the three-year repose period and the one-year limitations period for the Securities Act. *See* Br. 32.

That argument fails for two independent reasons. *First*, the district court correctly concluded that appellants' Section 11 claims were untimely as of August 2016. *Second*, even if the claims would have been timely as of August 2016, appellants did not plead the relevant claims in the first amended complaint, such that the claims in the third amended complaint could "relate back" to those claims. The district court therefore correctly dismissed appellants' Securities Act claims on the ground they were time-barred.

## A. The District Court Correctly Concluded That The Securities Act Claims Were Untimely As Of August 2016

The district court correctly concluded that "the November 2014 disclosures were sufficient to put the plaintiffs on notice that the Registration Statement was false." S.A. 129. Appellants' current Securities Act claims were therefore time-barred by the one-year limitations period as of August 2016, when the first amended complaint was filed.

1. Section 11 claims must be brought "within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. §77m. The

period begins to run "when the plaintiff discovers (or should have discovered) the securities-law violation." *Federal Housing Finance Agency for National Mortgage Association* v. *Nomura Holding America, Inc.*, 873 F.3d 85, 119 (2d Cir. 2017). Publicly available information suggesting "the probability that a violation of the securities laws has occurred" puts the plaintiff on "inquiry notice," meaning that the court will "assume that a reasonable plaintiff would conduct further investigation into the potential violation." *Id.* Such a "storm warning" imposes a "duty to inquire" into the alleged wrongdoing. *Id.* at 120. And as this Court has explained, if information appearing "on the face of the complaint and related documents" reveals facts sufficient to trigger that duty to investigate, the plaintiff must "at least . . . allege that inquiry was made" when "resisting a motion to dismiss on limitations grounds." *LC Capital Partners, LP* v. *Frontier Insurance Group, Inc.*, 318 F.3d 148, 156 (2d Cir. 2003).

2. In this case, as the district court concluded, appellants were on notice that the registration statement contained multiple false statements based on the disclosures in November 2014. Appellants alleged that one of Abengoa's officers indicated on a conference call with analysts that Abengoa had classified certain bonds as "non-recourse debt, thereby excluding it from Abengoa's debt and leverage ratios." Supp. App. 49 (¶ 143). But those bonds were in fact guaranteed by Abengoa, meaning that they should have been classified as *recourse* debt.

And as appellants explained, "[a]nalysts and investors" were "stunned to learn" of this classification decision. Supp. App. 49 (¶ 145). One analyst report stated that the "corporate leverage [was] higher" than "Abengoa's calculation" and concluded that the company's "weak and constantly changing disclosure" gave the "impression that it [was] trying to hide something from analysts." *Id.* (¶ 145). Another report flagged the "credibility and uncertainty issues" created by the reclassification. *Id.* (¶ 146). Reuters reported that the revelations raised "myriad further questions about how various liabilities are treated on [Abengoa's] balance sheet," and it quoted a hedge fund analyst explaining his concerns about Abengoa's credibility: "The more they open the door on their financials, the more questions there are." J.A. 895 (¶ 12).

In light of those disclosures, appellants knew or should have known that the registration statement contained the false statements alleged in this litigation—and, accordingly, that a violation of Section 11 of the Securities Act had occurred. Appellants alleged that the registration statement included misstatements concerning Abengoa's classification of recourse and non-recourse debt, and its commitment to projects only after securing long-term financing; concerning Abengoa's reported and projected debt-to-earnings ratios; and concerning its cash flows, liquidity, and general financial situation. Supp. App. 13-15 (¶¶ 46-48); *see also* pp. 7-8, *supra*. Those alleged misstatements would have been apparent on the face of the registration statement to

any reasonable investor following the November 2014 disclosures, which appellants themselves describe as a "debt misclassification debacle," Br. 36, and "a highly damaging revelation," Br. 21, 70.

For that reason, the November 2014 disclosures and corresponding public fallout are exactly the sort of "storm warnings," *Nomura*, 873 F.3d at 119, that, as the district court correctly explained, "at the very least . . . triggered a duty to inquire," S.A. 129. Appellants have made no effort to "allege that inquiry was made" into the November 2014 disclosures, as they are required to do when "resisting a motion to dismiss on limitations grounds." *LC Capital Partners*, 318 F.3d at 156. But a reasonably diligent inquiry would have uncovered sufficient information to plead claims grounded in the accounting improprieties that appellants alleged were "systemic," "widespread," "commonplace," and "widely known within Abengoa." J.A. 907 (¶ 67), 944 (¶ 203). In any event, appellants should not be heard to complain that they could not have discovered those violations when they made no effort at all to satisfy their duty to inquire. The November 2014 disclosures put appellants on notice that the registration statement contained false statements, and their Securities Act claims were barred by the one-year limitations period by the time they filed their first amended complaint in August 2016.

3. Appellants respond that the district court erred because it assumed that notice of Section 11 claims requires the plaintiff to be aware of

facts indicating that "specific statements in the Registration Statement were untrue," not that "the Registration Statement is false, generally." Br. 34. In appellants' view, "the November 2014 disclosures involved debt mischaracterization" that "had nothing to do with the accounting fraud that plaintiffs allege rendered the statements at issue in the Registration Statement misleading." *Id.* But even assuming that appellants are correct that notice of Section 11 claims requires a statement-by-statement inquiry, the November 2014 disclosures still put them on inquiry notice of the misstatements alleged in the third amended complaint.

The specific statements that appellants now allege to be false fall into two categories. The first was a single statement concerning Abengoa's general financial situation: "We have successfully grown our business while seeking to enforce strict financial discipline to maintain our strong liquidity position." *See* J.A. 942 (¶ 197). The second was a category of statements concerning Abengoa's use of the percentage-of-completion method of revenue recognition. *See* J.A. 942-943 (¶ 197).[1]

---

[1] *See, e.g.*, J.A. 942 (¶ 197) ("Revenue from construction contracts is recognized using the percentage-of-completion method for contracts whose outcome can be reliably estimated and it is probable that they will be profitable." (emphasis removed)); *id.* ("[T]he percentage of completion is determined at the date of every consolidated statement of financial position based on the actual costs incurred as a percentage of total estimated costs for the entire contract." (emphasis removed)); J.A. 943 (¶ 197) ("Costs incurred in the period which re-

As to the first alleged misstatement: the debt-misclassification disclosures, and the corresponding explanation that this allowed Abengoa to start projects without first securing long-term financing, relate directly to "financial discipline" and "liquidity." The November 2014 disclosures indicated that Abengoa's leverage ratio (*i.e.*, its debt-to-earnings ratio) was much higher than the registration statement reported it was—and much higher than it should have been under the debt covenant. *See* Supp. App. 15 (¶¶ 48-49), 50 (¶ 146) (analyst report that the "net recourse leverage estimate (4x) is nearly twice the company's most recent figure of 2.1x"). The debt-misclassification disclosures would have warned reasonable investors that the company might not have the "financial discipline" to remain solvent. Indeed, as appellants themselves have explained, Abengoa's leverage ratio "was critical to analysts because it was a metric for evaluating Abengoa's liquidity," J.A. 985 (¶ 12), and analysts covering the disclosures noted that the higher-than-reported leverage numbers could prevent Abengoa from securing "funding" and "access to credit markets." Supp. App. 50 (¶ 146).

Appellants further alleged that Abengoa's share price fell nearly 50% in part because of "concerns that the Company's lack of credibility could harm its borrowing ability." Supp. App. 50 (¶ 147); *see also* J.A. 964 (¶ 277). And

_____

late to future project activities are not included when determining the percentage of completion." (emphasis removed)).

before the most recent iteration of the complaint, appellants continued to link the widespread concern over Abengoa's debt reporting and project financing practices with the alleged misrepresentations regarding liquidity. J.A. 76-77 (¶ 165). The disclosures therefore directly related to Abengoa's "financial discipline."

As to the statements concerning revenue recognition: appellants admit that, after the November 2014 disclosures, "the market largely believ[ed] that [Abengoa] had attempted an *accounting slight-of-hand* in hopes of showing lower leverage ratios." Br. 35 (emphasis added). Appellants repeatedly alleged that the November 2014 disclosures led the market to doubt Abengoa's "credibility." *See, e.g.*, Supp. App. 50 (¶ 146) (analyst reporting "credibility and uncertainty issues"), *id.* (¶ 147) (alleging that the market was concerned that "lack of credibility could harm [Abengoa's] borrowing ability"), *id.* (¶ 148) (alleging that Abengoa's officers were forced to "repair the Company's credibility"). And an analyst expressly stated that Abengoa seemed to be "trying to hide something from analysts." *Id.* at 49 (¶ 145).

To investors, the misclassification was a "storm warning" that Abengoa's financial statements were unreliable because the company was attempting to deceive the investing public, and the credibility of Abengoa's accounting procedures was directly related to appellants' present allegations of accounting improprieties. As this Court has observed, an isolated setback may not

necessarily indicate impropriety, but a series of damaging disclosures—here, the repeated concerns raised by analysts and investors dissatisfied with Abengoa's explanations of its accounting practices over the course of November 2014—should have "alert[ed] any reasonable investor that something [was] seriously wrong." *See LC Capital Partners*, 318 F.3d at 155. The disclosures thus imposed a "duty to inquire" into the violation that appellants have alleged.

4.      Appellants' remaining arguments are unavailing.

a.      Appellants first suggest that the underwriters bear the burden of identifying "uncontroverted evidence" that "irrefutably demonstrates when a reasonable plaintiff would have been on inquiry notice of the false statements in the Offering Materials in the first instance." Br. 37 (citing *In re Bear Stearns Mortgage Pass-Through Certificates Litigation*, 851 F. Supp. 2d 746, 763 (S.D.N.Y. 2012)).

That is an inaccurate statement of the law. This Court has explained that, once a plaintiff is on inquiry notice, the plaintiff is required "at least to allege that inquiry was made." *LC Capital Partners*, 318 F.3d at 156. The reason for that rule is obvious: a plaintiff that has failed to discharge its duty to investigate has deprived the court and the defendant of the best evidence of what a reasonable plaintiff would have discovered. And though this Court no longer necessarily requires the limitations period to *run* from the point that

the plaintiff should have started to investigate, *see Nomura*, 873 F.3d at 119, a plaintiff's dereliction remains relevant to determining when the plaintiff should have discovered sufficient information. The "basic purpose of a statute of limitations" is to "prevent plaintiffs from unfairly surprising defendants by resurrecting stale claims," *City of Pontiac General Employees' Retirement System* v. *MBIA, Inc.*, 637 F.3d 169, 175 (2d Cir. 2011), and depriving a defendant of relevant evidence by slumbering on one's rights is precisely what a statute of limitations is supposed to prevent.

Even under their version of the legal standard, however, appellants' claim is untimely. The November 2014 disclosures and the analysts' commentary on them are "uncontroverted evidence" that appellants were on notice of the misstatements; appellants chose to invoke those disclosures in their own pleadings, and the district court could consider those allegations along with related "press coverage" "without regard to the truth of their contents." *Staehr* v. *Hartford Financial Services Group, Inc.*, 547 F.3d 406, 425 (2d Cir. 2008). And this uncontroverted evidence "irrefutably demonstrate[d]" that appellants were on notice that the registration statement contained the alleged false statements for the reasons already given. *See* pp. 16-22, *supra*.

b.    Appellants next contend that they had no duty to inquire because the November 2014 disclosures "were accompanied by reliable words of comfort or 'benign' explanation from management": specifically, that "Abengoa

23

denied it had misclassified the debt" on the conference call on November 12. Br. 37 (citing *Newman* v. *Warnaco Group, Inc.*, 335 F.3d 187, 194 (2d Cir. 2003)). As a threshold matter, it is misleading to assert that Abengoa "denied" misclassification. To the contrary, Abengoa stood by its classification on the initial and subsequent calls during which it disclosed the amounts of debt it had classified as nonrecourse debt in process. Supp. App. 48-51.

Moreover, this Court has explained that "reassuring statements" negate the duty to investigate "only if an investor of ordinary intelligence would reasonably rely on the statements to allay the investor's concern." *LC Capital Partners*, 318 F.3d at 155. And other investors and analysts did not believe Abengoa's "benign" explanations. They believed that Abengoa was engaged in an accounting sleight of hand, and many consequently commented on Abengoa's lack of credibility—as appellants affirmatively alleged. *See* pp. 5, 17, 20-21, *supra*. Indeed, after Abengoa denied that the debt was misclassified, it made an "effort to repair [its] credibility" by holding another conference call in which it disclosed its leverage ratios with the debt reclassified. Supp. App. 50.

c. Appellants also claim that resolution of the timeliness of the complaint is "a fact-intensive inquiry" and thus "generally ill-suited for resolution at the motion to dismiss stage." Br. 37-38 (citing *FDIC* v. *Credit Suisse First*

*Boston Mortgage Securities Corp.*, 414 F. Supp. 3d 407, 411 (S.D.N.Y. 2019)).[2] But this Court has explained that "dismissal is appropriate" if the "facts needed for determination of when a reasonable plaintiff of ordinary intelligence would have been aware of the existence of fraud can be gleaned from the complaint and papers integral to the complaint." *Cohen* v. *S.A.C. Trading Corp.*, 711 F.3d 353, 362 (2013) (citation, brackets, and ellipsis omitted); *see also* 5B Charles Alan Wright et al., *Federal Practice and Procedure* § 1357, at 714-721 (3d ed. 2010) (Wright & Miller). And this Court has approved of such dismissals in "a vast number of cases," as have district courts in the circuit. *LC Capital Partners*, 318 F.3d at 156; *see also, e.g.*, *Thomas* v. *Citigroup Global Markets Holdings Inc.*, Civ. No. 21-3673, 2022 WL 1051158, at *11 (S.D.N.Y. Mar. 1, 2022), *report and recommendation adopted as modified*, Civ. No. 21-3673, 2022 WL 951112 (S.D.N.Y. Mar. 30, 2022); *Silberstein* v. *Aetna, Inc.*, Civ. No. 13-8759, 2015 WL 1424058, at *10 (S.D.N.Y. Mar. 26,

---

[2] Appellants' sole authority for this point, *Credit Suisse*, is distinguishable. Defendants in that case argued that inquiry notice arose from generalized and industry-wide concerns that were "untethered to the transactions [at issue]" and "unconnected to any of the entities that were involved." 414 F. Supp. at 411-412. Here, Abengoa's own disclosures in November 2014, and the market's reaction to those disclosures, bore a "direct connection" to the alleged misrepresentations made in the registration statement, allowing the court to easily conclude, at the motion to dismiss stage, that appellants were on notice of their claims. *Id.* at 412.

2015); *Monroe County Employees' Retirement System* v. *YPF Sociedad Anonima*, 15 F. Supp. 3d 336, 348, 351-354 (S.D.N.Y. 2014).

*   *   *   *   *

For the foregoing reasons, the district court correctly concluded that the November 2014 disclosures put appellants on notice of their claims. Appellants knew or should have known that the registration statement contained alleged misrepresentations; they should have conducted an investigation into those alleged misrepresentations; and they failed to conduct such an investigation. A reasonable investor would have discovered sufficient allegations to plead appellants' current claims more than a year before they filed their first amended complaint in August 2016. The district court's dismissal of the claims against the underwriters should therefore be affirmed.

## B. The Securities Act Claims Cannot 'Relate Back' To The First Amended Complaint

Appellants argue that their current claims are timely because the claims in the first amended complaint were timely, *see* Br. 32, but they make no attempt to show that the claims in the operative version of the complaint "relate back" under Federal Rule of Civil Procedure 15(c). The underwriters urged below that appellants' claims must be dismissed as untimely because they do not relate back, *see* D. Ct. Dkt. 171, at 9-13, but the district court did not reach

the argument.[3] This Court may nevertheless "affirm on any ground that finds support in the record, even if it was not the ground upon which the trial court relied." *Headley* v. *Tilghman*, 53 F.3d 472, 476 (2d Cir. 1995).

1.    As a threshold matter, the Court need not go further than agreeing with the district court that the first amended complaint was untimely, given that a "prior complaint, having been itself filed after the expiration of the one-year statute of limitations for the claims which it contained . . . cannot then act as a life-line for a later complaint, filed after" the limitations period. *Henderson* v. *Bolanda*, 253 F.3d 928, 932 (7th Cir. 2001); *see also VKK Corp.* v. *National Football League*, 244 F.3d 114, 128 (2d Cir. 2001) (requiring "a timely filed complaint"), *abrogated on other grounds by Slayton* v. *American Express Co.*, 460 F.3d 215, 228 (2d Cir. 2006). But if the Court were to disagree on those grounds, affirmance is still warranted for the independent reason that the claims fail on relation back.

An amended complaint filed outside a limitations or repose period is "time-barred unless it relates back to the filing of the initial complaint." *ASARCO LLC* v. *Goodwin*, 756 F.3d 191, 202 (2d Cir. 2014). An amendment

---

[3] The district court's order dismissing the claims in the operative version of the complaint stated that the "Section 11 claims regarding accounting policies are not new and were alleged, although sparingly," in the first amended complaint, but the court did not determine whether those allegations sufficed to allow the claims to relate back. S.A. 129.

"relates back" to a prior complaint if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The "central inquiry" under Rule 15 is "whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading." *Lehman XS Trust, Series 2006-GP2 by U.S. Bank National Association* v. *GreenPoint Mortgage Funding, Inc.*, 916 F.3d 116, 128 (2d Cir. 2019); *see also* 6A Wright & Miller § 1497, at 76-85.

An amended pleading cannot relate back if it "allege[s] a new claim," *Slayton*, 460 F.3d at 228, or relies on "an entirely distinct set of factual allegations," *Lehman XS*, 916 F.3d at 128 (quoting *Slayton*, 460 F.3d at 228). For example, this Court has explained that "claims that are based on different contracts" are sufficiently different to preclude relation back. *Id.* Similarly, an amended complaint adding a "separate act of discrimination" in the making or enforcement of contracts, in violation of 42 U.S.C. § 1981, could not relate back to an earlier complaint pleading other acts of discrimination in violation of Title VII. *Gomes* v. *Avco Corp.*, 964 F.2d 1330, 1334 (2d Cir. 1992). The leading civil-procedure treatise explains that even "a separate violation of the same statute" may "fail[] to meet the transaction standard." 6A Wright & Miller § 1497, at 83-85; *see also Oja* v. *U.S. Army Corps of Engineers*, 440 F.3d 1122,

1134 (9th Cir. 2006) (holding that a separate publication of identical private information does not relate back because "[the plaintiff's] claims under the Privacy Act are based on the acts of disclosure themselves").

2.    Appellants' claims do not "relate back" to the first amended complaint for two reasons.  First, most of the statements appellants now allege to be false appeared nowhere in the first amended complaint.  Second, appellants' theory of wrongdoing in the current complaint was entirely absent from the first amended complaint, which focused on Abengoa's misclassification of debts and liquidity.

a.    As noted above, *see* p. 19, the operative version of appellants' complaint identifies two categories of alleged misstatements: (1) statements in the registration statement concerning Abengoa's use of the percentage-of-completion method of revenue recognition, *see* J.A. 942-94 (¶ 197), and (2) the statement that Abengoa has "enforce[d] strict financial discipline," J.A. 942 (¶ 197). None of the statements in the first category was alleged to be false in the first amended complaint, and that omission is dispositive here.

Rule 15(c)(1)(B) does not permit newly alleged violations of a statute to "relate back" to different violations alleged in prior complaints.  Thus, an amended complaint does not relate back if it alleges a breach of a contract different from the breach alleged in the first complaint, *see Lehman XS, su-*

*pra*; or an act of discrimination under 42 U.S.C. § 1981 different from the discrimination previously pleaded, *see Gomes*, *supra*; or a disclosure of private information under the Privacy Act different from the disclosure previously alleged, *see Oja*, *supra*.

As appellants acknowledge, a Section 11 claim must allege that "specific statements in the Registration Statement were untrue." Br. 34; *see also* 15 U.S.C. § 77k(a) (requiring that a registration statement "contained *an* untrue statement of a material fact" (emphasis added)). The basis of a Section 11 claim is thus the particular alleged misstatement in the registration statement, and allegedly fraudulent conduct is relevant only to the extent that it renders the statement at issue false or misleading. And because the third amended complaint identifies new misstatements that give rise to "new claim[s]," *Slayton*, 460 F.3d at 228, any asserted similarity in the misconduct alleged to have made those statements false is irrelevant. Appellants' claims based on alleged misstatements concerning percentage-of-completion revenue recognition should be dismissed on that ground alone.

b.      Even assuming that Securities Act claims based on entirely new alleged misstatements could sometimes relate back to prior complaints, the theory of misconduct in the operative complaint is not the theory alleged in the first amended complaint. Because appellants' claims are based on an "entirely distinct set of factual allegations," they do not "relate back" to the first

amended complaint. *Lehman XS*, 916 F.3d at 129 (quoting *Slayton*, 460 F.3d at 228).

The principal claim in the first amended complaint was that certain statements in the registration statement were false because Abengoa misclassified some of its debt. *See* p. 7, *supra*. Appellants alleged that the misclassification of debt "misled the market about Abengoa's liquidity and cash flow." Supp. App. 16 (¶ 49(e)). Abengoa's true debt load meant that it had "inadequate liquidity and cash flow to fund existing operations and service debt." *Id.* (¶ 49(d)). And the possibility that Abengoa could fail to fund operations or pay debts increased the risk of "future capital raises." *Id.* (¶ 49(e)). In the third amended complaint, by contrast, appellants alleged that all of the identified statements were false because Abengoa committed widespread accounting fraud when recognizing revenues, in violation of its accounting policies and international accounting standards. *See* J.A. 943-944 (¶¶ 198-203). Appellants contend that Abengoa thereby "inflated its profit margins and concealed its losses." *Id.* (¶ 198). Thus, the "general fact situation alleged in the original pleading" did not encompass the third amended complaint's allegations of accounting fraud. *Slayton*, 460 F.3d at 228 (citation omitted).

To be sure, the first amended complaint contained a single reference to percentage of completion and scattered references to accounting discrepancies. But any argument that those references suffice to ground the current

Securities Act claims in the first amended complaint would lack merit. As to percentage of completion: the first amended complaint alleged that Abengoa "obtained lines of credit utilizing erroneous financial reports that overstated the value of certain projects, by showing inaccurate percentages of completion on some projects, and failing to show that some projects were over-budget." Supp. App. 16 (¶ 49(c)). But the first amended complaint did not identify a corresponding misstatement in the registration statement, did not say what these "financial reports" were, and did not allege that the "overvalued" project values were the result of accounting fraud. The Civil Rules "do not place the onus on" defendants to "piece together" the "fragments" of a complaint to discern the "essence of a claim," *Glover* v. *FDIC*, 698 F.3d 139, 148 (3d Cir. 2012), and the single fragment in the first amended complaint did not indicate that appellants were challenging (or might challenge) the registration statement's alleged misrepresentations concerning revenue recognition.

As to accounting improprieties: the first amended complaint included allegations that confidential informants reported accounting improprieties, *see*, *e.g.*, Supp. App. 20-25 (¶¶ 69-89), but those allegations appeared within a separate portion of the complaint asserting violations of a different statute (the Exchange Act) against different defendants, *see id.* at 15 (¶ 64). Those allegations were not connected in any way to any alleged misrepresentation in the

registration statement or to any action of the underwriters; indeed, the allegations were not even "incorporat[ed] by reference" in the Securities Act claims. *Id.* at 16 (¶ 50). Appellants were the masters of their complaint, *cf. Marcus* v. *AT&T Corp.*, 138 F.3d 46, 52 (2d Cir. 1998), and the underwriters could reasonably have inferred from appellants' pleading that the facts were *not* relevant to claims for which they were *not* pleaded. Those tangential allegations thus "gave no suggestion" that the underwriters "were culpable in any way for the conduct attributed to" Abengoa. *Glover*, 698 F.3d at 148.

Courts in this circuit have repeatedly reached similar conclusions that novel theories of securities fraud cannot relate back to earlier complaints. For example, in *Caldwell* v. *Berlind*, 543 Fed. Appx. 37 (2d Cir. 2013), this Court concluded that claims asserting that the defendant misstated its leverage ratio in forms incorporated into its prospectus, allegedly because of accounting manipulations, did not relate back to original claims that the defendant merely fraudulently omitted that information from the prospectus itself, *see id.* at 40. In *In re Alcatel Securities Litigation*, 382 F. Supp. 2d 513 (S.D.N.Y. 2005), the district court determined that new claims regarding misstatements about certain acquisitions in a prospectus did not relate back to the plaintiffs' original claims regarding misstatements about inventory buildup and demand decline, even though the plaintiffs insisted they were still alleging the "same basic

wrongs" under Section 11. *Id.* at 528-529. And in *Peifa Xu* v. *Gridsum Holding, Inc.*, Civ. No. 18-3655, 2021 WL 773002, at *8 (S.D.N.Y. Feb. 23, 2021), the court found that earlier general claims that financial statements were misleading and inaccurate did not save later-introduced specific claims that the defendant failed to disclose certain offshore capital structures and the resulting impact on tax liability.

3.    Allowing relation back here would frustrate the purposes of the statutes of limitation and repose in the Securities Act. A statute of limitations prevents a plaintiff from "unfairly surprising defendants by resurrecting stale claims," *City of Pontiac*, 637 F.3d at 175, while a statute of repose "*extinguishes* a plaintiff's cause of action after the passage of a fixed period of time," *Ma* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 88 n.4 (2d Cir. 2010). Those periods are particularly important for Section 11 claims against underwriters, which are entitled to defend themselves by showing that a "reasonable investigation" revealed that the statements were true. 15 U.S.C. § 77k(b)(3). That defense becomes increasingly difficult to raise as time passes, employees change jobs, and memories fade. The statutes of limitations and repose ensure that the defense remains available.

In this case, the third amended complaint was filed nearly eight years after the 2013 offering, and appellants asserted new misstatements and a new theory of wrongdoing that was never pleaded in the only complaint filed within

the three-year repose period. Allowing appellants' current claims to relate back to the first amended complaint would "undermine [the] purpose [of the statute of repose] and abridge [d]efendants' right to be free from liability after the expiration of three years." *Barilli* v. *Sky Solar Holdings, Ltd.*, 389 F. Supp. 3d 232, 264 (S.D.N.Y. 2019); *see also Peifa Xu*, 2021 WL 773002, at *8; *In re Noah Educational Holdings, Ltd. Securities Litigation*, Civ. No. 8-9203, 2010 WL 1372709, at *9 (S.D.N.Y. Mar. 31, 2010).

Even allowing relation back only for the one alleged misrepresentation that the first and third amended complaints share—the statement regarding "strict financial discipline"—would frustrate the purposes of the statutes of limitation and repose. That statement is so generic that appellants could plead that it was false based on two entirely different theories of falsity—first, that it misled investors about "liquidity," "cash flow," and "capital structure," Supp. App. 13 (¶ 46), and second, that Abengoa was committing "widespread, systemic accounting fraud," J.A. 944 (¶ 203). Appellants' shift in theories illustrates why the statement is nonactionable puffery, *see* p. 38, *infra*, but at the very least appellants should not be allowed to use an exceptionally generic statement to smuggle in a new theory of wrongdoing.

4.    In any event, appellants cannot contend that their current claims relate back without undermining their argument that the district court erred

by dismissing their claims as untimely. The core of appellants' limitations argument is that their claim that "defendants fraudulently used accounting entries . . . to prematurely recognize revenue" has "nothing to do with Abengoa's purported debt classification," a subject of widespread concern by November 2014. Br. 35-36; *see also* Br. 34 (asserting that the debt misclassification "had nothing to do with the accounting fraud that plaintiffs allege rendered the statements at issue in the Registration Statement misleading"). For appellants to show that the district court erred by dismissing their claims as untimely, they must urge that debt misclassification has "nothing to do" with accounting fraud; but for appellants to show that the claims relate back, they must urge that the claims of accounting fraud simply "render[] prior allegations more definite and precise." *Slayton*, 460 F.3d at 228. Appellants cannot have it both ways.

While appellants' arguments cannot both be right, they can both be wrong, because the timeliness analysis differs from the relation-back analysis in key respects. In the timeliness analysis, the doctrine of "inquiry notice" assumes that plaintiffs digest publicly available information about their investments and, when that information reveals potential wrongdoing, they investigate it. *See* pp. 16, 22-23, *supra*. In other words, plaintiffs are supposed diligently to ferret out the information necessary to successfully plead any claims under the Securities Act; the accrual rules are designed to reward the vigilant

and to discourage potential plaintiffs from sleeping on their rights. *Cf. City of Pontiac*, 637 F.3d at 175 (drawing "guidance" from the "basic purpose of a statute of limitations" to "prevent plaintiffs from unfairly surprising defendants").

By contrast, the relation-back analysis operates against the background assumption that a plaintiff is the master of its complaint and, accordingly, that the complaint identifies the wrongdoing for which the defendant will be asked to account. While the Civil Rules may reflect a preference for "resolving disputes on their merits," *Krupski* v. *Costa Crociere S.p.A.*, 560 U.S. 538, 550 (2010), they do not oblige defendants to speculate about—or to launch an investigation to uncover—whatever unpleaded facts and legal theories the plaintiffs might be saving for a rainy day, *see Glover*, 698 F.3d at 148. Appellants' claims are time-barred because they were not sufficiently pleaded in the first amended complaint and would have been untimely even if they were.

*     *     *     *     *

For these reasons, even if the Court were to disagree with the district court that appellants' claims would have been untimely if they had been included in the first amended complaint, the Court should uphold the dismissal of those claims on the ground that they do not relate back to the first amended complaint under Rule 15(c). All but one of the current set of alleged misstate-

ments were not pleaded in the first amended complaint, and, by their own admission, appellants' underlying theory for why the statements were false has "nothing to do" with the theory advanced in the first amended complaint. Br. 34. The judgment of the district court should be affirmed.

## II. APPELLANTS' SECURITIES ACT CLAIMS ALSO FAIL ON THE MERITS

Pursuant to Federal Rule of Appellate Procedure 28(i), the underwriters adopt by reference the arguments made by appellee Abengoa that the Securities Act claims fail on the merits because (1) the alleged misstatements are nonactionable puffery, *see* Br. of Abengoa 13-16, and (2) appellants failed to allege falsity, *see id.* at 17-51. This Court can affirm the district court's dismissal of the Securities Act claims against the underwriters on these independent grounds as well.

## CONCLUSION

The judgment of the district court should be affirmed.

Respectfully submitted,

/s/ Kannon K. Shanmugam

RICHARD ROSEN
PATRICK MCCUSKER
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  *1285 Avenue of the Americas*
  *New York, NY 10019*

KANNON K. SHANMUGAM
ABIGAIL FRISCH VICE*
E. GARRETT WEST
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  *2001 K Street, N.W.*
  *Washington, DC 20006*
  *(202) 223-7300*
  *kshanmugam@paulweiss.com*

MARCH 13, 2023

---

\* Admitted in California and practicing law in the District of Columbia pending application for admission to the D.C. Bar under the supervision of bar members pursuant to D.C. Court of Appeals Rule 49(c)(8).

## CERTIFICATE OF COMPLIANCE
## WITH TYPEFACE AND WORD-COUNT LIMITATIONS

I, Kannon K. Shanmugam, counsel for appellees Canaccord Genuity Inc., HSBC Securities (USA) Inc., Merrill Lynch International, and Société Générale and a member of the Bar of this Court, certify, pursuant to Federal Rule of Appellate Procedure 32(g) and Local Rule 32.1(a)(4), that the foregoing Brief of Appellees Canaccord Genuity Inc., HSBC Securities (USA) Inc., Merrill Lynch International, and Société Générale is proportionately spaced, has a typeface of 14 points or more, and contains 8,568 words.

MARCH 13, 2023

/s/ Kannon K. Shanmugam
KANNON K. SHANMUGAM

**CERTIFICATE OF SERVICE**

I, Kannon K. Shanmugam, counsel for appellees Canaccord Genuity Inc., HSBC Securities (USA) Inc., Merrill Lynch International, and Société Générale and a member of the bar of this Court, certify that, on March 13, 2023, the attached Brief of Appellees Canaccord Genuity Inc., HSBC Securities (USA) Inc., Merrill Lynch International, and Société Générale was filed through the Court's electronic filing system. I certify that all participants in the case are registered users with the electronic filing system and that service will be accomplished by that system.

/s/ Kannon K. Shanmugam
KANNON K. SHANMUGAM